UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHARLES BRYANT, individually and as next friend and guardian of D.B., *et al.*,

        Plaintiffs,

v.

NEW YORK STATE EDUCATION DEPARTMENT, *et al.*,

        Defendants.

No. 8:10-CV-36 (GLS / RFT)

---

## DECLARATION OF CHARLES BRYANT

I, Charles Bryant, upon my own personal knowledge, hereby depose and declare the following:

1. I am the father and a legal guardian of D.B.

2. D.B. is a 15-year-old boy from New York who suffers from Pervasive Developmental Disorder, Intermittent Explosive Disorder and a severe behavior disorder that causes him to engage in dangerous and disruptive behaviors.

3. D.B. is currently receiving behavior modification treatment and special education at the Judge Rotenberg Educational Center, Inc. ("JRC") in Canton, Massachusetts.

4. D.B. has a long history of engaging in aggressive, destructive, disruptive, noncompliant and self-injurious behavior, including: hitting and himself and others; biting himself and others; kicking and spitting at others; threatening to harm and even kill others; threatening to harm himself; screaming; destroying property; and running away. On one occasion, D.B. had a tantrum in the middle of a busy road because he wanted to get down on his

hands and knees to follow the yellow line in the road. At home, D.B. would often hit both his mother and me.

5. D.B. has severe, extended behavioral episodes during which he will threaten to hurt others, knock over furniture, try to run away, and physically assault others. During these periods, his academic progress will come to a complete halt, sometimes for weeks at a time. At times, D.B.'s aggressive, self-injurious, destructive, and disruptive behaviors, as well as his complete refusal to follow school rules, have been so persistent and severe that D.B.'s prior schools had to maintain him in a quiet area away from his peers. By the time D.B. was just nine years old, his school was calling me three to four times a week to take D.B. home because of his severe and dangerous behaviors. In the Spring of 2004, D.B.'s school district refused to allow him to return to his local public school as a result of several elopements.

6. D.B.'s treatment prior to his admission to JRC included: psychiatric hospitalization, outpatient therapy, special education services, one-to-one assistance and the implementation of Applied Behavioral Analysis, as well as the prescription of psychotropic drugs including Zoloft, Seroquel, Neurontin, Tenex, Paxil, Risperdal, Ativan, and Droperidol, some of which can have serious adverse side effects.

7. D.B.'s placement history includes public school placement in New York, where he received speech and occupational therapy, special education, individual teaching assistance, counseling, and one-to-one assistance during D.B.'s severe behavioral episodes. A psychologist worked with D.B. both at home and at school to implement applied behavioral analysis (ABA) with D.B. In May 2004, at the age of nine, D.B. became so aggressive during an outpatient therapy appointment that he was subsequently taken to the emergency room, given medication

and placed in soft restraints, and was admitted to the Champlain Valley Physicians Hospital Medical Center in Plattsburgh, New York.

8.   Prior treatments were not successful in treating D.B.'s behaviors, and such behaviors have prevented him from making academic progress.

9.   D.B.'s prior placements and treatment did not meet his needs.

10.   D.B.'s school district recommended a 24-hour residential program and his individualized educational program ("IEP") specifies placement at JRC. D.B. was admitted to JRC on September 17, 2004.

11.   Since his admission to JRC, D.B. has been on a positive-only behavior modification treatment plan. D.B. is no longer on any psychotropic medications. While JRC has been able to keep D.B. safe by providing supervision in a residence with increased staffing levels and enhanced safety precautions, and emergency restraint when necessary, he still exhibits severe problematic behaviors. During these periods of severe and dangerous behaviors, he has been unable to take field trips or visit his family, and will refuse to complete any academic assignments.

12.   Since his admission to JRC, D.B. has engaged in dangerous and aggressive behaviors, such as biting and attempting to bite others, and has threatened to harm or kill himself. D.B. has had several incidents of highly dangerous and/or disruptive behavior, and has required emergency restraint for safety on multiple occasions. D.B. has made threats and attempts to injure staff, and has threatened to harm himself. D.B. has threatened to kill one of his classmates and, as a result, he was removed from class to ensure the other student's safety. D.B. has periods of appropriate behavior followed by periods of frequent and intense aggression, destruction, and self-injurious behaviors.

13. D.B. will also disrobe at inappropriate times, have verbal and physical tantrums, refuse to follow directions, and refuse to complete his assignments.

14. D.B.'s severe problematic behaviors interfere with his ability to make meaningful academic progress.

15. D.B.'s clinician at JRC has informed me that in his opinion the least restrictive and most effective treatment for D.B. would be a behavior modification treatment plan with the addition of aversive interventions, including the Graduated Electronic Decelerator device, to treat his aggressive, destructive, major disruptive, health dangerous, and noncompliant behaviors, including hitting, biting, and attempting to hurt others. I have been informed about the nature of the aversive interventions and their proposed use with my child. I have provided JRC with my written consent to add aversive interventions to his treatment plan to address his severe problematic behavior. Additionally, before treating D.B. with aversive interventions, JRC will seek the approval of a Human Rights Committee, a Peer Review Committee, D.B.'s school district and a Massachusetts Probate Court judge. In addition, D.B. will be represented by a court-appointed attorney to protect his interests in the Probate Court proceeding.

