UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHARLES BRYANT, individually and as next friend and
guardian of D.B., *et al.*,

                Plaintiffs,

v.                                                            No. 8:10-CV-36 (GLS / RFT)

NEW YORK STATE EDUCATION DEPARTMENT, *et al.*,

                Defendants.
_____

## **DECLARATION OF LISA HUGHES**

I, Lisa Hughes, upon my own personal knowledge, hereby depose and declare the following:

1.     I am the mother and legal guardian of J.R.

2.     J.R. is a 12 year-old boy from New York who suffers from Pervasive Developmental Disorder (Asperger's Disorder), Intermittent Explosive Disorder, Bipolar Disorder, Oppositional Defiant Disorder, and a severe behavior disorder that causes him to engage in dangerous and disruptive behaviors.

3.     J.R. is currently receiving behavior modification treatment and special education at the Judge Rotenberg Educational Center, Inc. ("JRC") in Canton, Massachusetts.

4.     J.R. has a long history of engaging in aggressive, destructive, disruptive, noncompliant and self-injurious behavior, including: attacking and injuring a female peer; kicking/hitting/damaging property such as doors/walls; swearing/yelling at teachers/parents/staff; being disruptive on school buses; tying ropes around his own neck; throwing chairs; running out

{K0400960.1}

of classrooms/counseling sessions; attacking parents/siblings; and punching/poking peers when asking to play with them.

5. J.R.'s treatment prior to his admission to JRC included: individual and group counseling, behavior management strategies, 1:1 staffing, bus paraprofessionals, speech services, occupational therapy services, and a wide variety of other behavioral interventions, as well as the prescription of psychotropic drugs including Lithium Carbonate, Depakote, Seroquel, Abilify, Valproic acid, and the psychotropic medication Tenex, all of which can have serious, detrimental, and sometimes permanent side effects.

6. J.R.'s placement history includes public school placement in New York, including early intervention starting at age 2, preschool special education services, and special education services at P.S. #138, a District #75 school, where he required a transportation paraprofessional on the school bus; and 1:1 crisis staff for the classroom. J.R. has also been placed in multiple alternative educational settings and has had multiple confinements at various psychiatric hospitals, starting at the age of 7 years.

7. J.R. was first hospitalized at New York Presbyterian Hospital. J.R. spent one month at the Children's Village Crisis Residence in New York, a facility for children who are experiencing serious behavioral or emotional problems that place them or others at risk. J.R. was also admitted to Westchester Medical Center before multiple admissions to Metropolitan Hospital. In 2007, J.R. attended the Day Treatment Program at Metropolitan Hospital. However, while attending that program, he was placed at a Community Residence in Brooklyn to provide a more structured environment.

8. While he was at the Day Treatment Program at Metropolitan Hospital, J.R.'s aggressive behavior got increasingly worse and he ended up attacking a female student and

{K0400960.1}

causing serious injury. J.R. was taken to the psychiatric Emergency Room. Due to his aggressive behaviors in the day program, J.R. was put into the in-patient unit at Metropolitan Hospital, which was his most recent placement before coming to JRC.

9. Prior treatments were not successful in treating J.R.'s behaviors, and such behaviors have prevented him from making academic progress.

10. J.R.'s prior placements and treatment did not meet his needs. J.R.'s last placement prior to JRC was at the in-patient unit at Metropolitan Hospital. J.R. was initially placed at the hospital by the New York City Department of Education and J.R.'s school district and Committee for Special Education ("CSE"). In 2008, the hospital informed me that the hospital could not handle J.R. and was an inappropriate placement. J.R.'s psychiatrists told me that he could only be released to a full-time residential program. I wrote to J.R.'s CSE to request a residential placement but I never received any response.

11. Because the school district did not provide J.R. with an appropriate education or find any other placement for him, and because the hospital would only release him to a 24-hour residential program, I placed him at JRC for special education and behavior modification treatment, including treatment with the Graduated Electronic Decelerator ("GED") device. J.R. was admitted to JRC on October 17, 2008 and an Impartial Hearing Officer found JRC to be an appropriate placement for J.R.

12. I have tried to work with the school district to have JRC and treatment with the GED placed on J.R.'s Individualized Education Program ("IEP") but the district has been uncooperative and the process is still ongoing as of today, even though the district has not been able to provide an alternative placement. I participated in a formal impartial hearing process which resulted in the Hearing Officer finding that JRC was offering J.R. an appropriate program

{K0400960.1}

and ordering J.R.'s district to pay for all costs of J.R.'s residential placement at JRC beginning on March 23, 2009, until the district either found another placement for him or determined that it could not, at which time it would be ordered to enter into a contract with JRC for J.R.'s continued placement. The district has not placed JRC on J.R.'s IEP and continues to look for an alternate placement. However, I recently received a list of schools the district is sending J.R.'s referral packet to. J.R. has previously been rejected by most, if not all of the schools on the list.

