UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHARLES BRYANT, individually and as next friend and guardian of D.B., *et al.*,

        Plaintiffs,

v.

NEW YORK STATE EDUCATION DEPARTMENT, *et al.*,

        Defendants.

No. 8:10-CV-36 (GLS / RFT)

---

## DECLARATION OF VIVIAN PRESLEY

I, Vivian Presley, upon my own personal knowledge, hereby depose and declare the following:

1. I am the aunt and legal guardian of D.P.

2. D.P. is an 18 year-old boy from New York who suffers from Mood Disorder NOS, Borderline Intellectual Functioning, and a severe behavior disorder that causes him to engage in dangerous and disruptive behaviors.

3. D.P. is currently receiving behavior modification treatment and special education at the Judge Rotenberg Educational Center, Inc. ("JRC") in Canton, Massachusetts.

4. D.P. has a long history of behavioral problems starting in the third grade. He has engaged in aggressive behaviors including attacking family members as well as others charged with his care. While at home he has shown verbal and physical aggression towards his family members, including one occasion when he hit his brother in the head. He has engaged in self-injurious behavior including excessive alcohol and drug use. He has been arrested for both heroin and marijuana possession. He has broken a window with his hand and has also run away

from home or treatment facilities. He has also engaged in destructive behavior including setting a bedroom ceiling on fire and urinating in his classroom. He has shown numerous non-compliant behaviors including refusing to take medication or accept other medical or psychiatric treatment. On most days prior to his admission to JRC he skipped school.

5. D.P.'s treatment history prior to his admission to JRC includes: individual, group, family, and activity therapy; weekly counseling; the use of quiet rooms; drug-rehabilitation programs; and, the prescription of psychotropic drugs including Depakote and Seroquel, both of which can have serious side effects.

6. D.P.'s placement history includes public school placements in New York, including P.S. 289 (George V. Brower), M.S. 390 (Maggie L. Walker), K625 (Paul Robeson High School), and multiple District 75 schools (K141, K403), where he was placed in 12:1:1 classroom.

7. D.P. has been admitted to numerous psychiatric facilities, including two separate admissions to Kings County Hospital Center in 2004: (1) in February 2004, after assaulting his mother and setting his bedroom on fire; and (2) in October 2004, after assaulting his mother and threatening to hurt himself. In January 2008, he was admitted to Four Winds Hospital, a psychiatric facility, for three weeks, because he was having trouble coping with his mother's death. D.P. also received outpatient treatment at Brooklyn Psychiatric Center, where he was followed by the Assertive Community Treatment ("ACT") team. ACT is a program designed to provide treatment, rehabilitation and support services to individuals who are diagnosed with a severe mental illness and whose needs have not been well met by more traditional mental health services.

{K0404899.4}

8. D.P. has been admitted to a number of substance abuse programs as well. He was admitted to Conifer Park, a private residential chemical dependency treatment facility, on two separate occasions, in March 2004 and January 2008. D.P. ran away from Conifer Park after one week of treatment in 2008 and was picked up by the police who brought him to Project Safe House, a men's shelter, where he resided while family and agency officials looked for a residential placement.

9. Prior treatments were not successful in treating D.P.'s behaviors, and such behaviors have prevented him from making academic progress. In addition, his behavior led to numerous incarcerations in connection with drug-related charges, and charges for assault, robbery and criminal possession of a weapon.

10. D.P.'s prior placements and treatment did not meet his needs. In July 2008 D.P. was evaluated by a psychiatrist who stated that the least restrictive environment for D.P. is a residential placement in a highly structured and supervised behavior modification program. See Psychiatric Evaluation by Zinoviy Gutkovich, M.D., dated July 10, 2008 and attached hereto as Exhibit A.

