UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CHARLES BRYANT, individually and as next friend and guardian of D.B., *et al.*,

        Plaintiffs,

v.

NEW YORK STATE EDUCATION DEPARTMENT, *et al.*,

        Defendants.

No. 8:10-CV-36 (GLS / RFT)

---

## DECLARATION OF JAMIE TAM

I, Jamie Tam, upon my own personal knowledge, hereby depose and declare the following:

1. I am the mother and a legal guardian of S.T.

2. S.T. is a 16 year-old boy from New York who suffers from Autistic Disorder, Moderate Mental Retardation, and a severe behavior disorder that causes him to engage in dangerous and disruptive behaviors.

3. S.T. is currently receiving behavior modification treatment and special education at the Judge Rotenberg Educational Center, Inc. ("JRC") in Canton, Massachusetts.

4. S.T. has a long history of engaging in aggressive, destructive, disruptive, noncompliant, and self-injurious behavior, including: assaulting myself, my husband and our daughter, S.T.'s older sister, who is extremely scared of him; pinching his father while he was driving in the car; frequent hitting, pinching, pushing, and attacking other students, teachers, and treatment providers; property destruction; touching others without permission; masturbating at inappropriate times and in inappropriate places; refusing to follow directions; pulling out his

{K0400776.3}

eyebrow, leg, and pubic hair; head banging and a number of other dangerous self-stimulatory behaviors. For example, S.T. has put his whole hand down his throat to make himself gag and has pulled his own adult teeth out of his mouth repeatedly. S.T. removed at least four (4) adult teeth at his last placement and removed additional teeth while at home. S.T. has only fourteen (14) adult teeth left in his mouth as a result of his behavior.

5. S.T.'s treatment prior to his admission to JRC included public school placement in New York, private residential placement at the Devereux Foundation in New York ("Devereux"), Early Autism Intervention, Applied Behavior Analysis, Speech Therapy, Occupational Therapy, and a wide variety of other behavioral interventions, as well as the prescription of medications including Ativan, Ambien, and the anti-psychotic drugs Zyprexa, Risperdal, and Thorazine, which can have serious side effects and have in the past caused S.T. to have head tics.

6. Devereux, S.T.'s last placement prior to his admission to JRC, expelled him because they could not keep him safe, despite every clinical intervention tried by that placement, including but not limited to: 24 hour 1:1 supervision; the use of mitts during overnight hours to try to keep S.T. from pulling out his own teeth; and large doses of the antipsychotic drug Zyprexa. This program required me and my husband, S.T.'s father and a legal guardian, to sign an "Acknowledgement & Release" acknowledging that the program could no longer keep S.T. safe, acknowledging that the program recommended that we find a more restrictive treatment setting to address S.T.'s treatment needs, and releasing the program from any liability. A copy of the Acknowledgment & Release is attached hereto as Exhibit 1.

7. Prior treatments were not successful in treating S.T.'s behaviors, and such behaviors have prevented him from making academic progress.

{K0400776.3}

8. S.T.'s prior placements and treatment did not meet his needs. S.T.'s last placement prior to JRC was at Devereux, a private residential school. S.T. was referred to Devereux by the New York City Department of Education and S.T.'s school district, District 21 in Brooklyn. When Devereux determined in December 2008 that it could no longer keep S.T. safe, the school recommended that the New York City Department of Education and S.T.'s school district look for a new school for S.T. because S.T. needed a higher level of care than Devereux could provide.

9. Because the school district could not find any appropriate placement for S.T., he was not receiving an appropriate education, and Devereux could no longer keep him, his father and I placed S.T. at JRC for appropriate special education and behavior modification treatment, including treatment with the Graduated Electronic Decelerator ("GED") device. S.T. was admitted to JRC on March 13, 2009.

10. My husband and I have tried to work with the school district to have JRC and treatment with the GED placed on S.T.'s Individualized Education Program ("IEP") but the process is still ongoing as of today, even though the district has not been able to provide an alternative appropriate placement.

11. Since his admission to JRC, S.T. has been on a positive-only behavior modification treatment plan. S.T. is no longer on any anti-psychotic medications. While JRC has been able to keep S.T. safe by using arm splints and physical restraint, he is not making meaningful progress, has been unable to participate in any academic field trips or make any home visits, and still exhibits severe problematic behaviors.

12. Since his admission to JRC, S.T. has been prevented from removing any more of his teeth but he is pressurizing his teeth on his shoulders and on other objects such as tables and

{K0400776.3}

cups and may seriously hurt himself if he continues to attempt to remove his own teeth. He also continues to assault others and engage in self-injurious behavior such as: hitting, punching, biting, or pinching himself; putting his hand down his throat; pulling out his own eyebrow, leg, and pubic hair; and head-banging.

13. S.T. also continues to engage in destructive and noncompliant behaviors, such as tearing, ripping, and throwing objects; touching others without permission; masturbating at inappropriate times and in inappropriate places; refusing to follow directions; and somersaulting at inappropriate times such as during classroom activities.

