UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――

CHARLES BRYANT, individually and as next friend and
guardian of D.B., AVA GEORGE, individually and as next
friend and guardian of B.G., CHANIN HOUSTON-
JOSEPHAT, individually and as next friend and guardian
of A.J., LISA HUGHES, individually and as next friend
and guardian of J.R., CARMEN PENA, individually and as
next friend and guardian of G.T., VIVIAN PRESLEY,
individually and as next friend and guardian of D.P., and
JAMIE TAM, individually and as next friend and guardian
of S.T.,

                                        *Plaintiffs*,

                     v.

NYS EDUCATION DEPARTMENT; DAVID M.
STEINER, in his capacity as Commissioner of Education
of the New York State Education Department, and THE
NEW YORK STATE BOARD OF REGENTS
                                        *Defendants.*

――――――――――――――――――

**DECLARATION**

10-CV-0036

GLS/RFT

Patricia J. Geary, does hereby declare under penalty of perjury, that:

1.      I am the Coordinator of Special Education Policy and Professional Development

in the Office of Vocational and Educational Services for Individuals with Disabilities

(hereinafter "VESID").  VESID is an Office within the New York State Education Department

(hereinafter "SED").  I make this declaration in opposition to the above-captioned plaintiffs'

application for a preliminary injunction order and in support of defendants' cross-motion to

dismiss.

1

2.      As Coordinator of Special Education Policy and Professional Development, I am familiar with the allegations set forth in plaintiffs' complaint, as well as with the facts set forth below.  I make this affidavit on personal knowledge, unless otherwise stated.

3.      The federal regulations implementing the Individuals with Disabilities Education Act (IDEA) defines a free appropriate public education (FAPE)[1] to mean special education and related services provided at public expense, under public supervision and direction, and without charge; special education and related services that meet the standards of the State Educational Agency, including the requirements of Part 300 of the federal regulations; programs and services that include an appropriate preschool, elementary school or secondary school education in the State involved; and provided in conformity with an individualized education program (IEP) that meets the requirements of §§ 300.320 through 300.324.  34 CFR § 300.324(a)(2) requires that the IEP Team must, in the case of a child whose behavior impedes the child's learning or that of others, consider the use of positive behavioral interventions and supports, and other strategies, to address that behavior.   Subpart E of 34 CFR Part 300 implementing IDEA establishes the procedural safeguards due process procedures for parents of children with disabilities.   Through these procedural safeguards, the parent(s) of a student who disagrees with the recommendation of the IEP Team may file a due process complaint notice to request an impartial hearing.  Decisions made at an impartial hearing may be appealed to the State Review Officer (SRO).  A decision made at the SRO level may be appealed to court.

4.      The IEP team in New York State for school-age students is called the Committee on Special Education (hereinafter called the "CSE.").

5.      8 NYCRR §§ 19.5 and 200.22 include requirements relating to the State's standards for behavioral interventions for students with disabilities.  These regulations were developed and adopted in full compliance with federal requirements for public hearings and the State Administrative Procedures Act (SAPA).

- § 19.5 establishes the State's prohibition on the use of corporal punishment; and prohibition on the use of aversive interventions, except as provided in subdivision (e) of § 200.22.

- Subdivisions (a) through (d) of § 200.22 establishes the State's standards and procedures relating to the assessment of student behaviors, behavioral intervention programs, use of time out rooms and emergency interventions.

- Subdivision (e) of § 200.22 establishes the procedures for a child-specific exception to the use of aversive interventions during the 2006-2007, 2007-2008 and 2008-2009 school years; provided that a student whose IEP includes the use of aversive interventions as of June 30, 2009 may be granted a child-specific exception in each subsequent school year, unless the IEP is revised to no longer include such exception. These regulations require that, whenever a CSE is considering whether a child-specific exception is warranted the school district must submit an application to the Commissioner requesting review of student specific information by an independent panel of experts.  The Commissioner refers the application to an independent panel of experts to review the application and provide a recommendation to the CSE as to whether a

---

[1] 34 CFR § 300.17

child-specific exception is warranted.  The CSE then determines, based on its consideration of the recommendation of the panel, whether the student's IEP shall include a child-specific exception allowing the use of aversive interventions.

