

**THE STATE EDUCATION DEPARTMENT** / THE UNIVERSITY OF THE STATE OF NEW YORK / ALBANY, NY 12234

OFFICE OF VOCATIONAL AND EDUCATIONAL SERVICES FOR INDIVIDUALS WITH DISABILITIES
STATEWIDE COORDINATOR FOR SPECIAL EDUCATION
Room 1624 One Commerce Plaza • Albany, NY  12234          Telephone (518) 402-3353   Fax: (518) 402-3534
www.vesid.nysed.gov

October 10, 2007

Dr. Matthew Israel
Executive Director
Judge Rotenberg Educational Center
240 Turnpike Street
Canton, MA  02021

Dear Dr. Israel:

The Department has reviewed Judge Rotenberg Educational Center's (JRC's) July 6, 2007 response, signed by Glenda P. Crookes, to my letter of June 8, 2007 citing issues of noncompliance in JRC's written policies for the use of behavioral interventions, including aversive interventions. Enclosed is the determination of findings on JRC's written policies pursuant to section 200.22 and other relevant sections of the Regulations of the Commissioner of Education of New York State (NYS).

Nothing in this letter or the enclosed findings should be construed to provide support or acceptance of any opinions or theories contained in JRC's response to NYS, or in its revised policies, including the numerous statements of "explanations" of its policies based on certain philosophical beliefs and opinions of clinical or behavioral theories, broad generalizations of students and effects of interventions.  We have limited our findings to regulatory requirements necessary to ensure the health and safety of NYS students and compliance with the high standards established by the Board of Regents of the State of New York.

The enclosed chart identifies findings of noncompliance and specific corrective actions that must be taken.  A December 1 timeline has been established for the resolution of the compliance issues identified.  Please note that final approval of JRC's behavioral intervention policies, procedures and practices will be made based on a site review of JRC's implementation of these policies.  If you have any questions or would like to meet to discuss JRC's steps for the correction of noncompliance, please contact me.

