UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

CHARLES BRYANT, individually and as next friend and guardian of D.B., AVA GEORGE, individually and as next friend and guardian of B.G., CHANIN HOUSTON-JOSEPHAT, individually and as next friend and guardian of A.J., LISA HUGHES, individually and as next friend and guardian of J.R., CARMEN PENA, individually and as next friend and guardian of G.T., VIVIAN PRESLEY, individually and as next friend and guardian of D.P., and JAMIE TAM, individually and as next friend and guardian of S.T.,

        *Plaintiffs*,

-against-

NEW YORK STATE EDUCATION DEPARTMENT, DAVID M. STEINER, in his capacity as Commissioner of Education of the New York State Education Department, and THE NEW YORK STATE BOARD OF REGENTS,

        *Defendants.*.

**DECLARATION OF REBECCA H. CORT**

10-CV-0036

(GLS/RFT)

Rebecca H. Cort, does hereby declare under penalty of perjury, that:

1. I am the Deputy Commissioner of the Office of Vocational and Educational Services for Individuals with Disabilities (hereinafter "VESID"). VESID is an Office of the New York State Education Department (hereinafter "SED"). I make this declaration in opposition to plaintiffs' motion for a preliminary injunction and in support of defendants' motion to dismiss.

2. As Deputy Commissioner of VESID, I am familiar with the allegations set forth in plaintiffs' complaint, as well as with the facts set forth below. I make this affidavit on personal knowledge, unless otherwise stated.

1

3. VESID's mission is to promote educational equity for students with disabilities while ensuring that they receive the rights and protection to which they are entitled. The Individuals with Disabilities Education Act (hereinafter "IDEA") is one of the primary federal statutes applicable to VESID's mission. My staff works with school districts, approved private school programs, service providers, parents and others to preserve and uphold disabled students' rights under the IDEA, as well as numerous other State and federal laws.

4. In furtherance of VESID's mission, my staff also drafts proposed regulations for consideration by the New York State Board of Regents. There are various and numerous reasons that regulations will be proposed, including a change in federal or State law, issues of concern raised by the Regents and/or by the public, and as necessary to carry into effect the laws and policies of the State relating to the education and health and safety protection of children with disabilities.

5. The regulations at issue in this case were proposed for several reasons, including the amendment of the IDEA to promote positive behavioral interventions, issues of concern identified by VESID and raised by the public, including parent complaints, about the use of aversives. The use of aversive behavioral approaches is the most extreme and intrusive intervention that could be used in educational programs. The unregulated use of such interventions has potential for compromising the health and safety and the physical and psychological well being of students.

6. When enacting the IDEA, the federal government left with the States the authority to determine the appropriate standards for the IDEA-guaranteed "free appropriate public education" (hereinafter FAPE). The term 'FAPE' means special

education and related services which have been provided at public expense, under public supervision and direction, and without charge; meet the standards of the State educational agency; include an appropriate preschool, elementary, or secondary school education in the State involved; and are provided in conformity with the individualized education program required under the IDEA.

7. New York State enacted specific State standards for the assessment and implementation of behavioral intervention strategies for students with disabilities. Consistent with IDEA, New York State standards emphasize functional behavioral assessments and positive behavioral interventions. The State's standards establish a general prohibition on use of aversive interventions, with a provision and procedures for a child-specific exception during the 2006-2007, 2007-2008 and 2008-2009 school years, provided that a student whose individualized education program (IEP) included the use of aversive interventions as of June 30, 2009 may continue to be considered for a child-specific exception unless the IEP is revised to no longer include such exception. The regulations strengthen SED's authority to ensure that behavioral interventions are used in accordance with the highest standards of oversight and monitoring and in accordance with research-based practices and establish the standards by which SED will protect the health and safety of NYS students consistent with our oversight and supervision responsibilities.

8. Several other states have established their own state standards for FAPE relating to behavioral interventions that do not include or that limit the use of interventions and devices intended to induce pain or discomfort to the student to address student behaviors.

9. SED's position with respect to aversives was reached after considerable review of research, consultation with behavioral experts, review of public written and oral testimony from parents, professionals and others and the review of similar statutes and/or regulations from other states.

10. My staff's consultations with experts and review of comments from individuals and organizations, including several disability advocacy organizations, revealed that the vast majority of parents and professionals opposed New York State authorizing aversive interventions, which include painful or noxious stimuli applied in an effort to control certain behaviors, to any degree. Indeed we received testimony that the use of aversives is "violative of an individual's equal protection and due process rights and constitutes demeaning, demoralizing, and dehumanizing treatment, rising to the level of cruel and unusual punishment under the Eighth Amendment to the federal Constitution and Article 1, Section 5 of the New York State Constitution" and that "such practices violate several international human rights conventions, including the Universal Declaration of Human Rights, the International Covenant on Civil and Political Rights, and the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment." See Written testimony of Beth Haroules on behalf of the New York Civil Liberties Union, which is annexed as Exhibit A.

11. I am advised that James A. Mulick, Ph.D., the plaintiffs' expert in Alleyne, et al. v. New York State Education Department, et al., N.D.N.Y. 06-CV-994 (GLS), acknowledges that the professionals who oppose the use of aversives on disabled students far outnumber the pro-aversive advocates, especially in the area of education. Indeed, many of the studies that demonstrate the desirability of positive interventions

over aversives were funded by the United States Department of Education (hereinafter "USDOE").

12. New York State's informed decision to establish high standards for the protection of students with regard to behavioral interventions, and to initially limit and eventually prohibit the use of behavioral consequences intended to inflict pain and discomfort on disabled students was based on broad opposition to the use of aversive interventions and in consideration of the concerns of a limited number of parents with regard to their individual children.

13. Moreover, the authority to set such standards was vested in New York State by the IDEA and indeed is consistent with the statute and furthers the IDEA's clear direction to encourage the use of positive behavioral interventions. USDOE's Technical Assistance Center on Positive Behavioral Interventions and Supports (PBIS) has identified a significant body of research to demonstrate the efficacy of positive behavioral supports and interventions to address the behaviors that are dangerous, highly disruptive, and/or that impede leaning and result in social or educational exclusion such as self-injury, aggression, and property damage. See http://www.pbis.org/files/101007evidencebase4pbs.pdf, which is annexed as Exhibit B.

14. Each state's compliance with the IDEA is overseen and monitored by the USDOE. In order to receive federal funds under the statute, each state must annually certify that its laws and regulations are consistent with the IDEA. Moreover, states must provide to the USDOE notice of any rule, regulations or policy that is state-imposed and not required by the IDEA or federal regulations.

15. My staff timely provided a copy of the regulations at issue in this case to the U.S. Secretary of Education. Significantly, the USDOE determined and provided a written statement to NYSED that the regulations may be implemented consistently with the IDEA. Put another way, the USDOE, who has the authority and responsibility to ensure States' compliance with the IDEA, determined that New York State regulations on behavioral interventions are in conformance with the federal requirements for FAPE.

16. Because New York State retains the authority to establish standards for FAPE and because the USDOE has determined that New York's regulations are consistent with the IDEA, I respectfully request that plaintiffs' motion for a preliminary injunction be denied and defendants' motion to dismiss be granted.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct. Executed on February 17, 2010.

Dated: February 17, 2010

Albany, New York

                                                    /s/ Rebecca H. Cort
                                                    Rebecca H. Cort, Ed.D.