UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————

CHARLES BRYANT, individually and as next friend and
guardian of D.B., AVA GEORGE, individually and as next
friend and guardian of B.G., CHANIN
HOUSTON-JOSEPHAT, individually and as next friend and
guardian of A.J., LISA HUGHES, individually and as next
friend and guardian of J.R., CARMEN PENA, individually
and as next friend and guardian of G.T., VIVIAN PRESLEY,
individually and as next friend and guardian of D.P., and
JAMIE TAM, individually and as next friend and guardian of
S.T.,

                                                        *Plaintiffs*,

                        -against-

NEW YORK STATE EDUCATION DEPARTMENT,
DAVID M. STEINER, in his capacity as Commissioner of
Education of the New York State Education Department, and
THE NEW YORK STATE BOARD OF REGENTS,

                                                        *Defendants*.

10-CV-0036

GLS/RFT

———————————————————

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION AND IN SUPPORT OF DEFENDANTS'
CROSS-MOTION TO DISMISS**

ANDREW M. CUOMO
Attorney General of the State of New York
Attorney for Defendants New York State
        Education Department and Board of
        Regents

Kelly L. Munkwitz
Assistant Attorney General, of Counsel
Bar Roll No. 509910
Telephone:  (518) 486-4603
Fax:  (518) 473-1572 (Not for service of papers)                Date: March 2, 2010

1

**Table of Contents**

**PRELIMINARY STATEMENT** ........................................................................ 2

**STATEMENT OF FACTS** ............................................................................... 3

**POINT I** ............................................................................................................ 5
**PLAINTIFFS ARE NOT ENTITLED TO A** ................................................. 5
**PRELIMINARY INJUNCTION** .................................................................... 5

    **A.   Plaintiffs cannot establish a likelihood of success on the merits** ................................. 7
       **1.   This Court lacks subject matter jurisdiction** ................................. 7
       **2.   Plaintiffs cannot establish a clear or substantial likelihood of success  on  the merits because the Regulations are consistent with the IDEA** ............................... 10

    **B.   Plaintiffs cannot demonstrate irreparable harm** ....................................... 13

**POINT II** ......................................................................................................... 16
**DEFENDANTS' CROSS-MOTION TO DISMISS** ........................................ 16
**SHOULD BE GRANTED** ............................................................................... 16

    **A.   Plaintiffs fail to state a claim on their first cause of action under the IDEA** ........... 18

    **B.   Plaintiffs fail to state a claim for a substantive due process violation** ....................... 19

    **C.   Plaintiffs fail to state a claim under the Rehabilitation Act** ....................................... 20

    **D.   Plaintiffs fail to state a claim for Equal Protection** ..................................... 21

    **E.   Plaintiffs fail to state a claim for procedural due process** ........................................... 23

    **CONCLUSION** ............................................................................................ 25

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of defendants New York State Education Department (hereinafter "SED") and the New York State Board of Regents (collectively "Defendants") in opposition to plaintiffs' motion for a preliminary injunction and in support of the defendants' cross-motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Because this Court lacks subject matter jurisdiction and because the complaint fails to state a cause of action, plaintiffs' motion must be denied and defendants' cross-motion granted.

As in Alleyne v. New York State Education Dept., 06-CV-994 (GLS), a case also before this Court, plaintiffs challenge regulations adopted by the New York State Regents that prohibit the use of painful aversive interventions on school age children.  Pursuant to the Regulations there was a child-specific exception available during the 2006-2007, 2007-2008 and 2008-2009 school years. Averisves are now prohibited from being used on school age children who did not have an individualized education plan (hereinafter "IEP") that provided for aversive as of June 30, 2009. The Regulations, which  were in part adopted due to the reauthorization of the Individuals with Disabilities Education Act (hereinafter "IDEA") to promote positive behavioral interventions, were reviewed and approved by the United States Department of Education, the federal agency charged with ensuring that the states comply with the IDEA.  Several other states also have statutes or regulations that limit or prohibit the use of painful aversives on school age children.

Similar to the plaintiffs in Alleyne v. New York State Education Dept., plaintiffs here are parents and/or guardians of disabled students placed at the Judge Rotenberg Educational Center Inc. in Canton Massachusetts (hereinafter "JRC").  While plaintiffs assert various causes of action, the

2

crux of their complaint is that the Regulations violate the Individuals with Disabilities Education Act (hereinafter "IDEA").  Specifically, plaintiffs allege that the Regulations deny the student plaintiffs a free appropriate public education (hereinafter "FAPE") as required by the IDEA.  However, unlike the student plaintiffs in Alleyne, not a single plaintiff has or had an IEP that contains a provision for aversive behavioral interventions.  More significantly, it appears that not a single plaintiff challenged the student plaintiffs' current or past IEPs.  Because plaintiffs have completely failed to avail themselves of the administrative remedies available to them, this Court has no subject matter jurisdiction.  Moreover, the fact that the student plaintiffs' IEPs do not provide for aversives necessarily means that the students' committees on special education (hereinafter "CSE") determined that each student plaintiff could achieve FAPE without aversives.  Therefore, even if this Court had subject matter jurisdiction, the complaint fails to state a cause of action.  Accordingly, plaintiffs' motion for a preliminary injunction must be denied and the defendants' cross-motion to dismiss must be granted.

