**Westlaw Delivery Summary Report for MUNKWITZ,KELLY**

| | |
|---|---|
| Date/Time of Request: | Tuesday, March 2, 2010 11:40 Central |
| Client Identifier: | SED |
| Database: | DCT |
| Citation Text: | Slip Copy |
| Lines: | 402 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Slip Copy, 2009 WL 3163146 (N.D.N.Y.)
**(Cite as: 2009 WL 3163146 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Susyn KELLY and Thomas Kelly with, o/b/o, M.K., Plaintiffs,
v.
SARATOGA SPRINGS CITY SCHOOL DISTRICT, Defendant.
**No. 09-cv-276 (GLS*RFT).**

Sept. 25, 2009.

West KeySummary
**Schools 345 ⟿155.5(3)**

345 Schools
    345II Public Schools
        345II(L) Pupils
            345k155.5 Handicapped Children, Proceedings to Enforce Rights
                345k155.5(2) Judicial Review or Intervention
                    345k155.5(3) k. Exhaustion of Remedies. Most Cited Cases

Parents filed an appeal to the State Review Officer (SRO) late and thus failed to exhaust their administrative remedies under the Individuals with Disabilities Education Act (IDEA). The parents requested an independent hearing on behalf of their disabled daughter, alleging their school district failed to provide the daughter an appropriate public education. The SRO's decision to dismiss the parents' petition for review was not arbitrary and capricious. The independent hearing officer both e-mailed and sent hard copies of his decision to the parties as well as provided notification of the time requirements for filing an appeal and advised them of where directions and sample forms for initiating an appeal could be located. Individuals with Disabilities Education Act, § 615(i)(1)(A), 20 U.S.C.A. § 1415(i)(1)(A).

Susyn Kelly, Saratoga, NY, pro se.

Thomas Kelly, Saratoga, NY, pro se.

Whiteman, Osterman & Hanna LLP, Beth A. Bourassa, Esq., of Counsel, Albany, NY, for the Defendant.

*MEMORANDUM-DECISION AND ORDER*

GARY L. SHARPE, District Judge.

**I.** *Introduction*

*1 Pending is defendant's motion to dismiss and request for attorneys' fees. (Dkt. No. 7.) *Pro se* plaintiffs Susyn and Thomas Kelly commenced this action with, and on behalf of, their daughter, M.K., seeking relief and compensatory damages under the IDEA,[FN1] § 504 of the Rehabilitation Act of 1973,[FN2] the ADA,[FN3] 42 U.S.C. §§ 1983 and 1985, and New York State Education Law.[FN4] (*See* Compl., Dkt. No. 1.) Defendant's motion to dismiss is granted due to the court's lack of subject matter jurisdiction. Defendant's motion for attorneys' fees is denied.

> FN1. Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et. seq.*
>
> FN2. 29 U.S.C. § 794, *et. seq.*
>
> FN3. Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*
>
> FN4. Section 8 of the Regulations of the New York Commissioner of Education, 8 N.Y.C.R.R. § 200.5

**II.** *Background*

The Kellys allege that defendant Saratoga Springs City School District has deprived them and their daughter of a free appropriate public education (FAPE) by failing to implement an appropriate In-

dividualized Education Program (IEP) as required by the IDEA, the ADA, and § 504. (*See generally* Compl., Dkt. No. 1.) They further allege that such failure denied their due process and equal protection rights under the Fourteenth Amendment in violation of § 1983. (*See generally id.*) Under 20 U.S.C. § 1415, the Kellys seek reimbursement for (1) M.K.'s private tutoring during the 2007-2008 school year and (2) reasonable attorneys' fees incurred during the administrative proceedings. (*See id.* at 19.) While it is not a model of clarity, the court has construed the Kellys' complaint to also include a demand for damages based on the District and its attorney's alleged conspiracy to interfere with and deprive them of their civil rights in violation of § 1985.[FN5] (*See id.* at 1, 19; *see also id.* at ¶¶ 47, 51.)

> FN5. The Kellys generally allege a violation of § 1985 but fail to indicate which subsection they believe applies. Under the present facts, the only basis for a claim is under § 1985(3), which prohibits a conspiracy by two or more persons from directly or indirectly depriving "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...." 42 U.S.C. § 1985(3).