16. I have been informed, by D.B.'s clinician at JRC, that under the regulations of the New York State Education Department, 8 N.Y.C.R.R. § 200.1 *et seq.* ("NYSED Regulations"), my child cannot have access to this potentially life-saving treatment, even though: (1) I have consented to it; (2) it is recommended by D.B.'s treating clinician at JRC; and (3) D.B. has been physically examined by a physician, who has found no medical reason why D.B. should not receive this treatment. I have also been informed that the NYSED Regulations reduce the effectiveness of aversive interventions by restricting their use in a manner not supported by the professional literature. The NYSED Regulations also require submission of the proposed

{K0403733.3}

treatment plan to an unqualified panel who will never examine D.B., will never speak to me about D.B., and will only do a paper review of D.B.'s treatment needs. In addition, the NYSED Regulations impose a ban on the use of aversive interventions after June 30, 2009 which means aversive interventions cannot be added to D.B.'s IEP and treatment plan. I do not want D.B.'s treatment at JRC to be subject to the NYSED Regulations.

17. On November 25, 2009, I visited D.B. at JRC. He was not able to come home for the Thanksgiving holiday because he had exhibited aggressive behaviors a few days earlier. D.B. and I discussed his behavior and how it kept him from being able to come home. D.B. told me that he can't control his behavior and that he wishes he could be on the GED to help control his behavior. D.B. has not been on a home visit since 2006, due to his behaviors.

18. Since June of 2007, I have been urging D.B.'s school district to apply for a "child-specific exception," as provided under the NYSED Regulations, so that aversive interventions could be added to D.B.'s IEP and treatment plan. Prior to the arbitrary June 30, 2009 ban on aversive interventions, D.B.'s school district submitted an Application to the NYSED Commissioner of Education, seeking a child-specific exception to recommend aversive interventions for D.B. However, on July 2, 2009, NYSED returned the application to D.B.'s school district and refused to take any action on the application, stating that it was now too late to add aversive interventions to D.B.'s IEP. A true and accurate copy of the letter is attached to this affidavit, as Exhibit 1.

19. I believe that JRC's behavior modification treatment program, including aversive interventions such as the GED to address his aggressive, destructive, major disruptive, health dangerous, and noncompliant behaviors, is necessary to treat D.B.'s severe problematic behaviors, and is his only chance to receive an education and make social and behavioral

{K0403733.3}

progress, as well as to develop a rewarding relationship with his family. No other treatment has been successful at providing D.B. with the opportunity to make meaningful academic and social progress and contribute to his community and D.B. should not be deprived of the opportunity to have this treatment. No other school can provide D.B. with the opportunity to make more progress than he is making at JRC, and no other school will accept my son. The addition of aversive interventions to his program at JRC will help D.B. to make meaningful behavioral and educational progress.

19.     D.B. is currently at risk of further physical harm. If his behaviors are not treated properly, they could result in permanent physical disfigurement, massive pharmacological intervention and associated side effects, frequent physical and mechanical restraint, severe injury to others, incarceration, institutionalization, or even death. D.B. needs aversive interventions to protect him against this physical harm and provide him access to a program and services within which he can make meaningful behavioral and educational progress.

{K0403733.3}

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE.

Executed on: December 4, 2009         s/ Charles Bryant
                                      Charles Bryant

{K0403733.3}

# EXHIBIT 1



THE STATE EDUCATION DEPARTMENT / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

OFFICE OF VOCATIONAL AND EDUCATIONAL SERVICES FOR INDIVIDUALS WITH DISABILITIES
COORDINATOR SPECIAL EDUCATION POLICY AND PROFESSIONAL DEVELOPMENT
Room 1624 One Commerce Plaza • Albany, NY 12234      Telephone: (518) 486-7462   Fax: (518) 402-3583
www.vesid.nysed.gov

July 2, 2009

Mr. Chad McCarthy
CSE Chairperson
Saranac Lake Central School District
79 Canaras Avenue
Saranac Lake, NY 12983-1560

Dear Mr. McCarthy:

    This is in response to the "Application to the Commissioner of Education for the Child-Specific Exception to Recommend Aversive Behavioral Interventions" submitted by the Saranac Lake Central School for D█████ B█████, a student attending the Judge Rotenberg Educational Center (JRC). The cover letter accompanying this application is dated February 2009; however the application was not mailed until June 25, 2009 and was received by the State Education Department (SED) on June 29, 2009.

    Section 200.22(e) of Regulations of the Commissioner of Education provides that "a child-specific exception to the prohibition of the use of aversive interventions set forth in section 19.5 of this Title may be granted for a school-age student ... only during the 2006-2007, 2007-2008 and 2008-2009 school years; provided that a student whose IEP includes the use of aversive interventions as of June 30, 2009 may be granted a child-specific exception in each subsequent school year, unless the IEP is revised to no longer include such exception." A full text of the regulations may be found at http://www.vesid.nysed.gov/specialed/behavioral/finalamend.htm.

    The Regents prohibition on the use of aversive interventions would, therefore, apply to Damien because his IEP as of June 30, 2009 did not include a recommendation for the use of aversive interventions and because he had not received an exception to the prohibition of the use of aversive interventions during the 2008-09 school year. I am, therefore, returning Damien's application to you. If you have any questions, please contact Charlene Gurian at 518-486-7462.

Sincerely,

Patricia J. Geary

Enclosure
c:   Charlene Gurian
      Andrew Jackowski