13.   Since his admission to JRC, J.R. has been on a positive-only behavior modification treatment plan. J.R.'s medications have been reduced substantially from the dosage levels at his admission to JRC and he is currently on a low dosage of just one medication to address his behaviors. JRC has been able to keep J.R. safe by providing 24-hour 1:1 staffing, transport restraints, and a restrictive classroom and residence. Despite these safety measures, J.R. still exhibits severe problematic behaviors and has only been able to make one visit home.

14. Since his admission to JRC, J.R. has assaulted his bus driver, clinician, teacher, staff, and peers; started fist fights with other students; bitten another student and staff; bitten a table; stabbed a teacher with a pencil; hit staff with pool sticks; caused significant property damage at his residence; intentionally urinated in his classrooms and bedroom; engaged in head banging to the point of causing holes in the wall at his residence; engaged in banging and throwing of objects; and threatened to run away, kill himself, and kill others on multiple occasions. J.R. will often rip up his academic assignments while he is working on them, refuse to follow directions or complete tasks, stop working, and engage in inappropriate screaming, swearing, and other verbal interruptions.

15.   J.R.'s severe problematic behaviors interfere with his ability to make meaningful academic progress.

{K0400960.1}

16. J.R.'s clinician at JRC has informed me that in her opinion the least restrictive and most effective treatment for J.R. would be a behavior modification treatment plan with the addition of aversive interventions, including the GED device, to treat his aggressive, destructive, major disruptive, health dangerous, and noncompliant behaviors. I have been informed about the nature of the aversive interventions and their proposed use with my child and have provided JRC with my written consent to add aversive interventions to his treatment plan to address his severe problematic behavior. Additionally, before treating J.R. with aversive interventions, JRC will seek the approval of a Human Rights Committee, a Peer Review Committee, J.R.'s school district, and a Massachusetts Probate Court judge. In addition, J.R. will be represented by a court-appointed attorney to protect his interests in the Probate Court proceeding.

16. I have been informed, by J.R.'s clinician at JRC, that under the regulations of the New York State Education Department, 8 N.Y.C.R.R. § 200.1 *et seq.* ("NYSED Regulations"), my child cannot have access to this potentially life-saving treatment, even though: (1) I have consented to it; (2) it is recommended by J.R.'s treating clinician at JRC; and, (3) J.R. has been physically examined by a physician, who has found no medical reason why J.R. should not receive this treatment. I have also been informed that the NYSED Regulations reduce the effectiveness of aversive interventions by restricting their use in a manner not supported by the professional literature. The NYSED Regulations also require submission of the proposed treatment plan to an unqualified panel who will never examine J.R., will never speak to me about J.R., and will only do a paper review of J.R.'s treatment needs. In addition, the NYSED Regulations impose a ban on the use of aversive interventions after June 30, 2009, which means aversive interventions cannot be added to J.R.'s IEP and treatment plan. I do not want J.R.'s treatment at JRC to be subject to the NYSED Regulations.

{K0400960.1}

17. I believe that JRC's behavior modification treatment program, including aversive interventions such as the GED, to address his aggressive, destructive, major disruptive, health dangerous, and noncompliant behaviors, is necessary to treat J.R.'s severe problematic behaviors, and is his only chance to receive an education and make social and behavioral progress, as well as to develop a rewarding relationship with his family. No other treatment has been successful at providing J.R. with the opportunity to make meaningful academic and social progress and contribute to his community and J.R. should not be deprived of the opportunity to have this treatment. No other school can provide J.R. with the opportunity to make more progress than he is making at JRC and no other school has accepted my son. The addition of aversive interventions to his program at JRC will help J.R. make meaningful behavioral and academic progress.

18. J.R. is currently at risk of further physical harm. If his behaviors are not treated properly, they could result in permanent physical disfigurement, massive pharmacological intervention and associated side effects, frequent physical and mechanical restraint, severe injury to others, institutionalization, or even death. J.R. needs aversive interventions to protect him against this physical harm and provide him with access to a program and services within which he can make meaningful behavioral and educational progress.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE.

Executed on: December 9, 2009        s/ Lisa Hughes
                                     Lisa Hughes

{K0400960.1}