11. I placed D.P. at JRC for special education and behavior modification treatment because the school district did not find an appropriate placement for him, he was not receiving an appropriate education, the psychiatrist had recommended a 24-hour residential program, and because I could not safely keep him at home. D.P.'s placement at JRC is pursuant to an order of a State Review Officer, a copy of which is attached hereto as Exhibit B. D.P. was admitted to JRC on December 12, 2008. In connection with his June of 2008 arrest for, among other things, assault and robbery, a New York judge ordered D.P. to remain at JRC.

12. Since his admission to JRC, D.P. has been treated pursuant to a positive-only behavior modification treatment plan. D.P. is no longer on any psychotropic medications. While JRC has been able to keep D.P. safe by providing supervision at school and in his residence with increased staffing levels and enhanced safety precautions, and using emergency restraint when necessary, he still exhibits severe problematic behaviors and has been unable to make any visits home or participate in any field trips.

13. Since his admission to JRC, D.P. has continued to engage in aggressive and destructive behavior including throwing objects on the bus, ripping down cameras in the residence, and hitting staff members. On one occasion his aggression against a staff member resulted in the staff member requiring emergency room treatment. During many of these incidents staff used physical restraint to protect D.P. and others from harm. While at JRC, D.P. has continued to engage in self-injurious behavior including using electrical wires to light a cigarette (a contraband item at JRC), and attempting to run away from the facility. During the latter incident he stole a van. D.P. was arrested and is now on probation for a year for the unauthorized use of a vehicle. D.P. has been found in possession of dangerous and stolen items including a key to restraint cuffs and a lighter. D.P. has also engaged in disruptive and non-compliant behavior including urinating in his classroom, spitting out windows, and refusing to sit in his seat and/or do academic work.

14. D.P.'s severe problematic behaviors interfere with his ability to make meaningful academic and social progress.

15. D.P.'s clinician at JRC has informed me that in his opinion the least restrictive and most effective treatment for D.P. would be a behavior modification treatment plan with the addition of aversive interventions, including the Graduated Electronic Decelerator ("GED")

device, to treat his aggressive, destructive, major disruptive, health dangerous, and noncompliant behaviors. I have been informed about the nature of the aversive interventions and their proposed use with D.P. and have provided JRC with my written consent to add aversive interventions to his treatment plan to address his severe behavioral problems. Additionally, before treating D.P. with aversive interventions, JRC will seek the approval of a Human Rights Committee, a Peer Review Committee, D.P.'s school district, and a Massachusetts Probate Court judge. In addition, D.P. will be represented by a court-appointed attorney to protect his interests in the Probate Court proceeding.

16. I have been informed, by D.P.'s clinician at JRC, that under the regulations of the New York State Education Department, 8 N.Y.C.R.R. § 200.1 *et seq.* ("NYSED Regulations"), D.P. cannot access this potentially life-saving treatment, even though: (1) I have consented to it; (2) it is recommended by D.P.'s treating clinician at JRC; and, (3) D.P. has been physically examined by a physician who has found no medical reason why D.P. should not receive this treatment. I have also been informed that the NYSED Regulations reduce the effectiveness of aversive interventions by restricting their use in a manner not supported by the professional literature. The NYSED Regulations also require submission of the proposed treatment plan to an unqualified panel, who will never examine D.P., will never speak to me about D.P., and will only do a paper review of D.P.'s treatment needs. In addition, the Regulations impose a ban on the use of aversive interventions after June 30, 2009 which means aversive interventions cannot be added to D.P.'s IEP and treatment plan. I do not want D.P.'s treatment at JRC to be subject to the NYSED Regulations.

17. I believe that JRC's behavior modification treatment program, including aversive interventions such as the GED to address his aggressive, destructive, major disruptive, health

{K0404899.4}

dangerous, and noncompliant behaviors, is necessary to treat D.P.'s severe problematic behaviors, and is his only chance to receive an education and make social and behavioral progress, as well as to develop a rewarding relationship with his family. No other treatment has been successful at providing D.P. with the opportunity to make meaningful academic and social progress and contribute to his community and D.P. should not be deprived of the opportunity to have this treatment. No other school can provide D.P. with the opportunity to make more progress than he is making at JRC. The addition of aversive interventions to his program at JRC will help D.P. to make meaningful behavioral and educational progress.