14. S.T.'s severe problematic behaviors interfere with his ability to make meaningful academic progress.

15. S.T.'s clinician at JRC has informed me that in his opinion the least restrictive and most effective treatment for S.T. would be a behavior modification treatment plan with the addition of aversive interventions, including the GED device, to treat his aggressive, destructive, major disruptive, health dangerous, and noncompliant behaviors, including the severe and life threatening head-banging which he engages in. I have been informed about the nature of the aversive interventions and their proposed use with my child and have provided JRC with my written consent to add aversive interventions to his treatment plan to address his severe problematic behavior. Additionally, before treating S.T. with aversive interventions, JRC will seek the approval of a Human Rights Committee, a Peer Review Committee, S.T.'s school district and, a Massachusetts Probate Court judge. In addition, S.T. will be represented by a court-appointed attorney to protect his interests in the Probate Court proceeding.

16. I have been informed, by S.T.'s clinician at JRC, that under the regulations of the New York State Education Department, 8 N.Y.C.R.R. § 200.1 *et seq.* ("NYSED Regulations"),

{K0400776.3}

my child cannot have access to this potentially life-saving treatment, even though: (1) I have consented to it; (2) it is recommended by S.T.'s treating clinician at JRC; and (3) S.T. has been physically examined by a physician, who has found no medical reason why S.T. should not receive this treatment. I have also been informed that the NYSED Regulations reduce the effectiveness of aversive interventions by restricting their use in a manner not supported by the professional literature. The NYSED Regulations also require submission of the proposed treatment plan to an unqualified panel who will never examine S.T., will never speak to me about S.T., and will only do a paper review of S.T.'s treatment needs. In addition, the NYSED Regulations impose a ban on the use of aversive interventions after June 30, 2009, which means aversive interventions cannot be added to S.T.'s IEP and treatment plan. I do not want S.T.'s treatment at JRC to be subject to the NYSED Regulations.

17. I believe that JRC's behavior modification treatment program, including aversive interventions such as the GED to address his aggressive, destructive, major disruptive, health dangerous, and noncompliant behaviors, is necessary to treat S.T.'s severe problematic behaviors, and is his only chance to receive an education and make social and behavioral progress, as well as to develop a rewarding relationship with his family. No other treatment has been successful at providing S.T. with the opportunity to make meaningful academic and social progress and contribute to his community and S.T. should not be deprived of the opportunity to have this treatment. No other school can provide S.T. with the opportunity to make more progress than he is making at JRC, and no other school will accept my son. The addition of aversive interventions to his program at JRC will help S.T. to make meaningful behavioral and educational progress.

18.     S.T. is currently at risk of further physical harm. If his behaviors are not treated properly, they could result in permanent physical disfigurement, massive pharmacological intervention and associated side effects, frequent physical and mechanical restraint, severe injury to others, incarceration, institutionalization, or even death. S.T. needs aversive interventions to protect him against this physical harm and provide him access to a program and services within which he can make meaningful behavioral and educational progress.

{K0400776.3}

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND ACCURATE.

Executed on: December 7, 2009         s/ Jamie Tam
                                      Jamie Tam

# EXHIBIT 1



The Devereux Foundation

Arizona
California
Connecticut
Delaware
Florida
Georgia
Maryland
Massachusetts
New Jersey
New York
Pennsylvania
Texas

## ACKNOWLEDGEMENT & RELEASE

We, J▇ and G▇ T▇, parents and guardians of S▇ T▇, DOB ▇ acknowledge that the clinical staff at The Devereux Foundation's New York Red Hook Campus School have informed us that despite every clinical intervention employed to date, including, but not limited to, 24 hour 1:1 supervision, that S▇ continues to engage in self injurious behavior. We further acknowledge that because of the severity of S▇'s ongoing behaviors that the Campus School clinical staff has recommended to us that S▇ be placed in a more restrictive treatment setting that can better address S▇'s treatment needs. Despite our full awareness of these circumstances and recommendation, we have chosen to keep S▇ in treatment at Campus School.

Consequently, as long as S▇ remains in care at Campus School, his clinical team will continue to therapeutically address and clinically intervene in an effort to prevent or lessen his self-injurious behaviors, although the recommendation for a transition to a higher level of care continues. We agree that if S▇ causes bodily injury, other damages, including property damage, to himself or another as a result of his behaviors while at the school at Red Hook, that we will indemnify and hold The Devereux Foundation, its officers, directors, employees, agents and contractors harmless from any liability, cost, damage, settlement, judgment or other related expense.

We also agree that any medical expense incurred for treatment of any injury S▇ inflicts upon himself or another is not the responsibility of The Devereux Foundation.

Our signatures below demonstrate our agreement with the above and we acknowledge that our agreement was given freely and voluntarily.

Signed: _____
J▇ T▇ (mother)

Print Name: _____

Date: _____

Signed: _____
G▇ T▇ (father)

Print Name: _____

Date: _____