- Subdivision (f) of § 200.22 establishes the program standards for the use of aversive intervention.  The Regulations require that each school that uses aversive interventions with students shall establish a Human Rights Committee to monitor the school's behavior intervention program for any student being considered for or receiving aversive interventions to ensure the protection of legal and human rights of individuals.  The Human Rights Committee is required to meet at least quarterly.  When the purpose of the Human Rights Committee meeting includes a review of an individual New York State student's program, a representative of the school district or agency placing the student in the program and a representative of SED must be invited to participate.  Since 2007, SED has participated in each Human Rights Committee that JRC notified SED it has scheduled to discuss students from New York State.

6.      Plaintiffs' papers indicate D.B. has attended the Judge Rotenberg Educational Center ("JRC") since September 2004.  Despite the fact that the CSE for D.B. could have followed the procedures for a child-specific exception to use aversive interventions, it did not do so for any IEP to be in effect during the 2006-07, 2007-08, and 2008-09 school years.  SED received a child-specific application for D.B. on June 29, 2009, yet his IEP as of June 30, 2009 did not include the use of aversive interventions.  Information accompanying the application indicated the CSE was not considering the use of aversive interventions.  I reviewed D.B.'s IEP dated July 2009 (see Exhibit

A).  This IEP identifies behaviors that interfere with his learning and identifies positive behavioral

supports to address his behaviors during the school day.   The IEP further provides special

transportation recommendations to address D.B.'s behaviors during transportation to and from

school. D.B.'s IEP does not include a recommendation for the use of aversive interventions.

Therefore, the CSE has necessarily determined that D.B. can receive FAPE without the use of

aversive interventions.   In addition, although JRC was required to convene a Human Rights

Committee meeting for each student it was considering the use of aversive interventions with, D.B.

was not a student discussed at any of the Human Rights Committee meetings held pursuant to 8

NYCRR § 200.22(f), despite the fact that D.B. has attended JRC since September 2004.

7.        Plaintiff's papers indicate B.G. has attended JRC since September 2008.  Despite the

fact that the CSE for B.G. could have followed the procedures for a child-specific exception to use

aversive interventions, it did not do so during the 2008-09 school year.  I reviewed the B.G.'s IEP

dated June 23, 2009 (Exhibit B).  The IEP indicates that B.G. is a nonverbal youngster whose

primary means of communication is through gestures and a communication device and that he

displays behaviors that interfere with learning.  B.G's IEP includes a recommendation for a one-to-

one aide to address student behaviors.  The IEP does not include a recommendation for the use of

aversive interventions.  Therefore, the CSE has necessarily determined that B.G can receive FAPE

without the use of aversive interventions.   In addition, although JRC was required to convene a

Human Rights Committee meeting for each student it was considering the use of aversive

interventions with, B.G. was not a student discussed at any of the Human Rights Committee

meetings to which SED was invited to participate, pursuant to 8 NYCRR § 200.22(f), despite the fact that B.G. has attended JRC since September 2008.

8.     Plaintiffs' papers indicate A.J. has attended JRC since March 2007.  Despite the fact that the CSE for A.J. could have followed the State's regulatory procedures for a child-specific exception to use aversive interventions, it did not do so during the 2007-08 and 2008-09 school years.  I reviewed the IEP of A.J. dated July 8, 2009 (Exhibit C).   A.J.'s IEP indicates she has autism and that she has behaviors that impede learning.  Her IEP includes a recommendation for a crisis paraprofessional (one to one aide) and special transportation recommendations to address her behaviors.   The IEP does note that JRC is "seeking court authorization" to use aversive interventions. Because the CSE did not submit a child-specific exception application and expressly recommend aversive interventions for A.J. in her IEP, the CSE has necessarily determined that A.J. can receive FAPE without the use of aversive interventions.  In addition, although JRC was required to convene a Human Rights Committee meeting for each student it was considering the use of aversive interventions with, A.J. was not a student discussed at any of the Human Rights Committee meetings held pursuant to 8 NYCRR § 200.22(f), despite the fact that she has attended JRC since March 2007.