Sincerely,

James P. DeLorenzo

Enclosure
c:     Rebecca H. Cort

## JRC's Written Policies Relating to Behavioral Interventions
## Compliance Summary - September 2007

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| 8 NYCRR §19.5(b) | Aversive intervention means an intervention that is intended to induce pain or discomfort to a student for the purpose of eliminating or reducing maladaptive behaviors, including such interventions as: … (iv) movement limitation used as a punishment, including but not limited to helmets and mechanical restraint devices; or … | JRC's written policies regarding the use of emergency interventions (Exhibit 11) are not acceptable as they include the use of mechanical restraints for students not authorized to receive aversive interventions. Section 200.22(d) "Emergency Interventions" provides for the use of reasonable "physical" force - and does not include authorization for school personnel - even in emergency situations - to use mechanical restraints.<br><br>JRC's policy  "Additional Requirements for the use of Court-Authorized Supplementary Aversive Therapy (aversive behavioral interventions with New York State School-Aged Students (NY Students))" (Exhibit 8) provides an exception to the definition of "aversive interventions", which is <u>inconsistent with NYS</u> | JRC must cease use of mechanical restraints* with New York State (NYS) students except as authorized through child-specific exception and as specified on the student's individualized education program (IEP) as developed by the NY school district's Committee on Special Education (CSE) in conformance with Part 200 requirements.<br><br>* exception for interventions medically necessary for the treatment or protection of the student.<br><br>JRC must revise its policy (Exhibit 11) to eliminate noted inconsistencies with NYS' definition of aversive intervention. | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|----------|------------------------------|---------|-------------------|----------------------|
| | | regulations as it include physical or **mechanical restraint applied in an emergency situation** to protect the safety of the student and others in the environment, **including helmets**, **transportation restraint** as stated in the student's IEP or **as ordered by a student's clinicians** as needed to ensure safety during transport, interventions medically necessary for the treatment or protection of the student, **to include mechanical restraints**, or other similar interventions." (Bolded language inconsistent with NYS regulations) | | |
| 8 NYCRR §200.1(ww)    8 NYRCC §200.4(d)(v)(a) | Special education means specially designed individualized or group instruction or special services or programs, as defined in subdivision 2 of section 4401 of Education Law, and special transportation, provided at no cost to the parent, to meet the unique needs of students with disabilities.    The IEP shall indicate the recommended special education program and services as defined | JRC's policy (Exhibit 8) "Additional Requirements for the Use of Court Authorized Supplementary Aversive Therapy with NYS School-Aged Students" provided an exception to the Regent's definition of the term "aversive intervention" to include the use of transportation restraint … as ordered by a student's **clinicians** as needed to ensure safety during transport. | JRC must revise its policy and practice to indicate that its use of mechanical restraints on NYS students during transportation pertain only to those students whose IEPs require the use of such restraints to provide special transportation and only to the extent the IEP indicates the specific transportation restraint to be used. | Submission of revised policy by December 1, 2007    Fully implemented by January 2, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | in sections 200.1(qq) and 200.1(ww) of this Part from the options set forth in section 200.6 of this Part… that will be provided for the student. | | JRC must submit a list of NYS students for whom transportation restraints are currently authorized by their IEPs and the specific transportation restraints recommended on the IEPs. | |
| 8 NYCRR §200.4(d)(4)(i)<br><br>8 NYCRR §200.6(e) | (4) Such recommendations shall<br><br>(i) be developed in meetings of the committee on special education.<br><br>(e) Related services shall be recommended by the committee on special education to meet specific needs of a student with a disability as set forth in the individualized education program (IEP).<br><br>(1) The frequency, duration and location of each such service shall be in the IEP, based on the individual student's need for the service. | It is also noted that Exhibit 3 "JRC Plan for Educational Services" indicates that "JRC discusses internally the Pre-admission Recommendations Form in anticipation of developing JRC's recommended content to the student's IEP that JRC will suggest to the school district as a condition of JRC's acceptance of the student..." | The appropriate manner in which JRC can participate in making recommendations for changes to a student's IEP is through the participation in the student's CSE meeting.  JRC's policies and practices must ensure that such recommendations are based on individual student needs rather than program design or availability of services. | December 1, 2007 |
| 8 NYCRR §200.6(b)(3)<br><br><br>8 NYCRR | Related services shall be provided by individuals with appropriate certification or license in each are of related services.<br><br>Instructional services shall be | JRC indicates that "communication needs are provided either by a licensed speech and language pathologist or by a licensed speech and language | JRC's policy must be revised to ensure that when speech and language therapy is provided by a licensed speech and language pathology | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| §200.13(a)(4) | provided to meet the individual language needs of a student with autism for a minimum of 30 minutes daily in groups not to exceed two, or 60 minutes daily in groups not to exceed six. | pathology assistant." | assistant, the assistant is working under the supervision and direction of a duly licensed speech-language pathologist consistent with Massachusetts licensing requirements and 8NYCRR § 200.6(b).  In addition, for students with autism, JRC's policies and practices must ensure that instructional services are provided to meet the individual language needs of each student with autism for a minimum of 30 minutes daily in groups not to exceed two, or 60 minutes daily in groups not to exceed six [8 NYCRR § 200.13(a)(4)]. | |
| 8 NYCRR §200.6(i)(2) | (2) Criteria for approval. No contract for the placement of a student with a disability shall be approved for purposes of State reimbursement unless ...:<br><br>(iii) the proposed placement offers the instruction and services recommended in the student's IEP. | The JRC Policy on Related Services (Exhibit 2) states that "JRC tries to provide related services during the school day."<br>JRC states in Exhibit 3 that the IEP content recommended by JRC must be agreed to by the CSE as a condition of admission of the student. JRC's policy that the IEP | JRC must ensure that it provides (and not simply "tries to provide") all IEP recommended related services to students attending its program. | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | include recommendations based on JRC's "Pre-IEP Checklist" that includes the use of aversive interventions would require school districts to be out of compliance with 8 NYCRR §§19.5 and 200.22(e). | | |
| 8 NYCRR §200.22(a) | Assessment of student behaviors | JRC has revised its written "Policy on Functional Behavioral Assessments" to state that a Functional Behavioral Assessment (FBA) that meets the requirements of the Commissioner's Regulations will be completed for each student enrolled at JRC. | None | --- |
| 8 NYCRR §200.22(a)(3)<br><br>8NYCRR §200.1(mmm)<br><br>8NYCRR §200.22(f)(2)(ii) | The FBA shall not be based solely on the student's history of presenting problem behaviors.<br><br>Behavioral intervention plan means a plan that is based on the results of the functional behavioral assessment.<br><br>Aversive intervention procedures may be used only if such interventions are recommended by the CSE consistent with the student's IEP and behavioral intervention plan as determined | JRC's "Plan for Educational Services" (Exhibit 3) states that JRC decides "based on the student's history" if JRC will seek parent consent for the use of aversive interventions prior to review of such recommendations by the CSE and "as a condition of JRC's acceptance of the student for admission."  It is inconsistent with the Commissioner's Regulations for JRC to determine prior to a student's admission that the | JRC must revise its policy relating to determining acceptance to the program, requesting parent consent and determinations of use of aversive interventions that are based solely on the student's history of presenting problem behaviors.<br><br>Any consideration of the use of aversive interventions must occur through the IEP | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| by the CSE. | | parent must sign the "conditional acceptance letter" authorizing the use of aversive interventions prior to the student's acceptance to the school.  It is the CSE, which includes the parent as a participating member, which determines whether aversive interventions are necessary and appropriate. | development process with the CSE. | |
| 8 NYCRR §200.22(b) | Behavioral intervention plan | JRC's revised its written policy "JRC Plan for Educational Services" to indicate that a behavioral intervention plan that meets the requirements of Commissioner's Regulations will be developed based on the results of the FBA. | None | --- |
| 8 NYCRR §200.22(c) | Use of time out rooms | JRC's June 8, 2007 response to NYSED and its Exhibit 13 states that alternative learning environments are not used as time out rooms and that JRC indicates that it does not temporarily remove students from their regular classroom environments. JRC's description of the use of "alternative learning environments" differentiates such rooms from time out rooms by indicating that these | JRC must ensure that such environments meet the special class requirements pursuant to §200.6(g) of the Commissioner's Regulations and ensure instruction of students by appropriately qualified staff.