## STATEMENT OF FACTS

In June 2006, defendant New York State Board of Regents adopted regulations that limited and eventually banned the use of painful aversive stimuli on disabled school children.  See Declaration of Rebecca H. Cort, Ed.D., dated February 17, 2010 (hereinafter "Cort Decl."), ¶¶4-7. The Regulations provided a child-specific exception from the prohibition for the school years 2006-2007, 2007-2008 and 2008-2009.  Id. at ¶ 7.  Students who had an IEP that included the use of aversives as of June 30, 2009 may still be considered for the child-specific exception provided their IEP continues to provide for aversives.  Id.  The Regulations were proposed for several reasons, including the IDEA's emphasis on positive behavioral interventions.  See id. at ¶ 5. The Regulations were proposed after a considerable review of research, consultation with behavioral experts, review

of public written and oral testimony from parents, professional and others and the review of similar statutes and/or regulations in other states.  Id. at ¶9.

Because aversives are the most extreme and intrusive intervention and have the potential for compromising the health and safety and the physical and psychological well-being of students, several states have adopted a similar ban and or limitations on their use.  See id. at ¶¶5, 8.  As stated by James A. Mulick, Ph.D., "by way of shear numbers and success in marketing and support from government agencies, the positive behavior support people are becoming the standard face of behavior modification in the schools, which is their target audience."  Mulick Tr.1 283.  Notably, the United States Department of Education (hereinafter "USDOE"), the federal agency charged with ensuring that the states comply with the IDEA, reviewed the Regulations and provided SED with a written statement that the Regulations can be implemented consistently with the IDEA.  Cort Decl. ¶ 15, Exhibit C.  The Regulations are also consistent with pending federal legislation that would prohibit the use of aversives in all states.  See Declaration of Patricia J. Geary, M.S., SAS, dated February 17, 2010 (hereinafter "Geary Decl."), ¶20; H.R. 4247 (attached); S.2860 (attached).

The plaintiffs are parents and/or guardians of disabled students who are students at JRC. Complaint, ¶¶ 1-14.  Although each of the student plaintiffs attended JRC and were eligible for the child-specific exception for at least the school year 2008-2009, not a single student has an IEP that provides for the use of aversives.  See Geary Decl. ¶¶ 6-12.  Indeed, in the one instance that a CSE applied for a child-specific exception, it expressly noted that is was **not** recommending aversives. Geary Decl. ¶ 12.  Simply put, the student plaintiffs' CSEs have necessarily determined that each student may achieve FAPE without the use of aversives.

---

1 "Mulick Tr." refers to the October 10, 2008 deposition transcript of James A. Mulick, Ph.D., which is annexed as Exhibit B to the accompanying Munkwitz Declaration.  Dr. Mulick was an expert witness who testified in a

Notwithstanding the fact that not a single CSE determined that a single student plaintiff requires aversives in order to achieve FAPE, plaintiffs now file the instant action and seek preliminary relief from this Court.  Because plaintiffs cannot establish the requisite elements to obtain a preliminary injunction, their motion must be denied.  Moreover, because this Court lacks subject matter jurisdiction and because the Complaint fails to state a claim, defendants' cross-motion to dismiss must be granted.

## POINT I

## PLAINTIFFS ARE NOT ENTITLED TO A
## PRELIMINARY INJUNCTION

Generally, a party seeking to obtain preliminary injunctive relief must demonstrate (1) irreparable harm, and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party requesting the relief.  See, e.g., Blum v. Schlegel, 18 F.3d 1005, 1010 (2d Cir. 1994); Nosik v. Singe, 40 F.3d 592 (2d Cir. 1994); Covino v. Patrissi, 967 F.2d 73 (2d Cir. 1992); Patchogue Nursing Center v. Bowen, 797 F.2d 1137, 1141 (2d Cir. 1986).  However, "[w]hen the movant seeks a 'mandatory' injunction - that is, as in this case, an injunction that will alter rather than maintain the status quo - she must meet the more rigorous standard of demonstrating a 'clear' or 'substantial' likelihood of success on the merits."  Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008), quoting, Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24-25 (2d Cir. 2004).

As the Second Circuit has repeatedly stated, "a preliminary injunction is an extraordinary remedy that should not be granted except upon a clear showing that there is a likelihood of success and irreparable injury . . . ."  Diversified Mortgage Inc. v. U.S. Life Insurance Co., 544 F.2d 571,

---

companion case Alleyne v. New York State Educations Dept., 06-CV-994 (GLS).

5

576 (2d Cir. 1976); <u>see</u> <u>also</u>  <u>Medical Society of New York v. Toia</u>, 560 F.2d 535, 538 (2d Cir.

1977) ("This is an extraordinary and drastic remedy which should not be routinely granted.");

<u>Hanson Trust PLC v. ML SCM Acquisition, Inc.</u>, 781 F.2d 264, 273 (2d Cir. 1986).  Concomitantly,

injunctive relief should be granted "only on the basis of showing that the alleged threats of

irreparable harm are not remote or speculative but are actual and imminent."  <u>State of New York v.</u>

<u>Nuclear Regulatory Commission</u>, 550 F.2d 745, 755 (2d Cir. 1977).

As an initial matter, a preliminary injunction to change the status quo is improper under the

IDEA.  Section 1415(j) expressly provides that "during the pendency  of any proceedings conducted

pursuant to this section, unless the State or local educational agency and the parents otherwise agree,

the child shall remain in the then-current educational placement . . . ."  20 U.S.C. § 1415(j); <u>accord</u>

34 C.F.R. § 300.518.  As noted by the Second Circuit, this "'stay put' establishes a student's right to a

stable learning environment during administrative and judicial review."  <u>Coleman v. Newburgh</u>

<u>Enlarged City School Dist.</u>, 503 F.3d 198, 205 (2d Cir. 2007).