Viewed in the light most favorable to plaintiffs, the facts are as follows. The Kellys are residents of Saratoga Springs, New York. From September 2005 to June 2008, their daughter, M.K., attended Caroline Street School in the District. (*See* Compl. ¶ 1, Dkt. No. 1.) Between 2005 and 2007, upon the Kellys' requests, M.K. was twice referred to the District's Committee on Special Education (CSE) for evaluation. (*See* Def. Ex. B, Impartial Hearing Officer (IHO) Decision at 4, Dkt. No. 7:2.) At both meetings, the CSE recommended against classifying M.K. as learning disabled. (*See id* .) Nonetheless, in the summer of 2007, as a result of a resolution hearing held involving the Kellys and the District, the CSE met to re-consider M.K.'s classification. (*See id.*)

On July 11, 2007, before M.K. began second grade, the CSE classified M.K. as a student with a learning disability and recommended an IEP for the 2007-2008 school year. (*See id.*) And in January 2008, a CSE subcommittee issued an amended IEP that updated M.K.'s performance levels and testing results. (*See id.* at 5-7.) Pursuant to the IEP, M.K. received direct consultant teacher services, special seating, and testing modifications. (*See id.* at 6.) The District also provided M.K. with a "balanced literacy approach" utilizing both the Wilson and Scott Foresman reading programs. (*See id.* at 5-6.)

**\*2** The Kellys' problems with the appropriateness of the IEP included a failure to: (1) state M.K. as dyslexic; (2) state whether M.K. should receive a systematic, multi-sensory reading program; and (3) measure M.K.'s progress by standardized testing. (*See id.* at 19-20.) Additionally, the Kellys complained that the District refused to implement the Wilson program in accordance with the July 2007 Resolution Agreement by, among other things, failing to comprehensively and consistently apply the Wilson program. (*See id* . at 19-20; *see also* Compl. ¶¶ 23, 62, Dkt. No. 1.) Based on these concerns, on January 15, 2008, M.K. began receiving private tutoring under the Orton-Gillingham reading program at the Adirondack Reading Center (ARC). (*See* Def. Ex. B, IHO Decision at 4, 20, Dkt. No. 7:2.; *see also* Compl. ¶ 29, Dkt. No. 1.)

Based on the District's alleged failings, the Kellys requested an impartial hearing, seeking relief and reimbursement, pursuant to 20 U.S.C. § 1415(f), 34 C.F.R. § 300.511, N.Y. EDUC. LAW § 4404, and 8 N.Y.C.R.R. § 200.5. (*See* Def. Memo. of Law at 2, Dkt. No. 7:3.; *see also* Def. Ex. B, IHO Decision at 4-5, Dkt. No. 7:2; Compl. ¶ 57, Dkt. No. 1.) The IHO held an impartial hearing on May 28, May 29, and July 7, 2008. (*See* Def. Ex. B, IHO Decision at 3, Dkt. No. 7:2.) The Kellys were accompanied by counsel at the hearing. (*See id.* at 1-2; *see also* Def. Ex. C, Pet. to State Review Officer (SRO) at 6, Dkt. No. 7:2; Compl. ¶ 36, Dkt. No. 1.) On August 21,

2008, the IHO determined that while M.K.'s IEP was "procedurally and substantively defective," it still provided M.K. with an appropriate special education program, whereby the Kellys were not entitled to reimbursement for the costs of M.K.'s private tutoring. (*See* Def. Ex. B, IHO Decision at 31, Dkt. No. 7:2.)

The IHO emailed his decision to counsel for both parties on August 22, 2008, and mailed each party a hard copy on August 25, 2008, which the Kellys received on August 27, 2008. (*See* Def. Ex. D, SRO Decision at 2, Dkt. No. 7:2; *see also* Compl. ¶ 35, Dkt. No. 1.) In his decision, the IHO gave notice to each party that any appeal to the SRO must be made within thirty-five days of the date of decision or the date of mailing plus four days. (*See* Def. Ex. B, IHO Decision at 32, Dkt. No. 7:2.) The IHO also notified each party that failure to file a timely appeal would result in waiver. (*See id.*) The Kellys filed their appeal with the SRO on October 6, 2008, forty-six days after the I HO reached his decision and forty-two days after the date of mailing. (*See* Compl. ¶ 50, Dkt. No. 1.)

The SRO, in a decision issued on November 7, 2008, found that the Kellys failed to file their appeal in a timely manner and did not have good cause for the delay. (*See* Def. Ex. D, SRO Decision at 2, Dkt. No. 7:2.) Accordingly, the SRO dismissed the Kellys' petition for untimely service and improper initiation of an appeal. (*See id.* at 3.)