18.     D.P. is currently at risk of further physical harm. If his behaviors are not treated properly, they could result in frequent physical and mechanical restraint, severe injury to himself and/or others, incarceration, institutionalization, or even death. D.P. needs aversive interventions to protect him against this physical harm and provide him access to a program and services within which he can make meaningful behavioral and educational progress.

{K0404899.4}

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE.

Executed on: December 3, 2009        s/ Vivian Presley
                                     Vivian Presley

{K0404899.4}

# EXHIBIT 1

JUL-11-2008  13:04

P.002

 University Hospital of Columbia University College of Physicians & Surgeons

St. Luke's-Roosevelt Hospital Center
1111 Amsterdam Avenue
New York, N.Y. 10025
Tel: 212 523 4000

WeHealNewYork.org

## PSYCHIATRIC EVALUATION

Patient's Name: D███ P███
Date of Birth: ███
Date of Evaluation: 07/10/08
Evaluated by: Zinoviy Gutkovich, MD

**Background and presenting problem:** D███ is 17 year-old boy who is currently seen in Brooklyn Psychiatric Center for outpatient treatment and followed by ACT Team. He resides with his biological maternal aunt Ms. V███ P███ who is his legal guardian and two brothers. He is brought for this evaluatinion to assess his emotional and behavioral problems and receive recommendations for appropriate interventions including school placement.

I have worked as a Medical Director of Child Psychiatry Inpatient Unit at Stony Brook University Hospital for 5 years. This allowed me to get extensive experience of working with children who have special educational and emotional needs. I am well familiar with school placement issues including residential programs that meet the needs of children with severe emotional disturbances.

For the purposes of this evaluation I have conducted clinical interview interviewed of D███, his aunt Ms. V███ P███, reviewed school records and hospital records from D███'s hospital admissions, and psychoeducational evaluations.

**History of psychiatric illness:** D███ is receiving psychiatric services since age 14. He receives counseling once a week. He sees psychiatrist but he is non-compliant with his medications – Seroquel and Depakote.

D███ is living with his maternal aunt who is his legal guardian since his mother died 10 months ago from massive heart attack. He has two brothers – 18 year-old and 10 year-old living in the household. His aunt has two adult daughters who live separately. The major concerns as per parent are the following: D███ has not been in school over two years. He "doesn't do anything." According to his aunt he doesn't even engage into regular teenage activities: he doesn't play videogames etc.; he spends most of his time out of the house with peers who inflict negative influence, smoking marijuana (up to 4 joints a day). D███ has a long history of somatic complaints, such as headache and stomachache.

He is disobedient and doesn't follow any rules. He doesn't do any chores. He is overeating at night secretively after whole family goes to bed (except recently after he sustained jaw fracture). He comes home around 2-3 AM. His aunt reports that he appears very depressed and she believes that D███ is "fearful of real world." According to his aunt the facade that he presents to the world e.g. to his teachers is a "nice guy" but this is

Continuum Health Partners, Inc.

 

JUL-11-2008  13:05                                                                                          P.003

**St. Luke's Roosevelt**

University Hospital of
Columbia University College
of Physicians & Surgeons

St. Luke's-Roosevelt
Hospital Center
1111 Amsterdam Avenue
New York, N.Y. 10025
Tel: 212 523 4000

WeHealNewYork.org

far from truth. D▇ has a history of gambling with dice. He had been arrested four times for gambling and for possession of marijuana.

D▇ developed psychiatric problem such as emotional lability, impulsivity, disobedience since age 12. He started to smoke and use alcohol at age 12. His condition worsened at age 14 when he started to set fires and became verbally and physically aggressive toward his younger brother and his mother. At that time he had his first psychiatric admission after he attempted to put ceiling of his bedroom on fire and assaulted his mother. He was admitted to Kings County hospital due to this incident for 2 weeks. At that time ACS was involved. Since discharge from the hospital D▇ had been receiving outpatient treatment. Two years ago D▇ completely stopped going to school. Prior to that he was well adjusted to school and was passing his grades.