9.     Plaintiffs' papers indicate D.P. has attended JRC since December 2008.  Despite the fact that the CSE for D.P. could have followed the State's regulatory procedures for a child-specific exception to use aversive interventions, it did not do so during the 2008-09 school year.  I reviewed the IEP of D.P., dated May 13, 2009 (Exhibit D).  D.P.'s IEP indicates that he has behaviors that impede learning and includes a recommendation for a one-to-one aide and positive behavioral

supports ("positive point system") to address his behaviors.  D.P.'s IEP did not include a recommendation for the use of aversive interventions.  Therefore, the CSE has necessarily determined that D.P. can receipt FAPE without the use of aversive interventions.  D.P.'s parent(s) have due process rights to request an impartial hearing to dispute the recommendations of the CSE. In addition, although JRC was required to convene a Human Rights Committee meeting for each student it was considering the use of aversive interventions with, D.P. was not a student discussed at any of the Human Rights Committee meetings held pursuant to 8 NYCRR § 200.22(f), despite the fact that D.P. has attended JRC since December 2008.

10.     Plaintiffs' papers indicate S.T. has attended JRC since March 2009.  Despite the fact that the CSE for S.T. could have followed the State's regulatory procedures for a child-specific exception to use aversive interventions, it did not do so during the 2008-09 school year.  I reviewed S.T.'s IEP dated January 5, 2009 (Exhibit E).  S.T.'s IEP identifies him as a student with autism who has limited verbal skills and behaviors that impede learning.  The IEP includes a recommendation for a "behavior management paraprofessional" (one-to-one aide), positive behavioral supports ("reinforcers") and a behavioral intervention plan to address the student's behaviors.  S.T.'s IEP does not include a recommendation for the use of aversive interventions.  Therefore, the CSE has necessarily determined that S.T. can receive FAPE without the use of aversive interventions.  In addition, although JRC was required to convene a Human Rights Committee meeting for each student it was considering the use of aversive interventions with, S.T. was not a student discussed at any of the Human Rights Committee meetings held pursuant to 8 NYCRR §200.22(f), despite the fact that he has attended JRC since March 2009.

11.     Plaintiffs' papers indicate J.R. has attended JRC since October 2008.  Despite the fact that the CSE for J.R. could have followed the State's regulatory procedures for a child-specific exception to use aversive interventions, it did not do so during the 2008-09 school year.  I reviewed the IEP of J.R. dated March 25, 2009 (Exhibit F).  J.R.'s IEP identifies that he has behaviors that interfere with his learning or that of others and includes recommendations for counseling, a one-to-one aide, positive behavioral supports and interventions to address his behaviors.  J.R.'s IEP does not include a recommendation for the use of aversive interventions.  The CSE has necessarily determined that J.R. can receive FAPE without the use of aversive interventions.  In addition, although JRC was required to convene a Human Rights Committee meeting for each student it was considering the use of aversive interventions with, J.R.. was not a student who was discussed at any of the Human Rights Committee meetings held pursuant to 8 NYCRR § 200.22(f), despite the fact that J.R. has attended JRC since October 2008.

12.     Plaintiffs' papers indicate G.T. has attended JRC since February 2008.  Despite the fact that the CSE for G.T. could have followed the State's regulatory procedures for a child-specific exception to use aversive interventions, it did not do so during the 2008-09 school year.  A child-specific application was submitted for G.T. on June 8, 2009 accompanied by an April 8, 2009 IEP which clearly indicated that the CSE was not considering the use of aversive interventions.  Despite the CSE's statement that it was not considering the use of aversive interventions, the panel reviewed the student's application and provided information on their review to the CSE.  The CSE reviewed the panel recommendations and continues not to recommend aversive interventions for this student. I reviewed G.T.'s IEP dated November 13, 2008 /revised August 26, 2009 (Exhibit G).  G.T.'s IEP

identifies him as a "generally a non-verbal student" with behaviors that impede learning.  G.T.'s IEP

includes the following recommendations to address his behaviors: a protective helmet to protect him

from injury during head-banging[2], a one-to-one aide during school and residential hours, and special

transportation recommendations ('mechanical restraints and/or an emergency restraint chair').  G.T.'s

IEP does not include a recommendation for the use of aversive interventions.   The CSE has

necessarily determined that G.T. can receive FAPE without the use of aversive interventions.   In

addition, although JRC was required to convene a Human Rights Committee meeting for each

student it was considering the use of aversive interventions with,  G.T. was not a student who was

discussed at any of the Human Rights Committee meetings held pursuant to 8 NYCRR § 200.22(f),

despite the fact that G.T. has attended JRC since October 2008.