JRC must provide instruction to students in the setting specified on the student's IEP. | --- |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | environments are students' educational program settings as part of a "level system of educational environments." JRC states that a teacher spends "part of his/her time in the room and supervises the work of the aide(s) who is (are) in the room at all times."<br><br>A teacher aide is not qualified to provide instruction to a student.<br><br>Exhibit 13 identifies the student's residence as alternative educational settings for reasons that can include difficulty transporting the student safely, "the need to remove the presence of peers who may serve to accelerate problem behaviors by their nearby presence or when their attention is functioning to reward the student's problematic behavior, etc." The policy designates this decision making to the student's clinician. On page 73 of Exhibit 13 it states that "the student will be returned to | JRC must ensure that appropriate instruction is provided to the student during the instructional day, including related services, by appropriately qualified staff.<br><br>JRC's policy on "alternative educational strategies" must be revised to comply with the federal and State requirements for suspensions of students. JRC cannot identify the student's residence as his or her temporary alternative educational setting without providing the procedural protections for students subject to suspensions or removals. A transportation suspension is tantamount to a suspension from school. Only those individuals with authority under the law (§3214 of Education Law) may impose a suspension for the student and a suspension can not be for an unspecified period of time (e.g., "when it is determined by the clinician") | |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | his/her normal classroom in the JRC main educational facility when it is determined by the clinician that the student can effectively and safely be transported to the school building and participate in classroom instruction." | | |
| 8 NYCRR §200.22(d) (1) and (2) | Use of emergency interventions. (i) Emergency interventions shall be used only in situations in which alternative procedures and methods not involving the use of physical force cannot reasonably be employed. (ii) Emergency interventions shall not be used as a punishment or as a substitute for systematic behavioral interventions that are designed to change, replace, modify or eliminate a targeted behavior. | JRC states on page 37 of its June 8, 2007 response that if it cannot use mechanical restraints as an emergency procedure, it would be "forced to employ heavy psychiatric medication and/or have up to 8 persons lying on the student for hours on end."  These are unacceptable alternatives to sound educational and treatment programming.<br><br>As stated in the June 8, 2007 letter, the Massachusetts' Department of Mental Retardation "waiver" for the use of mechanical restraints does not apply to NYS students. | JRC must revise its policy and practice to cease the use of  mechanical restraint applied in emergency situations… including helmets and transportation restraints … as ordered by a student's clinicians. JRC's policies and practices must ensure that the use of mechanical restraints* are used only when the CSE recommends such use through a child-specific exception for the use of aversive interventions pursuant to the Commissioner's Regulations.<br><br>* exception for interventions medically necessary for the treatment or protection of the student. | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | | If JRC believes that it cannot appropriately and safely manage a student's behavior given allowable interventions, such student should be referred back to the NY CSE for recommendation to an alternate placement. | |
| 8 NYCRR §200.22(d)(2) | Use of emergency interventions. (i) Emergency interventions shall be used only in situations in which alternative procedures and methods not involving the use of physical force cannot reasonably be employed. (ii) Emergency interventions shall not be used as a punishment or as a substitute for systematic behavioral interventions that are designed to change, replace, modify or eliminate a targeted behavior. | JRC's policy on Emergency Restraints (Exhibit 11) does not address how it will ensure that the use of emergency interventions will be used only in situations in which alternative procedures and methods not involving the use of physical force cannot reasonably be employed.  The policy states that JRC avoids the use of de-escalation conversations and uses "programmed opportunities" as part of the process of teaching students. Such "programmed opportunities" as described would be substitutes for systematic behavioral interventions that are designed to change, replace, modify or eliminate a targeted behavior and, in fact, | JRC must revise its policy and practice to ensure that alternative procedures not involving the use of physical force are attempted prior to physical restraints and to cease use of physical restraints as "programmed opportunities" for NYS students.