Moreover, plaintiffs cannot demonstrate a likelihood of success on the merits, let alone a

substantial or clear likelihood of success, because their failure to exhaust their administrative

remedies deprives this Court of subject matter jurisdiction.  Moreover, the record establishes that

each of the student plaintiffs is afforded FAPE, consistent with both the IDEA and the New York

State Education Law and regulations.  Finally, the record is devoid of any evidence suggesting that

the student plaintiffs are threatened with actual or imminent irreparable harm.  Accordingly,

plaintiffs' motion for a preliminary injunction must be denied.

### A.      Plaintiffs cannot establish a likelihood of success on the merits

The IDEA was enacted to ensure that all children with disabilities receive a FAPE.  20

U.S.C. § 1412(1); <u>Walczak v. Florida Union Free School Dist.</u>, 142 F.3d 119, 122 (2d Cir. 1998).  In

order to receive federal money under the IDEA, States must certify to the United State Department

of Education that they have in effect policies that assure that students with disabilities the right to

FAPE.  Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 192 (2d Cir. 2005); see Board of Ed. of

the Hendrick Hudson Cent. School Dist. v. Rowley, 458 U.S. 176, 180-81 (1982) (discussing the

Education of the Handicapped Act, which preceded the IDEA).  As noted by the United States

Supreme Court, "[t]he primary responsibility for formulating the education to be accorded a

handicapped child and for choosing the educational method most suitable to the child's needs, was

left by the [IDEA] to state and local educational agencies in cooperation with the parents or guardian

of the child."  Rowley,  458 U.S. at 207.

### 1.        This Court lacks subject matter jurisdiction

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative

remedies before bringing a civil action in federal or state court . . . ."  J.S. ex rel. N.S. v. Attica Cent.

Schools, 386 F.3d 107, 112 (2d Cir. 2004); Kelly v. Saratoga Springs City School Dist., 2009 WL

3163146, *3 (N.D.N.Y. Sept. 25, 2009).  "A plaintiff's failure to exhaust administrative remedies

under the IDEA deprives a court of subject matter jurisdiction."  Polera v. Board of Educ. of

Newburgh Enlarged City School Dist., 288 F.3d 478, 487 (2d Cir. 2002); Kelly, 2009 WL 3163146,

at *3; accord Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 245 (2d Cir. 2008)

("Failure to exhaust the administrative remedies deprives the court of subject matter jurisdiction.").

One of the purposes of the exhaustion requirement is to permit an agency to apply its expertise.

Polera, 288 F.3d at 487; Cave, 514 F.3d at 245-46.  As noted by the Second Circuit,

> 'Exhaustion of the administrative process allows for the exercise of
> discretion and educational expertise by state and local agencies,
> affords full exploration of technical educational issues, furthers
> development of a complete factual record, and promotes judicial

7

> efficiency by giving these agencies the first opportunity to correct
> shortcomings in their educational programs for disabled children.'

Polera 288 F.3d at 487, quoting, Hoeft v. Tucson Unified School Dist., 967 F.2d 1298, 1303 (9th Cir.

1992).  Notably, the exhaustion requirement of the IDEA applies to other claims where the relief

sought is available under the IDEA.  See Cave v. East Meadow Union Free School Dist., 514 F.3d

240, 245-47 (2d Cir. 2008); Kelly v. Saratoga Springs City School Dist., 2009 WL 3163146, *3.

In New York State, the Committee on Special Education (hereinafter "CSE") is responsible

for developing a disabled student's IEP.  Geary Decl. ¶¶ 4, 13; Dallas v. Roosevelt Union Free

School Dist., 644 F. Supp.2d 287, 293 (E.D.N.Y. 2009).  CSEs are comprised of at least the

following members:

> (i) the parents or persons in parental relationship to the students; (ii)
> one regular education teacher of the student whenever the student is
> or may be participating in the regular education environment; (iii)
> one special education teacher of the student, or, if appropriate, a
> special education provider of the student; (iv) a school psychologist;
> (v) a representative of such school district who is qualified to provide
> or administer or supervise special education and is knowledgeable
> about the general curriculum and the availability of resources of the
> school district; (vi) an individual who can interpret the instructional
> implications of evaluation results; (vii) a school physician; (viii) an
> additional parent of a student with a disability residing in the school
> district or a neighboring school district, provided such parent shall
> not be employed by or under contract with the school district, and
> provided further that such additional parent shall not be a required
> member if the parents request that such additional parent member not
> participate; (xi) such other persons having knowledge of special
> expertise regarding the student as the school district or the parents or
> persons in parental relationship to the student shall designate, to the
> extent required under federal law; and (x) if appropriate, the student.

N.Y. Educ. L. § 4402(1)(b)(1)(a).  CSEs are statutorily required to develop an IEP that they believe

will afford each disabled student with FAPE.  See 20 U.S.C. §§ 1401(9); 1401(14); 1414(d).

If a parent or guardian is dissatisfied with the IEP developed by the CSE, he or she may seek review of the case by an impartial hearing officer.  Geary Decl. ¶ 3; <u>Dallas</u>, 644 F.Supp.2d at 293; <u>Kelly</u>, 2009 WL 3163146, at *3.  If still unsatisfied, a party may appeal the determination to a State Review Officer (hereinafter "SRO").  <u>Id.</u>  "Only after exhaustion of these procedures has an aggrieved party the right to file a suit in federal or state court."  <u>Cave</u>, 644 514 F.3d at 245.  Absent exhaustion of these administrative remedies, a court lacks subject matter jurisdiction.  <u>Id.</u>