**\*3** The Kellys commenced this action on March 9, 2009.

### III. *Discussion*

#### A. *Motion to Dismiss Standard*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." *Id.* at 113. "When the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir.1998). Thus, "a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova,* 201 F.3d at 113. As relevant to the current motion, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest," especially where civil rights violations are alleged. *See Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000).

#### B. *Standard of Review in IDEA Cases*

"It is well settled that the IDEA requires an aggrieved party to exhaust all [state] administrative remedies before bringing a civil action in federal or state court...." *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 112 (2d Cir.2004) (citing, inter alia, 20 U.S.C. § 1415(i)(2)); *see also Fennell v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995). "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 483 (2d Cir.2002). "The exhaustion requirement also applies where plaintiffs seek relief under other federal statutes when relief is also available under the IDEA." *J.S.,* 386 F.3d at 112 (citations omitted). As a result, the exhaustion requirement encompasses, and therefore precludes the court from reviewing in the first instance, any claims arising under § 1983, § 504, or the ADA that can be remedied by resolving the IDEA claims. *See, e.g., Hope v. Cortines,* 872 F.Supp. 14 (E.D.N.Y.1995), *aff'd,* 69 F.3d 687 (2d Cir.1995); *J.S.,* 386 F.3d at 112.

Under the IDEA, parents who are dissatisfied with

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

an IEP developed for their child by the local school district may file a complaint about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child...." 20 U.S.C. § 1415(b)(1). Prior to seeking review in federal or state court, an aggrieved parent must first seek review of the IEP in a due process hearing with an IHO. *See* 20 U.S.C. § 1415(f); 8 N.Y.C.R.R. § 200.5(i)-(j). Second, any party who disputes the IHO's findings must appeal to a SRO of the State Education Department.[FN6] 20 U.S.C. § 1415(g); 8 N.Y.C.R.R. § 200.5(k).

> FN6. "Review by the SRO is an essential step in the process of resolving an IDEA claim." *Grenon v. Taconic Hills Cent. Sch. Dist.,* No. 05-CV-1109, 2006 WL 3751450, at *6 (N.D.N.Y. Dec. 19, 2006). Exhaustion ensures that disputes regarding IEPs for disabled children are originally handled by administrators with expertise and experience in the area, which enables them to resolve grievances promptly. *See J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 112 (2d Cir.2004). Additionally, the administrative process produces a "helpful record ... for the federal court." *See id.* at 113. In total, "[e]xhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency...." *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 487 (2d Cir.2002) (citation and quotation marks omitted). While it "prevents courts from undermining the administrative process," *Heldman on behalf of T.H. v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992), the exhaustion doctrine deters parties from wasting the resources of the courts and the states. "To allow [a claimant] to assert claims that she failed to assert before the SRO due to her non-compliance with the applicable procedures would be tantamount to cutting the SRO out of the process ... [and] would circumvent the procedures established for litigating IDEA claims." *Grenon,* 2006 WL 3751450, at *6.

**\*4** A petition for review to the SRO must be served on the school district within thirty-five days of the date of the IHO's decision. *See* 8 N.Y.C.R.R. §§ 279.2(b), 279.13. Or, if a party receives the IHO's decision by mail, that party must serve the district within thirty-five days of the date of mailing, excluding the date of mailing and the four subsequent days. *See id.* A party's failure to bring a timely appeal generally renders the IHO's decision final. *See Murphy v. Arlington Cent. Sch. Dist. Bd. of Educ.,* No. 99-CIV9294, 1999 WL 980164, at *3 (S.D.N.Y. Oct.28, 1999), *rev'd on other grounds, Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 126 S.Ct. 2455, 165 L.Ed.2d 526 (2006). Only upon a showing of good cause does the SRO have discretion to excuse a late filing. *See* 8 N.Y.C.R.R. §§ 279.2(b), 279.13.

A claimant who has exhausted the state administrative procedures may seek independent judicial review in the appropriate federal or state court. *See Walczak v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir.1998) (citation and internal quotation marks omitted). However, this independent review "is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). Rather, the court must limit its review to determining whether the state complied with the IDEA's procedures and whether the IEP is "reasonably calculated to enable the child to receive educational benefits." *Id.* at 207. In other words, "once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States." *Id.* at 208.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3163146 (N.D.N.Y.)
**(Cite as: 2009 WL 3163146 (N.D.N.Y.))**