D▇'s father had never been around for the most of D▇'s life. D▇'s aunt believes that his symptoms worsened further after his mother's death. His father had been incarcerated for several years for rubbery and recently came out of jail. D▇ has regular contact with his father who buys him things which his aunt believes reinforces D▇'s idea that "money = love." Father does tell D▇ that he "should not repeat his path" and tries to encourage proper behaviors with no success.

Recently D▇ sustained a jaw fracture when he was mistakenly taken by the police as a suspect in a robbery, and placed into jail for seven days. He sustained the jaw fracture in jail. His aunt believes that it is result of his life style which led him to be "in the wrong place in the wrong time".

Prior to his arrest D▇ was admitted to "Four wings" hospital after having fight with his aunt to address his continued severe emotional and behavioral problems and school non-compliance. He stayed in the hospital for one month (January 9-29 of 2008). He was diagnosed with Mood Disorder Not Otherwise Specified and placed on his current medications Seroquel and Depakote which he is presently not taking. Even in the structured setting of the inpatient facility D▇ did not follow the rules and required "Quiet Room" placements. On one occasion he was physically aggressive toward his peer. He was then referred to Residential Rehabilitation Center in Albany named Conifer Park rehababilitation program to continue to treat his drug problem. He stayed in residential facility only for one week and then escaped. He was found by police and placed to the shelter ("Project safe.") His aunt refused to take him home because of concern that she wouldn't be able to get him proper treatment. Case was reported to ACS for abandonment but eventually ACS worker understood the situation and tried to help with the placement. However nothing was accomplished and D▇ was taken home one month later (in March of this year). Since then he resumed outpatient care to no avail. D▇ has a history of multiple instances of running away, including the incident described above as well as running away from drug rehab program at the age of 14, and running away from the police when taken to the hospital at age 14.

His aunt tries to discipline him by taking things away but "nothing works." D▇ also has impulsive behaviors such as lying (e.g. about what he needs money for); there is no history of stealing.

Continuum Health Partners, Inc.

Beth Israel | Roosevelt Hospital | St. Luke's Hospital | Long Island College Hospital | NY Eye & Ear Infirmary

JUL-11-2008  13:05

P.004



University Hospital of
Columbia University College
of Physicians & Surgeons

St. Luke's-Roosevelt
Hospital Center
1111 Amsterdam Avenue
New York, N.Y. 10025
Tel: 212 523 4000

WeHealNewYork.org

**Family history:** D▮ lives with his maternal aunt and two brothers since his mother died in September 2007. The relationship between him and his aunt worsened since she placed him into the hospital – he feels that he can not trust her. According to aunt D▮ has very hostile relationship with his 18 year old brother named D▮. His 10 year old brother looks up at him and D▮ says that his younger brother is the only person he cares about. As a child D▮ witnessed domestic violence between his biological father and his mother.

D▮'s maternal uncle has history of suicidal behavior. D▮ has two cousins who are taking psychotropic medications. D▮'s father has a history of cocaine abuse.

**Developmental history:** D▮'s mother had hypertension during pregnancy with him. The delivery was through C-section. He met developmental milestones.

**Medical history:** D▮ has a history of asthma. He also has a history of seizures. He also has history of head trauma due to a fall from the jungle gym.

**Prior Testing:** D▮ had psycho-education evaluation performed in December 2005, and April 2008. Both recent and previous psycho-educational evaluations indicate borderline level of functioning. The evaluation from April 2008 demonstrated full IQ score of 79.