13.      Plaintiffs' state "based upon their education, training, and professional judgment, JRC

clinicians have concluded that aversive interventions represent the Students' only opportunity for a

FAPE and for meaningful academic, behavioral, and developmental progress in the least-restrictive

environment available to them."   Under the IDEA, it is the IEP Team (in New York State, the CSE),

and not any one individual, that determines FAPE for a student with a disability.   JRC has 13

clinicians[3], only three of whom hold licenses from the State of Massachusetts as Psychologists[4].  In

fact, the clinician appointed as the Director of Clinical Services at JRC does not hold a

Massachusetts license as a psychologist.  In addition, and as stated above, the CSE for each of the

---

[2]  8NYCRR §19.5(b)(2)(v) provides that the definition of aversive interventions does not include interventions that are medically necessary for the treatment or protection of the student.
[3] http://www.judgerc.org/Key_Features/program_design.html
[4] Based on a review of licensed psychologists at
http://license.reg.state.ma.us/pubLic/pubLicenseQ.asp?board_code=PY&type_class=PR&license_number=0000079
11&color=blue&lb=PY

individual Students have determined that FAPE can be provided to these students without aversive interventions.

14.     NYS Regulations (8 NYCRR §§ 19.5(b) and 200.22) have been in effect since 2006.

15.     JRC is a school that uses aversive interventions with students.  New York State Regulations requires that each school that proposes to use aversive interventions pursuant to a child-specific exception shall submit its policies and procedures consistent with 8 NYCRR § 200.22 to SED for approval prior to the use of such interventions. VESID offers schools, agencies and programs affected by a new or revised regulation a reasonable time from the regulation's effective date to make necessary modifications in policies, procedures, practices and staffing.  VESID sometimes requires a program to prepare a corrective action plan that establishes steps and timetables for compliance.

16.     Plaintiffs state (paragraph 69) that "NYSED has monitored JRC's behavioral treatment program closely and conducted regular and far-reaching quality assurance reviews of JRC, its staff, its policies and its procedures, including JRC's use of aversive interventions."  From 2006 through 2009, I reviewed the written policies and procedures of JRC to assist in SED's determination as to whether such policies and procedures were in compliance with State regulations.  Since the Regulations were enacted, NYSED has repeatedly found noncompliance by JRC.  NYSED initiated corrective action with the school.  It was not until July 23, 2009 that JRC agreed to comply with the required policies, procedures and practices of 8NYCRR § 200.22, upon pending enforcement action to close the school to new admissions for failure to comply with the State's standards relating to behavioral interventions.  § 200.22 establishes the State's standards for assessment of student

behaviors, behavioral intervention plans, use of time out rooms, emergency interventions, child-specific exceptions to use aversive interventions, and program standards for the use of aversive interventions, including standards for Human Rights Committee meetings, staff supervision and training, parent consent, quality assurance reviews and progress monitoring.  The Massachusetts Department of Mental Retardation has had JRC under corrective action for many of the same compliance concerns.

17.     Therefore, by not complying with the State's standards, JRC (which is the school where these students are enrolled) failed to provide appropriate behavioral supports for these students all of which may have led to JRC's lack of success, as reported in the Plaintiffs' papers, in providing the students with "meaningful academic progress[5]" and treating their behavioral problems.

18.     In at least four written letters, NYSED notified JRC that it must immediately provide NYSED with the names of each NYS student placed at JRC for whom it cannot provide an appropriate educational and residential program, consistent with NYSED regulations; and that it submit documentation to NYSED showing that JRC has requested the CSE for each student to seek an alternative placement.

- On October 10, 2007, NYSED wrote to JRC stating "If JRC believes that it cannot appropriately and safely manage a student's behavior given allowable interventions, such student should be referred back to the NY CSE for recommendation for an alternate placement." (See Exhibit H, page 9, Letter from James P. Delorenzo to M. Israel dated October 10, 2007).