JRC must employ methods to minimize the use of restraints, other than the use of aversives.

JRC must provide documentation from the Massachusetts Department of Mental Retardation (DMR) which includes documentation of approval of the manner in which JRC | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | could result in behaviors then considered for emergency intervention. | employs physical restraints as described in written policies. | |
| 8 NYCRR §200.22(e)(9) | Aversive interventions shall be considered only for students who are displaying self-injurious and/or aggressive behaviors that threaten the physical well being of the student or that of others, and only to address such behaviors [8 NYCRR §200.22(e)(1)].<br><br>Any IEP providing for a child-specific exception allowing the use of aversive interventions shall identify the **specific**:<br>(i) self-injurious and/or aggressive targeted behavior(s);<br>(ii) aversive intervention(s) to be used to address the behavior(s); and<br>(iii) aversive conditioning device(s) and/or mechanical restraint device(s) where the aversive intervention(s) includes the use of such device(s). | JRC's policies continue to indicate that the IEP will include the behavior categories targeted for aversive interventions and not the targeted behaviors. These categories do not identify specific behaviors manifested by individual students. As stated in JRC's FBA Policy (Exhibit 7), "the clinician identifies the behavior and defines it in concrete terms." These are the behaviors that must be specified on the IEP. | For all NYS students, JRC must revise its policy to remove reference to behavior categories and must administer the indicated aversive interventions consistent with the specific behaviors specified on the students' IEPs. | December 1, 2007 |
| 8 NYCRR §200.22(f)(2)(ii) | Aversive intervention procedures may be used only if such interventions are recommended by the CSE consistent with the student's IEP and behavioral intervention plan as determined | JRC's revised policy includes incipient versions and shaped-down behaviors in its definition of aggressive and health dangerous behaviors. These | JRC must revise its policy and practice, as noted on page 49, to no longer include "incipient or shaped-down versions" of student behaviors in its definitions | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| 8 NYCRR §200.22(f)(2)(vi) | by the CSE.<br><br>The use of aversive interventions shall be limited to those self-injurious or aggressive behaviors identified for such interventions on the student's IEP. | incipient, shaped-down behaviors do not meet the criteria of being threatening to the physical well being of the student or others. | of aggressive and health dangerous behaviors for NYS students.*<br><br>*exception noted for named plaintiffs in Alleyne court order. | |
| 8 NYCRR §200.22(f)(2)(iii)<br><br><br>8 NYCRR §200.1(qq) | Aversive intervention procedures shall not be the sole or primary intervention used with a student and shall be used in conjunction with other related services, as determined by the CSE, such as verbal or other counseling services, speech and language therapy and/or functional communication training.<br><br>(qq) *Related services* means developmental, corrective, and other supportive services as are required to assist a student with a disability and includes speech-language pathology, audiology services, interpreting services, psychological services, physical therapy, occupational therapy, counseling services, including rehabilitation counseling services, orientation and mobility services, medical services as defined in this section, parent counseling and training, school health | JRC's written policies and practices do not ensure that aversive intervention procedures are used in conjunction with other related services, as determined by the CSE, such as verbal or other counseling services. Counseling is a related service pursuant to §200.1(qq).<br><br>JRC states that it provides behavioral counseling to all students, "whether needed or not;" that counseling is a service that the student can "earn and request at any time;" and "a variety of staff members participate in providing this counseling at both formal and informal interactions of varying lengths." JRC's "behavioral counseling", as described in its written polices, is described | JRC's policy and practice must be revised to:<br>(1) no longer set conditions on admission related to a change in the student's IEP for the provision of counseling or other related services.<br>(2) provide related services as recommended on a student's IEP.<br>(3) eliminate contradictory policy statements and clearly describe JRC's current practice to ensure that students receive the counseling and other related services by qualified personnel for the frequency and duration indicated on their IEPs.<br>(4) accept an IEP recommendation for "counseling" as reflecting the service described in | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | services, school social work, assistive technology services, appropriate access to recreation, including therapeutic recreation, other appropriate developmental or corrective support services, and other appropriate support services and includes the early identification and assessment of disabling conditions in students. The term does not include a medical device that is surgically implanted, or the replacement of such device. | as a component of JRC's behavioral intervention program, including its aversive intervention program and not a related service.<br><br>JRC's written response and its revised policies, as submitted with the July 8 response, contain numerous inconsistent statements.  For example, in the revised "JRC Policy on Behavioral Counseling" (Exhibit 1), it states that "traditional types of counseling are not provided at JRC....Parents who believe that a more traditional counseling approach is an essential feature of the program they are seeking for their son or daughter should consider enrolling their child in programs that provide such traditional counseling." However, in the "JRC Response to Mr. DeLorenzo's Letter of June 8, 2007" it states that "if a student's IEP calls for traditional counseling as a related service, JRC provides the traditional counseling...in addition to any | §200.1(qq) and not require the CSE to specify the type of counseling the student is recommended for (e.g., "traditional" counseling.) | |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | behavioral counseling that the student receives. A student who has traditional counseling in his IEP will receive both types of counseling -- both the behavioral counseling that is given to all students and their traditional counseling that is required in his/her IEP." | | |