Here, each of the student plaintiffs had an IEP in place during the time period during which the students were eligible for the child-specific exception found in 8 N.Y.C.R.R. § 200.22.  <u>See</u> Geary Decl. ¶¶ 6-12.  Yet, not a single IEP called for the use of aversive interventions, although each student was at JRC during the 2008-2009 school year.  <u>See id.</u>  Indeed, in the one instance in which a CSE applied for a child-specific exemption, albeit tardily, the CSE indicated that it was **not** recommending the use of aversives.  Geary Decl. ¶6.  Although the child-specific exemption was available to the student plaintiffs and although not a single CSE recommended the use of aversives in the student plaintiffs' IEPs, there is nothing in the complaint or the materials submitted in support of plaintiffs' motion for a preliminary injunction that suggests that a single parent or guardian sought a hearing and appealed to an SRO.  "A plaintiff asserting subject matter jurisdiction has the burden of proving it by a preponderance of the evidence that it exists."  <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000); <u>Kelly</u>, 2009 WL 3163146, at *3.  Here, there is nothing on the record to demonstrate that the plaintiffs availed themselves of the administrative remedies available to them. Therefore, they cannot establish subject matter jurisdiction and cannot demonstrate a substantial or clear likelihood of success on the merits.  Their motion for a preliminary injunction must be denied.

**2.     Plaintiffs cannot establish a clear or substantial likelihood of success  on the merits because the Regulations are consistent with the IDEA**

As stated by the Second Circuit,

> Recognizing that educational policy and practice are traditional State and local functions, in enacting the IDEA, Congress did not prescribe any substantive standard of education, instead seeking only 'to open the door of public education to handicapped children on appropriate terms.'

J.D. v. Pawlet School Dist., 224 F.3d 60, 65 (2d Cir. 2000) (quoting Rowley).  Put another way,  the IDEA "does not usurp the state's traditional role in setting educational policy . . . .  Rather, it is left to the states to determine how to implement the statute's goals."  Taylor v. Vermont Dept. of Educ., 313 F.3d 768, 777 (2d Cir. 2002).  Indeed, the very definition of FAPE expressly provides that the services to which a student is entitled under the statute must be consistent with the State educational agency's standards.  See 20 U.S.C. § 1401(9); 34 C.F.R. § 300.17

Because the IDEA reserves to the States the authority to set educational policy and standards, "the role of the federal courts in reviewing state educational decisions under the IDEA is circumscribed."  Gagliardo v. Arlington Cent. School Dist., 489 F.3d 105, 112 (2d Cir. 2007); A.C. v. Board of Ed. of the Chappaqua Cent. School Dist., 553 F.3d 165, 171 (2d Cir. 2009).  The "IDEA's statutory scheme requires substantial deference to state administrative bodies on matters of educational policy."  Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 191 (2d Cir. 2005).  Thus, the United States Supreme Court cautions that  "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the court to substitute their own notions of sound educational policy for those of the school authorities which they review."  Rowley, 458 U.S. at  206;  A.C., 553 F.3d at 171 (quoting Rowley); Cerra., 427 F.3d at 191-92 (same).  Because "the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy," a reviewing court's

inquiry is limited to deciding whether the requirements of the IDEA have been met.  Cerra, 427 F.3d at 192 (internal quotation omitted); Rowley, 458 U.S. at 207.

Defendants in this case made a policy decision and established a State standard to prohibit the use of aversives on New York State students.  Cort Decl. ¶¶ 7, 12.  Simply put, the defendants determined that FAPE was attainable without subjecting a disabled child to painful stimuli.  The decision was made after a considerable review of research, consultations with behavioral experts, and the review of written comments and public testimony from parents, professionals and others.  Id. at ¶ 9.  The Regulations are consistent with the IDEA's emphasis on positive behavior supports, 20 U.S.C. §§ 1414(d)(3)(B)(i); 1454(a)(3)(B)(iii); 1462(a)(6)(D); 1462(b)(2)(a)(v), and also with regulations adopted by other State educational agencies.  See, e.g., Cal. Ed. Code § 56520(a)(3); 22 Pa. Code § 14.133(e)(8); N.H Admin. Rules, Ed. §§ 1119.02(e) & 1129.04(j); Wash. Admin. Code § 392-172-392(1); Minn. R. 3235.2900(5)(A)(2); Mont. Admin. R. 10.16.3346(4)(a); N.C. Gen. Stat. § 115C-391.1.  Congressional intent for positive behavioral interventions over aversives is not only evident in the IDEA, but also in pending federal bills.  See HR. 4247, S.2860, 111th Congress, 1st Session (both attached).  In a February 24, 2010 Memorandum-Decision and Order, this Court upheld the Regulations, finding they "represent an informed, rational choice between two opposing schools of thought on the use of aversives."  Alleyne v. New York State Educ. Dept., 06-CV-994, Memorandum-Decision and Order, Dkt. #251, pp.17-18 (N.D.N.Y. Feb. 24, 2010) (attached).

James A. Mulick, Ph.D., one of the Alleyne experts in psychology and a supporter of aversives, testified that there is a "tribal division[]" in the psychological community as to the use of aversives.  Mulick Tr. p. 281-83.  He describes his field as a "small field" with between 600 and 700 members in the applicable division of the American Psychological Association.   Id. at 282. According to Dr. Mulick, "by way of shear numbers and success in marketing and support from

11

government agencies, the positive behavior support people are becoming the standard face of behavior modification in the schools, which is their target audience." Id. at 282. Dr. Mulick further testified that most experts involved in the use of behavior modification in conjunction with education belong to a different organization, the American Association on Intellectual and Developmental Disabilities, an organization that is predominantly opposed to the use of aversives. Id. at 285-86. Notably, many of the studies that demonstrate the desirability of positive interventions over aversives were funded by the United States Department of Education (hereinafter "USDOE"). Cort. Decl. ¶ 11.