An SRO's decision to dismiss or excuse a party's untimely appeal must be upheld unless it is arbitrary and capricious. *See, e.g., Grenon v. Taconic Hills Cent. Sch. Dist.,* No. 05-CV-1109, 2006 WL 3751450, at *5 (N.D.N.Y. Dec. 19, 2006); *Murphy,* 1999 WL 980164, at *3. Under the arbitrary and capricious standard, a court "must determine whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *State of New York Dep't of Soc. Serv. v. Shalala,* 21 F.3d 485, 492 (2d Cir.1994) (internal citations and quotation marks omitted). Where the issue is one of timeliness, the court must limit its review to the SRO's decision regarding timeliness without probing the substance or merits of the underlying claims. *See Grenon,* 2006 WL 3751450, at *5; *see also Gagliardo v. Arlington Cent. Sch. Dist.,* 373 F.Supp.2d 460, 464-65 (S.D.N.Y.2005) (limiting review to timeliness and remanding to the SRO where timeliness determination was based on an erroneous set of dates).

A party who fails to make a timely appeal to the SRO, absent a showing of good cause, has failed to exhaust the available administrative remedies. *See Murphy,* 1999 WL 980164, at *3 ("[T]he failure to bring a timely appeal in compliance with the relevant regulations should be equated with failure to bring an appeal at all."). And "[f]ailure to exhaust the administrative remedies deprives the court of subject matter jurisdiction." *Cave v. East Meadow Union Free Sch. Dist.,* 514 F.3d 240, 245 (2d Cir.2008); *see also B.D.S. v. Southold Union Free Sch. Dist.,* No. CV-08-1864, 2009 WL 1875942, at *15 (E.D.N.Y. June 24, 2009) ("Where subject matter jurisdiction is lacking, 'dismissal is mandatory.' ") (quoting *Manway Const. Co., Inc. v. Hous. Auth. of City of Hartford,* 711 F.2d 501, 503 (2d Cir.1983)). Therefore, as long as the SRO's finding of untimeliness is not arbitrary and capricious, the court's role is at an end.

**C. IDEA Claims**

***5** The Kellys' claims are barred from review because they failed to exhaust their administrative remedies under the IDEA.[FN7] The Kellys filed their petition three days late on October 6, 2008.[FN8] (*See* Compl. ¶ 50, Dkt. No. 1.) While the SRO had discretionary authority to excuse the late filing upon a showing of good faith, *see* 8 N.Y.C.R.R. § 279.13, he declined to do so. (*See* Def. Ex. D, SRO Decision at 2, Dkt. No. 7:2.) Since the Kellys failed to make a timely appeal to the SRO, they failed to exhaust their administrative remedies. *See Murphy,* 1999 WL 980164, at *3. As a result, the IHO's decision became final. *See* 20 U.S.C. § 1415(i)(1)(A).

> FN7. Alternatively, had the Kellys exhausted their administrative remedies under the IDEA, the claims they have brought on behalf of M .K. would still be subject to dismissal. They may not bring such claims *pro se.* While a "litigant in federal court has a right to act as his or her own counsel," generally, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990). In other words, in federal court, a child may neither appear *pro se, see* FED.R.CIV.P. 17, nor be represented by a non-attorney parent, *see Cheung* at 61. The purpose behind such a prohibition is to protect the rights of minors and to ensure that they receive competent representation. *See Machadio v. Apfel,* 276 F.3d 103, 106 (2d Cir.2002). A non-attorney parent who is asserting claims on behalf of a child must be represented by counsel. *See Wenger v. Canastota Cent. Sch. Dist.,* 146 F.3d 123, 124 (2d Cir.1998) (per curiam) ( *overruled on other grounds, Winkelman ex rel. Winkelman v. Parma City Sch. Dist.,* 550 U.S. 516, 127 S.Ct. 1994, 167 L.Ed.2d 904 (2007)).

> FN8. The IHO mailed a hard copy of his decision on August 25, 2008. (*See* Ex. D,

SRO Decision at 2, Def. Dkt. No. 7:2.) The Kellys had until October 3, 2008 to serve the District with their petition for review pursuant to 8 N.Y.C.R.R. § 279.2(b).

The SRO's decision to dismiss the Kellys' petition for untimeliness was not arbitrary and capricious. *See Shalala,* 21 F.3d at 492. Pursuant to his statutory obligations, the SRO reviewed the Kellys' reasons for delay and explained why these reasons failed to constitute good cause. (*See* Def. Ex. D, SRO Decision at 2-3, Dkt. No. 7:2.) The SRO noted that, in addition to notifying the Kellys of the time requirements, the IHO advised them that directions and sample forms for initiating an appeal were available at the Office of State Review's website. (*See id.* at 2.) Lastly, the SRO, in forming the basis of his decision, outlined relevant case law and administrative decisions that were on-point and accurate. (*See id.* at 3.)