Most recent psychological testing in April of 2008 showed that his academic achievement tests fell into extremely low range. His scores are as follows. READING: letter-word identification - 5.6 grade equivalent; passage comprehension - 4.5 grade equivalent; reading fluency - 3.2 grade equivalent. MATHEMATICS: calculation - 3.8 grade equivalent; applied problems - 4.8 grade equivalent; math fluency - 5.5 grade equivalent. WRITTEN EXPRESSION: age equivalent of 4.0 and grade equivalent for Pre-K, 5.0. The most recent psychological testing indicates significant regression in academic and social/emotional functioning.

I have reviewed the letter from Scott Opper, LCSW, Program Director of Brooklyn Children's ACT Team. I agree with his recommendation that residential treatment is the only viable option, as D▮ is not presenting clinical necessity for hospitalization.

**Mental Status Examination:** D▮ is 17 year-old boy looking his stated age. He was cooperative with interview but guarded. He reported feeling angry often and said that marijuana helps him to relax. He says that it makes him angry when people tell him what to do or yell at him. He said that he has bad days when he feels angry for a long time even after precipitant is over. He admits that he gets mad easily. On one occasion a while ago he broke the window when he had an angry outburst. He denies destroying property when having angry outbursts lately ("I just yell").

**Continuum** Health Partners, Inc.

    

JUL-11-2008  13:06                                                                                      P.005

       University Hospital of           **St. Luke's-Roosevelt**
**St. Luke's**             Columbia University College      **Hospital Center**
**Roosevelt**              of Physicians & Surgeons         1111 Amsterdam Avenue
                                                            New York, N.Y. 10025
                                                            Tel: 212 523 4000

                                                            WeHealNewYork.org

He is vague when describing relationships with his family. He denies significant relational problems with his older brother. He does confirm information provided by aunt that he likes his younger brother. He gives very concrete explanation for his good relationship with younger brother – "when my mom was pregnant I was helping her." He says that he doesn't like seeing his father because father also "tells him what to do." He describes his school experience in elementary and middle school as a positive one. He says that he was left back in 9th grade and since then lost interest in school: "school is not for me." He denies feeling depressed but shows very sad facial appearance and severely restricted affect.

He doesn't show any animation when describing fun activities, says that he watches TV and talking with friends on the phone when at home and hanging out with his friends outside of home. He says he has only one close friend. He reports that at some point he used a lot of marijuana – 20 gram a day but uses smaller amount – one bag every other day more recently (it could be that he minimizes his drug problem out of fear to be placed into drug treatment). He says that he was attached to his mother and it was hard for him lose her. He did visit the cemetery. He says that it was easier for him to listen to his mother than listen to his aunt.

He describes feeling unhappy "because he doesn't have enough money." When asked what he would do with the money he says that he would buy clothes, snickers etc. He doesn't have ambition to go to college and says that he would get the GED diploma and would work as a construction worker. When confronted that he didn't pursue getting his GED until now he gives concrete explanation that it was only because school was far from home.

He showed limited ability for abstract thinking. When asked to interpret the proverbs he was concrete and missing the meaning. He interpreted proverb "One should not cry over spilled milk" that one "should not cry over something small." He was not able to interpret proverb "grass always seems to be greener on another side of the fence" (he said that "grass is greener on another side").

D▮▮ does not have thought disorder but he shows poverty of thought. He does not have auditory or visual hallucinations. He does not have suicidal or homicidal ideation. He has extremely poor insight and judgment.

Impression: D▮▮ is 17 year old boy with long history of severe emotional, behavioral and academic problems and drug use. Even though he denies feeling depressed he manifests depressive symptoms: he displays severely restricted affect, irritability, and somatic complaints. He has lack of interest or motivation. He is anhedonic. He does not have aspirations for the future. He has limited social relationships. He shows severe academic decline. He experienced severe traumatic events and losses: his father was incarcerated for many years, his mother died suddenly and unexpectedly. He witnessed

Continuum Health Partners, Inc.

            

**St. Luke's Roosevelt**

University Hospital of
Columbia University College
of Physicians & Surgeons

St. Luke's-Roosevelt
Hospital Center
1111 Amsterdam Avenue
New York, N.Y. 10025
Tel: 212 523 4000

WeHealNewYork.org

domestic violence. He experienced the death of his grandmother and witnessed the terrorist attack on September 11th, 2001.