---

[5] Quoting fro Plaintiff's Memorandum of Law, page 1

- On May 16, 2008, NYSED wrote to JRC stating "If JRC believes that it cannot appropriately and safely manage a student's behavior given allowable interventions, such student should be referred back to the NYS CSE for recommendation for an alternate placement." (See Exhibit I, page 4, letter from James P. Delorenzo to M. Israel dated May 16, 2007).

- On March 23, 2009, NYSED wrote to JRC stating: "In addition, you must immediately provide NYSED the names of each NYS student currently placed at JRC for whom it cannot provide an appropriate educational and residential program consistent with NYSED regulations, and submit documentation to NYSED that JRC has requested the CSE for each such student to seek an alternative placement." (see Exhibit J, page 11, letter from James DeLorenzo to M. Israel dated March 23, 2009)

- On June 1, 2009, NYSED wrote to JRC stating: "I also note that in my March 23, 2009 letter to you, I required you to immediately provide NYSED the names of each NYS student for whom it cannot provide an appropriate educational and residential program consistent with NYSED regulations, and to submit documentation to NYSED that JRC has requested the CSE for each such student to seek an alternative placement... JRC did not respond to this directive.  Therefore, this letter also serves to confirm that JRC agrees it can provide an appropriate residential and educational program for all currently enrolled NYS students in full compliance with NYS regulations."  (See Exhibit K, page 8 letter from James P. Delorenzo to M. Israel dated June 1, 2009).

19.    JRC did not, as directed by SED, notify SED of any student's names, including the names of any of the seven Student Plaintiffs, all of whom were enrolled at JRC as of the March 23,

2009 letter. Therefore, JRC has necessarily confirmed that it can provide FAPE to the Student

Plaintiffs consistent with the students' IEPs and the Regulations.

        20.     I have reviewed H.R. 4247 and S. 2860 ("Preventing Harmful Restraint and Seclusion

in Schools Act").  These federal bills would prohibit the use of any mechanical restraint, such as

strapping children to chairs, misusing therapeutic equipment to punish students,  or duct-taping parts

of their bodies; prohibit chemical restraint, meaning medications used to control behavior that are

not administered consistent with a physician's prescription; prohibit any restraint that restricts

breathing; and prohibit aversive behavioral interventions that compromise health and safety,

including using noxious stimuli such as pepper spray in order to control behavior.  This bill would

require that within two years of the establishment of federal standards, each state must have its own

policies, procedures, monitoring and enforcement systems in place to meet these minimum

standards.  The following website identifies the many national and State organizations that support

this legislation. http://edlabor.house.gov/blog/2010/01/supporters-of-the-preventing-h.shtml. SED's

Regulations set standards that establish a general prohibition on the use of aversive interventions,

with a time-limited provision and procedures for a child-specific basis.  The regulations strengthen

SED's authority to ensure that behavioral interventions are used in accordance with the highest

standards of oversight and monitoring and in accordance with research-based practices.  These

standards by which SED will protect the health and safety of NYS students are consistent with our

oversight and supervision responsibilities and national policy to phase out the use of aversive

interventions and establish necessary safeguards for the State's most vulnerable population of

children.

19.     Based upon the foregoing facts, it has been demonstrated that the CSEs of the individual students described in this affidavit did not develop IEPs that include the use of aversive interventions and that the parent(s) of each student plaintiff had IDEA procedural safeguards to request an impartial hearing if they disagreed with the IEP; and it has been demonstrated that JRC, the school serving the student plaintiffs, did not comply with the State's minimum standards for behavioral interventions while treating these students, thereby likely to have contributed to the Student Plaintiffs' alleged lack of behavioral progress; and that JRC necessarily agreed that it could provide FAPE to these NYS students consistent with their IEPs. The Regulations are the State's standards for FAPE, which the USDOE has determined in writing to SED are consistent with the IDEA.  The Regulations phase out the use of aversive interventions consistent with federal policy and pending federal legislation.  Therefore, I respectfully request that the above-captioned plaintiffs' application to the Court for a preliminary injunction order be denied.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.  Executed on February 17, 2010.

Dated: February 17, 2010

Albany, New York

/s/ Patricia J. Geary

Patricia J. Geary, M.S., SAS

14