| 8 NYCRR §200.22(f)(2)(vii) | Whenever possible, the use of aversive interventions shall apply the lowest intensity for the shortest duration and period of time that is effective to treat the problem behavior and employ strategies that increase the effectiveness of mild levels of aversive interventions. In the event the aversive intervention fails to result in a suppression or reduction of the behavior over time, alternative procedures shall be considered that do not include increasing the magnitude of the aversive intervention. | JRC's written policies are insufficient to ensure that JRC will use aversive interventions at the lowest intensity and for the shortest period of time and employ strategies that increase the effectiveness of mild levels of aversive interventions. | JRC's policy must be revised to eliminate references to the use of multiple GED devices; administering the GED to earlier forms of the behaviors, antecedents and shaped-down versions, etc; increasing the number of GED applications; and use of behavioral rehearsal lessons as strategies to minimize the use of aversive interventions.<br><br>JRC's policy must be revised to more clearly specify how and when clinicians would consider using alternate procedures when a student has been receiving aversive intervention for a significant period of time (e.g., 6 | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | months). | | |
| 8 NYCRR §200.22(f)(2)(v) and (viii) | Aversive interventions shall be implemented consistent with peer-reviewed research based practices and shall include individualized procedures for generalization and maintenance of behaviors and for the fading of the use of such aversive interventions.<br><br>The use of any aversive conditioning device used to administer an electrical shock or other noxious stimuli to a student to modify undesirable behavioral characteristics shall be limited to devices tested for safety and efficacy and approved for such use by the United States Foods and Drug Administration where such approval is required by federal regulation.  The magnitude, frequency and duration of any administration of aversive stimulus from such a device must have been shown to be safe and effective in clinical peer-reviewed studies. | JRC submitted eight (8) manuscripts and one chapter for review to ascertain evidence of compliance with §200.2(f)(2)(ii).  A review of the manuscripts revealed significant methodological weaknesses across studies, including:<br>- insufficient description of the subjects' developmental, cognitive, language, diagnostic status or race/ethnicity;<br>- lack of systematic investigations of the effects of comparable magnitudes of shock as used by JRC;<br>-  lack of conclusive findings on the duration of skin shock treatment with many studies reporting that skin shock treatment continued over the course of many years;<br>- lack of objective data collection for negative collateral behaviors, with only two studies reporting specific, albeit general, procedures  for managing participant panic and anxiety responses to skin shock; and | JRC must submit a plan to the Department that identifies specific actions and timelines to subject its use of electrical shock and other noxious stimuli to peer-reviewed research study. | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | - quasi-experimental methodological designs thereby limiting generality of findings across subjects. Therefore, the manuscripts submitted by JRC fail to show that the magnitude, frequency and duration of skin shock as used at JRC have been shown to be effective with children of similar age, developmental level, diagnostic status, gender and race/ethnicity as those being treated at JRC. They also fail to show that the use of shock is safe and effective for use with the range of target behaviors treated with the GED and under similar treatment contexts and conditions as used by JRC. Third, they fail to show that JRC uses shock and aversive interventions in a manner consistent with peer-reviewed research-based practices. | | |
| 8 NYCRR §200.22(f)(4) | Supervision and training requirements.  Aversive interventions shall be administered by appropriately licensed professionals or certified special education teachers in accordance with Part 80 of this | JRC indicated that it believes there are no legal requirements that individuals applying aversive consequences be licensed or certified. However, on page 21 of JRC's | JRC must clarify conflicting statements in its "Plan for Educational Services" to ensure appropriate supervision and training required pursuant to §200.22(f)(4). | December 15, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | Title and sections 200.6 and 200.7 of this Part or under the direct supervision and direct observation of such staff…. | "Plan for Educational Services" it states that "all personnel involved in the development, application, monitoring, data collection or review of a BIP that includes the use of aversive behavioral interventions shall be appropriately certified in accordance with the provisions of Part 80 of the Regulations of the New York State Commissioner of Education and NYCRR §§ 200.6 and 200.7."  This requirement was revised in the final adoption of the regulations (see permanently adopted regulatory requirement in §200.22(f)(4)). | | |
| 8 NYCRR §200.22(f)(4) | Staff training.  Staff who may be called upon to implement emergency interventions shall be provided with appropriate training in safe and effective restraint procedures in accordance with section 100.2(l)(1)(i)(g) of this Title, and 200.15(f)(1) of this Part, as applicable. | JRC's policies, procedures and their training of staff are not implemented in a manner that leads to the reduction in the use of restraints and the development of alternative effective interventions to address an individual's behaviors. | JRC must provide documentation on how it provides training to staff to employs methods to minimize use of restraints. | December 15, 2007 |