While there may be a "tribal division[]" within the psychological community with respect to the use of aversives, there is no evidence of such a division in the education community. In Dr. Mulick's words, "the positive behavior support people are becoming the standard face of behavior modification in schools . . . ." Mulick Tr. 283. Congress has made known its support for positive behavior supports in the IDEA. See 20 U.S.C. §§ 1414(d)(3)(B)(i); 1454(a)(3)(B)(iii); 1462(a)(6)(D); 1462(b)(2)(a)(v). More significantly, the USDOE, which is the agency responsible for enforcing the IDEA, reviewed the Regulations and found that they could be implemented consistent with the statute. Cort. Decl. ¶¶ 14-15.

Against the overwhelming support for positive behavioral supports by Congress and the education experts, plaintiffs ask this Court to strike down the Regulations. See Complaint, Prayer for Relief (b). This Court may not do so. The Second Circuit has recently reiterated that it is impermissible for a court to choose "'between the views of conflicting experts on a controversial issue of education policy . . . in direct contradiction of the opinions of state administrative officers . . . . .'" T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 418 (2d Cir. 2009), quoting, Cerra v. Pawling Cent. School Dist., 427 F.3d at 192. Here, both the state and local education agencies

determined that the student plaintiffs can receive FAPE without the use of painful aversives.  Even

if this Court were to find that plaintiffs' submissions demonstrates a controversy as to whether the

use of painful stimuli is necessary for students to achieve FAPE, it may not choose between

conflicting experts in direct contradiction of the opinions of the state administrative officers.  <u>T.Y.</u>,

584 F.3d at 418; <u>Cerra</u>, 427 F.3d at 192.

Because plaintiffs cannot demonstrate a clear or substantial likelihood of success on the

merits, their motion for a preliminary injunction must be denied.  <u>See</u> <u>Doninger v. Niehoff</u>, 527 F.3d

41, 47 (2d Cir. 2008) (dismissal proper where party fails to show sufficient likelihood of success on

the merits.).

### B.     Plaintiffs cannot demonstrate irreparable harm

"The showing of irreparable harm is 'perhaps the single most important prerequisite for the

issuance of a preliminary injunction' and the moving party must show that injury is likely before the

other requirements for an injunction will be considered." <u>Kamerling v. Massanari</u>, 295 F3d 206, 214

(2d Cir. 2002) (internal citation omitted).  Moreover, preliminary injunctive relief should not be

granted based upon allegations of remote or speculative harm.  <u>Freedom Holdings v. Spitzer</u>, 408

F.3d 112, 113 (2d Cir. 2005); <u>State</u> <u>of New York v. Nuclear Regulatory Commission</u>, 550 F.2d 745,

755 (2d Cir. 1977).   Consequently, where a plaintiff fails to establish an imminent likelihood of

injury in the absence of injunctive relief, a motion for injunctive relief must be denied.  <u>See, e.g.</u>,

<u>J.S.G. Trading Corp. v. Tray-Wrap, Inc.</u>, 917 F.2d 75 (2d Cir. 1990).

Here, plaintiffs cannot demonstrate irreparable harm in the absence of a preliminary

injunction.  Not a single student plaintiff in this action has an IEP that contains a provision for the

use of aversives.  <u>See</u> Geary Decl. ¶¶ 6-12.  Because the IEP is the vehicle by which each student is

to achieve FAPE, the CSE must create an IEP that it determines will provide FAPE.  <u>See</u> 20 U.S.C.

§§ 1401(9); 1401(14); 1414(d).  In this case, each CSE necessarily determined that the student plaintiffs could achieve FAPE without the use of aversive interventions.  "Because administrative agencies have special expertise in making judgments concerning student progress, deference is particularly important when addressing an IEP's substantive adequacy."  Cerra v. Pawling Cent. School Dist., 427 F.3d 186, 195 (2d Cir. 2005); A.C. v. Board of Educ. of Chappaqua Central School Dist., 553 F.3d 165, 173 (2d Cir. 2009) (quoting Cerra); T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 418 (2d Cir. 2009) (same).  Each student plaintiff's CSE necessarily determined that each IEP was substantively adequate.  Significantly, not a single plaintiff has challenged the substantive adequacy of his or her child's IEP.  Therefore, plaintiffs cannot establish irreparable harm.

To challenge the determinations made by the education experts, plaintiffs submit the affidavit of JRC's Executive Director Matthew Israel, Ph.D.  Dr. Israel falls short of stating outright that the student plaintiffs are denied FAPE or are in imminent danger of being denied FAPE.  See generally Affidavit of Matthew L. Israel, Ph.D. Dkt. #7 (hereinafter "Israel Aff.").  More significantly, Dr. Israel is not qualified to determine what constitutes FAPE for a given student.  As stated by the United States Supreme Court, "[t]he primary responsibility for formulating the education to be accorded a handicapped child, and for choosing the educational method most suitable to the child's needs, was left by the [IDEA] to state and local educational agencies in cooperation with the parents or guardian of the child."  Board of Educ. of Hendrick Hudson Cent. School Dist. v. Rowley, 458 U.S. 176, 207 (1982).  Here, the local educational agencies, the school districts through the CSEs, necessarily determined that the student plaintiffs can achieve FAPE without the use of painful aversives.

Each CSE in New York is statutorily required to have both a special education teacher and a representative of the school district who is qualified to provide or administer or supervise special

14

education.  N.Y. Educ. L § 4402(1)(b)(1)(a).  In contrast, Dr. Israel is a licensed psychologist who holds no degrees or certifications in the area of education.  See Israel Tr. p. 11.  Indeed, his experience with education is limited to his involvement with his own "schools."  See id. at 40-92. Interestingly, Dr. Israel does not recall when his "school" first obtained a license from a state education department or even when it first hired licensed teachers.  See id. at 61-68.  Simply put, Dr. Israel does not have the expertise in education sufficient to rebut the determinations of the CSEs.