Having concluded that the SRO's determination was not arbitrary and capricious, the court lacks subject matter jurisdiction over the merits of the Kellys' IDEA claims and therefore must dismiss those claims. *See Cave,* 514 F.3d at 245; *see also Grenon,* 2006 WL 3751450, at *4-5.

**D.** *Claims Under the ADA, § 504, § 1983, and § 1985*

The Kellys' claims brought pursuant to the ADA, § 504, § 1983, and § 1985 are also barred from review. The relief the Kellys are seeking under these federal statutes could have been remedied through resolution of their IDEA claims. *See* 20 U.S.C. § 1415(l). The IDEA exhaustion requirement applies to claims brought under other federal statutes if the relief sought is available under the IDEA. *See, e.g., J.S.,* 386 F.3d at 112 (noting that § 504 and § 1983 claims seeking to ensure a FAPE are subject to IDEA's exhaustion requirements); *see also Hope,* 872 F.Supp. at 17 (holding that ADA and § 1983 claims are subject to IDEA's exhaustion requirements). Therefore, the court lacks subject matter jurisdiction over these related claims due to the Kellys' failure to exhaust their administrative remedies under the IDEA. *See Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 483 (2d Cir.2002).

The Kellys additionally seek damages under § 1985. Under 20 U.S.C. § 1415(l), exhaustion is required regarding other claims only where the relief sought is "also available" under the IDEA. However, "monetary damages are not available under the IDEA." *Polera,* 288 F.3d at 486. Nonetheless, where a party seeks to vindicate rights available under the IDEA by bringing a claim under another statute, regardless of whether damages are sought, that party must exhaust the administrative remedies. *See id.* at 488 ("Where ... a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages.").

**\*6** To succeed on a conspiracy count pursuant to § 1985, a party must allege violation or deprivation of an underlying right. *See* 42 U.S.C. § 1985(3); *see also Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979) ("Section 1985(3) provides no substantive rights itself; it merely provides a remedy for violation of the rights it designates."); *Wiggins v. Hitchens,* 853 F.Supp. 505, 511 (D.D.C.1994) ("There can be no recovery under section 1985(3) absent a violation of a substantive federal right."). Here, the substantive and due process rights the Kellys seek to vindicate via § 1985 derive from the IDEA, the ADA, § 504, and New York State Education Law. (*See* Compl. ¶¶ 47, 51, Dkt. No. 1.) Therefore, for the same reasons the court lacks subject matter jurisdiction over the Kellys' claims brought pursuant to the ADA, § 504, and § 1983, it also lacks subject matter jurisdiction over their claim for damages under § 1985(3). *See* 20 U.S.C. § 1415(l); *see also J.S.,* 386 F.3d at 112; *Polera,* 288 F.3d at 483.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

**E.** *Attorneys' Fees*

As part of its motion to dismiss, the District seeks an award of attorneys' fees against the Kellys for allegedly presenting their complaint for an improper purpose, specifically to harass and needlessly increase the District's litigation costs. (*See* Def. Memo. of Law at 1, 14, Dkt. No. 7:3.)

The fee-shifting provisions of the IDEA give the court discretion to award reasonable attorneys' fees to a prevailing state educational agency against a parent "if the parent's complaint or subsequent cause of action was presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." *See* 20 U.S.C. § 1415(i)(3)(B)(i)(III). Essentially, a defendant is entitled to attorneys' fees where a plaintiff brings an action under the IDEA in bad faith. *See Grenon,* 2006 WL 3751450, at *7 (citing *Hiller v. Bd. of Educ. of Brunswick Cent. Sch. Dist.,* 743 F.Supp. 958, 976 (N.D.N.Y.1990)). Under this standard, a plaintiff must act with "malice or bad faith," *Hiller,* 743 F.Supp. at 976, and not simply seek a remedy "zealously," *Grenon,* 2006 WL 3751450, at *7.

There is no showing that the Kellys' claims or arguments were anything but zealous advocacy on their daughter's behalf. There are no signs of bad faith. The District's request for attorneys' fees is denied.

### IV. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that the District's motion to dismiss (Dkt. No. 7) is **GRANTED** for lack of subject matter jurisdiction; and it is further

**ORDERED** that the District's motion for attorneys' fees (Dkt. No. 7) is **DENIED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2009.
Kelly ex rel. M.K. v. Saratoga Springs City School Dist.
Slip Copy, 2009 WL 3163146 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.