Complications during pregnancy, seizures and head trauma, could have contributed to his biological vulnerability. The genetic loading of psychiatric illness and drug abuse in the family could have contributed to his vulnerability as well.

He has cognitive limitations which contribute to his academic failure and probably further increase his demoralization. His depressive symptoms precede his drug use but in turn are exacerbated by marijuana use. Marijuana use probably contributes to his progressive academic decline as he showed low but somewhat higher academic scores on psychoeducational testing at 2005 than his scores in 2008. The fact that D▮ remained symptomatic after being clean over month period during his hospital stay supports that his emotional problem are primary. He does report that he uses marijuana to self medicate to deal with his intense feeling of anger. His problems are further exacerbated by his severe non-adherence to treatment. His aunt is capable, caring and involved but the level of care D▮ receives currently is not sufficient to control his symptoms.

## DIAGNOSIS:

Axis I: Depressive Disorder, Not Otherwise Specified
   Mood Disorder, Not Otherwise Specified by history
   Borderline intellectual functioning.
   Learning disorder, Not Otherwise Specified.
   Cannabis abuse.
   Parent-child relational problem.
   Sibling relational problem.
Axis II: Deferred
Axis III: History of asthma.
   History of seizures.
   History of head trauma.
Axis IV: educational, family, social problems.
Axis V: 48

Continuum Health Partners, Inc.

    

JUL-11-2008   13:06                                                                                P.007



University Hospital of
Columbia University College
of Physicians & Surgeons

**St. Luke's-Roosevelt
Hospital Center**
1111 Amsterdam Avenue
New York, N.Y. 10025
Tel: 212 523 4000

Recommendations:                                                           WeHealNewYork.org

I strongly recommend immediate placement in a twelve-month structured residential educational program, with intensive behavior modification component and substance abuse counseling. Short-term drug rehabilitation placement is not appropriate at this time. D⬛ requires a long-term residential placement in a therapeutic boarding school because he needs 24-hour supervision and emotional support in order to benefit from instruction and make academic progress. The school setting should include students with emotional/behavioral disorders, and low average intelligence. The classes should be small and highly structured, to ensure individual attention and redirection throughout the school day. D⬛ needs ongoing behavior management program with a focus on positive incentives but with strict behavioral consequences for non-compliance and work refusal. Ongoing behavioral and group counseling should be provided by staff which is specifically trained to work with adolescents with emotional and behavioral disorders including substance abuse issues. Therapeutic approach should be aimed at assisting D⬛ with identifying and understanding his negative avoidance behaviors, improving his self-esteem and self-confidence, and assisting him with developing more appropriate responses to emotionally challenging situations and academic work. D⬛ requires ongoing behavioral support throughout the day in order to reduce his inappropriate behavioral responses and learn replacement strategies for coping with challenging social situations and compliance with school work.

Residential placement in a highly structured and supervised behavior modification program is the least restrictive environment for D⬛ at this time. He has significantly regressed in the special education program in a public school setting and desperately needs transfer to a residential school. If this does not happen, D⬛ is very likely to continue regress socially, academically, emotionally, and behaviorally. He is at risk for developing worsening emotional and behavioral problems, e.g., clinical depression, bipolar disorder, serious substance abuse. Without an adequate educational program, D⬛ is likely to become a victim and a target for aggressive adolescents. D⬛ has many positive characteristics and a supportive family. If he is placed in an adequate environment, there is a good possibility that he may make significant positive changes and achieve academic progress commensurate with his abilities. A follow-up psychiatric evaluation is recommended in six months.

*[signature]*

Zinoviy Gutkovich, MD
Assistant Professor of Psychiatry
Board Certified Child Psychiatry/General Psychiatry

Continuum Health Partners, Inc.

    

TOTAL P.007