| 8 NYCRR §200.22(f)(4) | Training shall be provided on a regular, but at least annual basis, which shall include, but not be limited to, training on: | JRC's one hour training of new direct care staff in the topics required by NYS regulations is insufficient to prepare staff | JRC must submit a revised policy on training that expands the time allotted to sufficiently cover these | December 15, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | (i) safe and therapeutic emergency physical restraint interventions; (ii) data collection of the frequency, duration and latency of behaviors; (iii) identification of antecedent behaviors and reinforcing consequences of the behavior; (iv) approaches to teach alternative skills or behaviors including functional communication training; (v) assessment of student preferences for reinforcement; (vi) assessing and responding to the collateral effects of the use of aversive interventions including, but not limited to, effects on a student's health, increases in aggression, increases in escape behaviors and/or emotional reactions; (vii) privacy rights of students; and (viii) documentation and reporting of incidents, including emergency restraints and injuries. | providing aversive interventions to implement behavioral intervention plans for students with complex behavioral issues. | topics and provides a training curriculum for each topic and documents how these topics are covered at least annually, including training on de-escalation of students and other methods (other than aversive interventions) to minimize the use of restraints. | |
| 8 NYCRR §200.22(f)(5) | Parent consent. Aversive interventions shall be provided only with the informed written consent of the parent and no parent shall be required by the | JRC's policy indicates it determines prior to a student's admission that the parent must sign the "conditional acceptance letter" authorizing | JRC's policy must be revised to no longer require that parents consent to the use of aversive intervention as a condition of | December 15, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| 8NYCRR §200.1(l) | program to remove the student from the program if he or she refuses consent for an aversive intervention.<br><br>Consent means (1) the parent has been fully informed, in his or her native language or other mode of communication, of all information relevant to the activity for which consent is sought… | the use of aversive interventions prior to the student's acceptance to the school and that the CSE must agree to JRC's recommended IEP content prior to acceptance.  Parents have the right to be fully informed through the CSE process, with the information from the independent panel of experts considered, as to whether the CSE believes that aversive interventions are appropriate and necessary prior to consenting to the use of aversive interventions for their child. | acceptance into the JRC program. | |
| 8 NYCRR §200.22(f)(7)(i) | The program shall provide for ongoing monitoring of student progress, including the collection and review of data and information.  Such information shall include reports on the assessment of and strategies used to address any indirect or collateral effects the use of aversive interventions may be having on the student, including, but not limited to, increases in aggressive or escape behaviors, health-related effects and/or emotional reactions. | JRC's policies do not sufficiently provide for the assessment and response to the collateral effects of the use of aversive interventions, including, but not limited to, effects on a student's health, increases in aggression, and increases in escape behaviors and/or emotional reactions.<br><br>JRC's policies and practices that impose negative consequences (including the use of aversives) for | JRC must establish formal and periodic procedures and methodologies to obtain meaningful documented assessments of possible physical, psychological and emotional effects of the use of aversives for each student for whom aversive interventions are used.<br><br>JRC must revise its policies to identify how it will monitor, and document its | December 15, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | expressing frustration, concern, recommendations for changes in programming (which JRC refers to as "special pleadings") and, for suicidal ideation, threats, gestures or attempts, in combination with limiting students' social interaction interferes with JRC's ability to fully and accurately assess and respond to collateral effects of the use of aversive interventions.<br><br>In its response to NYS, JRC provided a list of informal means by which it gathers information about collateral effects on health and emotional reactions of students, indicates that it shall record such effects in the data to be collected and reviewed by the clinician and include a report on the assessment of and strategies used to address such collateral effects.  The policies are not clear as to the strategies it will use to respond to such information, other than providing consequences to the | strategies to address indirect or collateral effects in ways that do not include aversive interventions.<br><br>JRC's policies on quality assurance peer reviews held once a year for each student and case conferences held once every three years must provide for exceptions for more frequent reviews of students when collateral effects are noted. | |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | | student. | | |
| 8 NYCRR §200.22(f)(7) | (7) Progress monitoring.  (i) The program shall provide for ongoing monitoring of student progress, including the collection and review of data and information.  Such information shall include reports on the assessment of and strategies used to address any indirect or collateral effects the use of aversive interventions may be having on the student, including, but not limited to, increases in aggressive or escape behaviors, health-related effects and/or emotional reactions.  The program shall submit quarterly written progress reports on the implementation of the student's behavioral intervention program to the CSE and to the agency that placed the student in the program.