Dr. Israel's and JRC's actions, or inactions to be more precise, further demonstrate that the student plaintiffs are not in danger of being deprived a FAPE.  In four separate letters between October 2007 and June 2009, SED notified JRC that it must immediately provide SED with the names of any students for whom JRC cannot provide an appropriate educational program consistent with New York regulations.  Geary Decl. ¶ 18.  JRC has not provided SED with the name of a single student plaintiff.  Id. at ¶19.  JRC's failure to provide any names to SED necessarily indicates that it is able to provide FAPE to the student plaintiffs consistent with the students' IEPs and consistent with New York regulations.

A party seeking a mandatory preliminary injunction has the burden to show a likelihood of irreparable harm and a "clear" or "substantial" likelihood of success on the merits.  Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008).  Here, plaintiffs cannot demonstrate either because not a single student plaintiff has an IEP that contains a provision for the use of aversive interventions. Accordingly, plaintiffs' motion must be denied.

## POINT II

## DEFENDANTS' CROSS-MOTION TO DISMISS
## SHOULD BE GRANTED

15

A motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6) tests the legal sufficiency of the claims stated in the complaint.  In <u>Ashcroft v. Iqbal</u>, the United States Supreme Court recently explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009), <u>quoting</u>  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  While "[t]he plausibility standard is not akin to a 'probability requirement, . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id</u>.  A complaint that pleads facts "merely consistent with" a defendant's liability, "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  <u>Id.</u>, <u>quoting</u> <u>Twombly</u>, 550 U.S. at 557.

In <u>Ashcroft v. Iqbal</u>, the Supreme Court clarified that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Id</u>., <u>citing</u>, <u>Twombly</u>, 550 U.S. at 555).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, also are insufficient."  <u>Id</u>.  Thus, a pleading that offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" is insufficient.  <u>Id.</u>, <u>quoting</u>, <u>Twombly</u>, 550 U.S. at 555.

"Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . ." But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" <u>Id</u>., <u>quoting</u> Fed. Rule Civ. Proc. 8(a)(2).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 92d Cir. 2000); <u>Kelly v. Saratoga Springs City School Dist.</u>, 2009

16

WL 3163146, *3 (N.D.N.Y. Sept. 25, 2009).  A court may refer to evidence outside the pleadings

when resolving a motion to dismiss.  Kelly, 2009 WL 3163146, at *3; Makarova, 201 F.3d at 113.

As noted by this Court

> 'When the question to be considered is one involving the jurisdiction
> of a federal court, jurisdiction must be shown affirmative, and that
> showing is not made by drawing from the pleadings inference
> favorable to the party asserting it.'

Kelly, 2009 W.L. 3163146, at *3, quoting, Shipping Fin. Svcs. Corp. v. Drakos, 140 F.3d 129, 131

(2d Cir. 1998).  "Thus, 'a plaintiff asserting subject matter jurisdiction has the burden of proving by a

preponderance of the evidence that it exists.'"  Id., quoting, Makarova, 201 F.3d at 113.


### A.      Plaintiffs fail to state a claim on their first cause of action under the IDEA

It appears that plaintiffs assert a "global" IDEA claim against the defendants that the

adoption of the Regulations violates the IDEA.  See Complaint, ¶¶ 95-103.  This Court has already

rejected a similar claim, holding that the Regulations "represent a permissible education policy

choice by defendants for a variety of reasons."  Alleyne v. New York State Educ. Dept., 06-CV-994,

Memorandum-Decision and Order, Dkt. #251 (N.D.N.Y. Feb. 24, 2010).  Accordingly, plaintiffs'

global claim (Count II) must be dismissed.

Plaintiffs' FAPE claims under the IDEA are also infirm.  Plaintiffs' complaint is littered with

formulaic allegations that the student plaintiffs are denied a FAPE.  See, e.g., Complaint, ¶¶ 48, 51,

54, 57, 60, 63, 66, 67.  However, there is not a single allegation in the complaint that suggests that

any of the student plaintiffs have shown academic decline.  See generally Complaint.  More

significantly, the complaint fails to assert that a  single student plaintiff's CSE prepared an IEP that

provided for the use of aversives.  See generally Complaint.  The IEP is the "'centerpiece' of the

17

IDEA's education delivery system." Murphy v. Arlington Cent. School Dist. Bd. of Educ., 297 F.3d 195, 197 (2d Cir. 2002), quoting, Honig v. Doe, 484 U.S. 305, 311 (1988). Each CSE must develop an IEP that is designed to provide the student with FAPE. See 20 U.S.C. §§ 1401(9); 1401(14); 1414(d). Here, although each student plaintiff was at one time eligible for the child-specific exemption in the Regulations, not a single CSE recommended the use of aversives. More significantly, it appears that not a single plaintiff sought administrative review of the IEPs.

Plaintiffs' failure to plead facts demonstrating that the student plaintiffs' CSEs recommended aversives and/or that plaintiffs administratively challenged the IEPs is fatal to their claims for two reasons. First, plaintiffs' failure to avail themselves of administrative remedies deprives this Court of subject matter jurisdiction. See Point I(A)(1) supra. Second, plaintiffs cannot demonstrate that aversives are necessary for the student plaintiffs to achieve FAPE. The CSEs have necessarily determined that each student plaintiff can achieve FAPE in the absence of aversives. See Geary Decl. ¶ 12. The complaints conclusory allegations to the contrary are simply insufficient to overcome the determination of the CSEs. See T.Y. v. New York City Dept. of Educ., 584 F.3d 412, 418 (2d Cir. 2009) (noting that deference must be accorded to administrative agencies because they have "special expertise in making judgments concerning student progress"). Therefore the first cause of action must be dismissed.