(ii) A school district that places a student in a program that uses aversive interventions with such student shall be responsible to ensure that the student's IEP and behavioral intervention plan are being implemented.  The CSE shall convene at least every six months, or more frequently as | Exhibit 10 "JRC Policy on Incident Reports - Therapy Notes" lists six situations that lead to unintended application of GED (misapplication, spontaneous, duplicate, accidental, changing battery, by student).  The written policy indicates that such incident reports are filed, but not forwarded to the school districts.  The policy indicates that incident reports are sent to the parent and school district representative regarding only when incidents involve the use of transport restraint not in the IEP and Alternative Educational Strategies not in the IEP. | JRC must revise its policy and practices to ensure progress monitoring information is provided to the CSEs.  Copies of incident reports, including incidents for misapplications of the GED, must be included. | December 1, 2007 |

| Citation | Legal/Regulatory Requirement | Finding | Corrective Action | Date Action Required |
|---|---|---|---|---|
| | needed, to review the student's educational program and placement for any student for whom the CSE has recommended the use of aversive interventions.  Such review shall include the review of written progress monitoring and incident reports, documentation from observations of and, as appropriate, interviews with the student in the program and the concerns of the student's parent.  A representative of the school district shall observe the student at least every six months and, as appropriate, interview the student in the program and communicate regularly with the student's parent and shall report the results thereof to the CSE. | | | |