**B.     Plaintiffs fail to state a claim for a substantive due process violation**

Defendants' motion to dismiss plaintiffs' substantive due process claims must be granted because plaintiffs failed to exhaust their administrative remedies. See Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 245-47 (2d Cir. 2008) (holding that exhaustion requirement of the IDEA applies to other claims where the relief sought is available under the IDEA); Point I(A)(1) supra. Plaintiffs' substantive due process claims also fail on the merits.

18

As noted by this Court, "'[i]n assessing whether a government regulation impinges on a substantive due process right, the first step is to determine whether the asserted right is 'fundamental.'" Alleyne, 06-CV-994, Memorandum Decision and Order, Dkt. 251, at 24, quoting Leebaert v. Harrington, 332 F.3d 134, 140 (2d Cir. 2003).  "When the right infringed is 'fundamental,' the governmental regulation must be 'narrowly tailored to serve a compelling state interest.'" Immediato v. Rye Neck School Dist., 73 F.3d 454, 460 (2d Cir. 1996), quoting, Reno v. Flores, 507 U.S. 292, 302 (1993).  However, "[w]here the claimed right is not fundamental, the governmental regulation need only be reasonably related to a legitimate state objective." Id. at 461; Alleyne, 06-CV-994, Memorandum Decision and Order, Dkt. 251, at 25.

Plaintiffs can point to no authority for the proposition that the student plaintiffs have a federal right to aversives.  While plaintiffs certainly have a right to education, that right is not fundamental.  See Handberry v. Thompson, 446 F.3d 335, 352-53 (2d Cir. 2006); Alleyne, 06-CV-994, Memorandum Decision and Order, Dkt. 251, at 25.  Therefore, defendants need only establish that the regulations are reasonably related to a legitimate state interest.  "Education is unquestionably a legitimate state interest." Immediato, 73 F.3d at 462.  As stated by this Court:

> the regulations' limitation and ultimate prohibition of aversives is rationally related to these state interests, as defendants could have reasonably concluded that the potential harm of aversives in education outweighs their potential benefits.

Alleyne, 06-CV-994, Memorandum Decision and Order, Dkt. 251, at 26.  Because the Regulations are reasonably related to a legitimate state interest, plaintiffs' substantive due process claims (Count III) must be dismissed.  Id.

### C.    Plaintiffs fail to state a claim under the Rehabilitation Act

Defendants' motion to dismiss plaintiffs' Rehabilitation Act claims must be granted because plaintiffs failed to exhaust their administrative remedies.  See Cave v. East Meadow Union Free School Dist., 514 F.3d 240, 245-47 (2d Cir. 2008) (holding that exhaustion requirement of the IDEA applies to other claims where the relief sought is available under the IDEA); Point I(A)(1) supra. Plaintiffs' Rehabilitation Act claims also fail on the merits.

Plaintiffs' Rehabilitation Act claims fail because plaintiffs cannot demonstrate that they were denied any benefits solely by reason of their disabilities or that defendants acted with bad faith. "Section 504 of the Rehabilitation Act provides that 'no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination in any program or activity receiving Federal financial assistance.'" St. Johnsbury Academy v. D.H., 240 F.3d 163, 173 (2d Cir. 2001) (quoting statute); Scaggs v. New York State Dept. of Ed., 2007 WL 1456221, *15 (E.D.N.Y. May 16, 2007). While Section 504 requires that children with disabilities be provided a "free appropriate public education," the inquiry is not whether a student receives incorrect or erroneous special education treatment. Scaggs, 2007 U.S. WL 1456221, at *15.  Rather, the inquiry under Section 504 is whether a student with a disability was subject to discrimination. Id.  Consequently, "something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, *i.e.* a plaintiff must demonstrate that a [defendant] acted with bad faith or gross misjudgment." Wenger v. Canastota Cent. School Dist., 979 F. Supp. 147, 152 (N.D.N.Y. 1997) (alteration added).

As this Court already held, its finding "that the regulations represent a permissible educational policy choice by the defendants precludes any finding that such regulations were enacted in bad faith or with gross misjudgment." Alleyne, 06-CV-994, Memorandum Decision and

20

Order, Dkt. 251, at 21.  Therefore, defendants' motion to dismiss plaintiffs' Rehabilitation Act claims

(Count IV) must be granted.

### D.        Plaintiffs fail to state a claim for Equal Protection

Defendants' motion to dismiss plaintiffs' Equal Protection claims must be granted because

plaintiffs failed to exhaust their administrative remedies.  See Cave v. East Meadow Union Free

School Dist., 514 F.3d 240, 245-47 (2d Cir. 2008) (holding that exhaustion requirement of the IDEA

applies to other claims where the relief sought is available under the IDEA); Point I(A)(1) supra.

Plaintiffs' Equal Protection claims also fail on the merits.

The Fourteenth Amendment of the United States Constitution guarantees that no state shall

"deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend.

XIV, § 1.  In order to establish an equal protection claim, a plaintiff must establish that: (1) he or she

was  selectively treated compared with others similarly situated; and (2) the selective treatment was

based on impermissible considerations, such as membership in a suspect class, intent to inhibit or

punish the exercise of a constitutional right, or malicious or bad faith intent to injure.[2]  Diesel v.

Town of Lewisboro, 232 F.3d 92, 103 (2d Cir.2000); Crowley v. Courville, 76 F.3d 47, 52-53 (2d

Cir.1996);  Selevan v. New York Thruway Auth., 470 F.Supp.2d 158, 175 (N.D.N.Y. 2007); accord

LeClair v. Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980).

Plaintiffs cannot establish either element of an Equal Protection claim.  First, plaintiffs are

not selectively treated compared with others similarly situated.  The Regulations apply to all New

York State students.  8 N.Y.C.R.R. §§ 19.5; 200.22.  Plaintiffs are receiving the identical application

---

[2]    Plaintiffs also raise a claim under the Equal Protection Clause of the New York Constitution.  New York
Constitution Article I, § 11.  However, the Eleventh Amendment bars state law claims against a State in federal court.
Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 105-06 (1984).  Moreover, it is well-settled that the New
York and federal Equal Protection Clauses are co-extensive.  Town of Southold, 406 F.Supp.2d 227, 241, n. 13
(E.D.N.Y. 2005).  Thus, no separate discussion of the New York Constitution is required.

of the Regulations as that of all New York State students with disabilities.  Plaintiffs appear to assert

that they are being treated differently than those students who fall under the child-specific exception

to New York's ban on aversives.  See Complaint, ¶ 119.  However, each of the student plaintiffs was

eligible for the child-specific exception.  Geary Decl. ¶¶ 6, 7, 8, 9, 10, 11, 12.  They did not qualify

under the "grandfather clause" because their CSEs did not recommend aversives.

Moreover, plaintiffs cannot establish that the Regulations were based on impermissible

considerations.  As this Court found, "there is no indication that the regulations were the result of

disability-based discrimination or an intent to cause plaintiffs injury, constitutional or otherwise."

Alleyne, 06-CV-994, Memorandum Decision and Order, Dkt. 251, at 28.  Because the complaint

fails to satisfy either prong of an Equal Protection claim, defendants' motion to dismiss such claim

(Count V) should be granted.

### E.    Plaintiffs fail to state a claim for procedural due process

Defendants' motion to dismiss plaintiffs' procedural due process claims must be granted

because plaintiffs failed to exhaust their administrative remedies.  See Cave v. East Meadow Union

Free School Dist., 514 F.3d 240, 245-47 (2d Cir. 2008) (holding that exhaustion requirement of the

IDEA applies to other claims where the relief sought is available under the IDEA); Point I(A)(1)

supra.   Plaintiffs' procedural due process claims also fail on the merits.

When analyzing a procedural due process claim, a court must first determine "whether the

plaintiff has a property or liberty interest protected by the Constitution."  Narumanchi v. Board of

Trustees of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988); Alleyne, 06-CV-994, Memorandum

Decision and Order, Dkt. 251, at 26.  If an interest exists, the court must then "ask 'what process was

due to the plaintiff, and . . . whether that constitutional minimum was provided in the case under

review.'"  <u>Alleyne</u>, 06-CV-994, Memorandum Decision and Order, Dkt. #251, at 26, <u>quoting</u>,

<u>Narumanchi</u>, 850 F.2d at 72.

      This Court has already questioned whether the student plaintiffs' property interest, which

does not rise to the level of a fundamental right, extends to aversives.  <u>Alleyne</u>, 06-CV-994,

Memorandum Decision and Order, Dkt. 251, at 26.  Unlike the plaintiffs in <u>Alleyne</u>, plaintiffs here

were not "deprived" of any interest by virtue of the Regulations.  Indeed, as not a single plaintiff has

aversives on his or her IEP, the Regulations have deprived the student plaintiffs of nothing.  More

significantly, this Court found that student who had aversives on their IEPs at the time the

Regulations were implemented were provided all the process to which they were due.  <u>Id.</u> at 29.

"[I]n the months following the passage of the emergency regulations, notices were provided, public

hearings were held, comments were accepted, and an assessment of public comment was published -

all in compliance with New York's Administrative Procedure Act."  <u>Id.</u>

      Plaintiffs cannot demonstrate a property right in aversives.  Assuming, for argument's sake,

they could assert a property interest, they were provided all the process to which they were due.  <u>Id.</u>

at 27-28.  Accordingly, defendants' motion to dismiss plaintiffs' procedural due process claims

(Count VI) should be granted.

**CONCLUSION**

The student plaintiffs in this case do not have IEPs that provide for the use of aversive interventions, nor have the plaintiffs administratively challenged the student plaintiffs' IEPs. Therefore plaintiffs cannot demonstrate either a likelihood of success on the merits or irreparable harm. Plaintiffs' motion for a preliminary injunction must therefore be denied.

Moreover, plaintiffs' failure to challenge the current or past IEPs deprives this Court of subject matter. Further, because the student plaintiffs' IEPs do not provide for aversives, their CSEs necessarily determined that the student plaintiffs could achieve FAPE without aversives. Finally, this Court has already upheld the Regulations as a valid exercise of defendants' authority under the IDEA. Accordingly, defendants' cross-motion to dismiss should be granted.

Dated: Albany, New York
     March 2, 2010

                        ANDREW M. CUOMO
                        Attorney General of the State of New York
                        Attorney for Defendants New York State
                                Education Department and Board of
                                Regents


                        By:    *s/Kelly L. Munkwitz*
                        Kelly L. Munkwitz
                        Assistant Attorney General, of Counsel
                        Bar Roll No. 509910
                        Telephone:  (518) 486-4603
                        Fax:  (518) 473-1572 (Not for service of papers)
                        Email: Kelly.Munkwitz@ag.ny.gov


TO:    Michael P. Flammia, Esq.
          Eckert, Seamans Law Firm
          Two International Place, 16th Floor
          Boston, MA  02110

          Meredith H. Savitt, Esq.
          Office of Meredith H Savitt
          636 Delaware Avenue
          Delmar, NY  12054

          Jeffrey J. Sherrin, Esq.
          O'Connell and Aronowitz
          O'Connell & Aronowitz Law Firm
          54 State Street, 9th Floor
          Albany, NY  12207-2501