**Westlaw Delivery Summary Report for MUNKWITZ,KELLY**

| | |
|---|---|
| Your Search: | name (Scaggs) |
| Date/Time of Request: | Monday, March 1, 2010 15:44 Central |
| Client Identifier: | SED |
| Database: | DCTNY |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 1693 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson Reuters, West and their affiliates.

Page 1

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

H

United States District Court,
E.D. New York.
Steven **SCAGGS**, et al., Plaintiffs,
v.
NEW YORK State DEPARTMENT OF EDUCA-
TION, et al., Defendants.
**No. 06-CV-0799 (JFB)(VVP).**

May 16, 2007.

Stephen L. Drummond, Esq., Drummond and
Crawford, P.C., Valley Stream, NY, for Plaintiffs.

Andrew Cuomo, Attorney General, by Carolyn Gail
Goodwin, Esq., State of New York, Office of the
Attorney General, New York, NY, Sharon N. Ber-
lin, Esq., Lamb & Barnosky, LLP, Melville, New
York, for Defendants.

MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge.

**\*1** Plaintiffs, individual students at Riverhead
Charter School and Edison Schools [FN1]
(collectively, "plaintiffs") bring the present civil
rights action against the New York State Depart-
ment of Education, the New York State Board of
Regents, the University of the State of New York,
the Office for Vocational and Educational Services
for Individuals With Disabilities, Edison Schools,
the Riverhead Charter School, Riverhead Charter
School officials and members of the Riverhead
Charter School Board of Trustees-Steven Cohen,
Stephen Charkow, Susan Cheatum, Kate Liddle,
Arnold Braunskill and George Grigg (collectively,
"defendants").[FN2]

FN1. Although the complaint is brought by
plaintiffs "on behalf of themselves indi-
vidually and on behalf of a class of stu-

dents of the Riverhead Charter School and/
or of Edison Schools similarly situated,"
plaintiffs have not yet moved for class cer-
tification.

FN2. Plaintiffs had originally filed suit
against the above-listed defendants, as well
as thirteen Long Island school districts and
the Florida Retirement Systems. These de-
fendants were voluntarily dismissed from
the case on November 20, 2004.

Defendants New York State Department of Educa-
tion, the New York State Board of Regents, the
University of the State of New York and the Office
for Vocational and Educational Services for Indi-
viduals With Disabilities (collectively, "State de-
fendants") move to dismiss plaintiffs' claims related
to the Individuals With Disabilities Education Act,
20 U.S.C. §§ 1400-1490, pursuant to Fed.R.Civ.P.
12(b)(1), and move to dismiss all claims for failure
to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).
Likewise, defendants Edison Schools, Riverhead
Charter School, Riverhead Charter School officials
and members of the Riverhead Charter School
Board of Trustees (collectively, "School defend-
ants") move to dismiss plaintiffs' claims under
Fed.R.Civ.P. 12(b)(1) and 12(b)(6). For the reasons
that follow, defendants' motions are granted in part
and denied in part.

I. BACKGROUND

A. Facts

The following facts are taken from the amended
complaint and are not findings of fact by the Court,
but rather are assumed to be true for purposes of
deciding this motion and are construed in a light
most favorable to plaintiffs, the non-moving party.

On January 10, 2001, the University of the State of

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

New York issued a provisional charter to Riverhead Charter School ("Riverhead"), allowing it to provide free public education. (Am.Compl.¶ 4.) From January 10, 2001 to the present, Edison Schools owned, operated and supervised Riverhead. (*Id.* ¶ 5.) According to plaintiffs, Riverhead classrooms were overcrowded, and students were not provided with adequate educational services and programs. (*Id.* ¶¶ 22, 25.) Specifically, defendants allegedly failed to identify students with learning disabilities and special educational needs, failed to provide such students with educational programs designed to address these issues, and failed to monitor the students' educational performance. (*Id.* ¶ 25.) Plaintiffs also assert that Riverhead neither provided safe and adequate transportation, nor prevented violent and disruptive behavior among students. (*Id.*) In addition, Riverhead allegedly lacked proper refrigeration, lunches, rodent extermination, certified teachers, books, paper, pens and pencils. (*Id.* ¶ 22 .) Plaintiffs complained about the conditions at Riverhead to the defendants. (*Id.* ¶¶ 23, 27.) However, defendants allegedly did not take action to improve the conditions or to return students to their respective public school districts. (*Id.* ¶¶ 24, 28 .) Since returning to their respective public school districts of their own accord, plaintiffs contend that they are unable to function at the appropriate grade level and now require additional educational services as a result of the substandard education that they received at Riverhead. (*Id.* ¶¶ 29-30.)

### B. Procedural History

**\*2** On August 2, 2004, plaintiffs filed a complaint in the Southern District of New York, alleging that defendants had denied plaintiffs the right to a free public education. On November 2, 2004, defendants Florida Retirement Systems, Riverhead Charter School, Edison Schools and the Riverhead Charter School Board of Trustees moved to dismiss the complaint. On November 8, 2004, the State defendants moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (3) and (6). Plaintiffs submitted an amended complaint on

November 23, 2004.

The amended complaint asserts the following federal causes of action: (1) the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; (2) the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1490; (3) the Education for all Handicapped Children Act ("EHA") FN3; (4) the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-799, and specifically Section 504 of the Rehabilitation Act, 28 U.S.C. § 794; (5) Title IX of the Education Amendment of 1982; (6) Title II of the Americans With Disabilities Act, 42 U.S.C. § 12132; (7) the federal civil rights statutes promulgated under 42 U.S.C. §§ 1981, 1983 & 2000d and Title VI of the Civil Rights Act of 1964; (8) supervisory liability under § 1983; and (9) failure to intercede under § 1983. In addition, plaintiffs bring claims under the New York State Constitution, New York Human Rights Law §§ 290-297 and New York Education Law §§ 3302, 4401. Plaintiffs also assert state claims for intentional and/or negligent infliction of emotional distress and failure to train, supervise, manage and/or control. Plaintiffs seek compensatory and punitive damages, injunctive relief, attorneys' fees and costs.

> FN3. The Education for all Handicapped Children Act of 1975 (Public Law 94-142) [enacted Nov. 29, 1975] was superseded by the IDEA statute in 1990. Upon learning of this fact, plaintiffs discontinued their claims under the Education for all Handicapped Children Act. (Pls.' Opp. Br., at 43 ("[A]s case law revealed that the Education for Individuals With Handicaps Act [sic] became the Individuals with Disabilities Act [sic], Plaintiffs' cause of action pursuant to the former Education for Individuals with Handicaps Act [sic] was discontinued.").)

On January 11, 2005, the parties entered into a stipulation dismissing plaintiffs' claims under (1) the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401, 1415 *et seq.;* (2) Title IX of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

Education Amendment of 1982; (3) the New York State Constitution, Article XI, § 1; (4) New York State Education Law §§ 3302, 4401; and (5) the Individuals With Disabilities in Education Act, 20 U.S.C. § 1415.

On February 11, 2005, the State defendants and the School defendants each moved to dismiss the amended complaint and to transfer venue pursuant to 28 U.S.C. § 1404(a). The Honorable Barbara S. Jones granted defendants' motion to transfer venue to the Eastern District of New York on February 7, 2006. On February 21, 2006, the case was assigned to the undersigned. Oral argument on the instant motions was held on January 17, 2007.

## II. STANDARD OF REVIEW

Defendants' motions to dismiss for want of subject-matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state a claim under Rule 12(b)(6) are governed by the same standard. *See Coveal v. Consumer Home Mortgage, Inc.,* No. 04-CV-4755 (ILG), 2005 U.S. Dist. LEXIS 25346, at *6 (E.D.N.Y. Oct. 21, 2005) (citing *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.), *cert. denied,* 540 U.S. 1012 (2003)). In reviewing such motions, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *Nechis v. Oxford Health Plans, Inc.,* 421 F.3d 96, 100 (2d Cir.2005). Dismissal is warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 242 (2d Cir.2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is " 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 106 (2d Cir.2005) (quoting *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir.2004)).

**\*3** "A court presented with a motion to dismiss under both Fed.R.Civ.P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.' " *Coveal,* 2005 U.S. Dist. LEXIS 25346, at *7 (quoting *Magee v. Nassau Cty. Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998)); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir.1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

## III. DISCUSSION

### A. Defendants' Motions to Dismiss Pursuant to Fed.R.Civ.P.12(b)(1)

Both the State defendants and the School defendants move to dismiss plaintiffs' claims regarding the education of disabled students pursuant to Fed.R.Civ.P. 12(b)(1). Defendants argue that this Court lacks subject-matter jurisdiction over plaintiffs' claims under the Individuals With Disabilities Education Act, the Rehabilitation Act, the Americans With Disabilities Act ("ADA"), and Section 1983, all of which are subject to the exhaustion requirement of IDEA. The Act requires plaintiffs who assert claims relating to the education of disabled children to exhaust all available administrative remedies prior to bringing suit in federal court. 20 U.S.C. § 1415(*l*). In the absence of exhaustion, a federal court may not exercise subject-matter jurisdiction over the action. 20 U.S.C. § 1415(*l*).

### 1. The IDEA statute

The purpose of IDEA is to provide children with disabilities with access to a "free appropriate public education." 20 U.S.C. §§ 1400(c), (d). In passing IDEA, "Congress sought primarily to identify and evaluate handicapped children, and to provide them

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

with access to free public education." *Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley,* 458 U.S. 176, 200 (1982). The primary mechanism of the statute is the design and implementation of an Individualized Education Plan ("IEP") to address each student's particular disabilities. 20 U.S.C. § 1414. The IEP sets forth (1) a statement of the child's present levels of academic achievement and functional performance; (2) a statement of measurable annual goals; (3) a description of how the child's progress toward meeting the annual goals will be measured; (4) a statement of the educational services to be provided; (5) an explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class; (6) a statement of any individual accommodations necessary to measure the child's performance on standardized assessments (or an explanation of why the child cannot participate in the assessments); (7) the projected date for the implementation of services, as well as the anticipated frequency, location, and duration of the services; and (8) a plan for achieving post-secondary school goals and provisions for transitional services. 20 U.S.C. § 1414(d)(1)(A).

## 2. IDEA's Exhaustion Requirement

**\*4** It is well-settled that, prior to bringing a suit in federal court under IDEA, plaintiffs must exhaust all available administrative procedures. 20 U.S.C. § 1415(*l* ) (2006). In the State of New York, these include an impartial hearing and an appeal of the hearing officer's decision to a state review officer. 20 U.S .C. §§ 1415(f), (g); 8 N.Y.C.R.R. § 200.5. Parents may request a hearing to present complaints relating to the "identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). "Failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera v. Bd. of Educ. of the Newburgh Enlarged City Sch. Dist.,* 288 F.3d 478, 483 (2d Cir.2002) (citing *Hope v. Cortines,* 69 F.3d 687, 688 (2d Cir.1995)).

Furthermore, the IDEA statute requires plaintiffs with *any* claims related to the education of disabled children, whether brought under IDEA or another statute (*i.e.,* the ADA), to exhaust the administrative remedies available under IDEA prior to initiating a federal lawsuit. 20 U.S.C. § 1415(*l* ) (2006) ( "Nothing in this title shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part.") (citations omitted); *Polera,* 288 F.3d at 481 ("[P]otential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act)."); *Hope v. Cortines,* 872 F.Supp. 14, 17 (E.D.N.Y), *aff'd,* 69 F .3d 687 (2d Cir.1995) (holding that ADA, Section 1983 and Section 2000d claims are subject to IDEA's exhaustion requirement).

Similarly, IDEA's exhaustion requirement applies despite plaintiffs' claim for damages, which are not available under the statute. *Polera,* 288 F.3d at 487 ("Courts in the Second Circuit have required exhaustion of administrative remedies even where damages were held to be unavailable through the administrative process. In such cases, plaintiffs were not permitted to evade the IDEA's exhaustion requirement merely by tacking on a request for money damages."); *see also Buffolino v. Bd. of Educ. of Sachem Cent. Sch. Dist. at Holbrook,* 729 F.Supp. 240, 247 (E.D.N.Y.1990) ("[I]f the Court were to hold that plaintiffs in this case are excused from exhausting their remedies because adequate relief could not be obtained, plaintiffs could avoid administrative procedures merely by asking for re-

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

lief that administrative authorities could not grant."); " *BD" v. DeBuono*, 130 F.Supp.2d 401, 428 (S.D.N.Y.2000) ( "[P]laintiffs should not be allowed to avoid the administrative requirements of IDEA by claiming only monetary damages or other relief not available under IDEA."). Therefore, despite plaintiffs' claims for damages pursuant to the Rehabilitation Act, Title II of the ADA and state law, they must comport with the requirements of IDEA, which "is intended to remedy precisely the sort of claim" presented here-namely, that state and local authorities failed to provide plaintiffs with appropriate educational services. *Polera*, 288 F.3d at 488. As the gravamen of plaintiffs' action is a claim for relief under IDEA, their request for damages pursuant to other federal statutes and state tort law does not allow them to evade the statute's exhaustion requirement.

### 3. "Futility" Exception to IDEA's Exhaustion Requirement

**\*5** However, the law provides a narrow exception to the exhaustion requirement of IDEA, permitting plaintiffs to bring a federal lawsuit without an administrative hearing in cases where exhaustion would be "futile" because the administrative procedures available do not provide adequate remedies. *Polera*, 288 F.3d at 488; *Heldman v. Sobol*, 962 F.2d 148, 158-59 (2d Cir.1992). Plaintiffs bear the burden of proving that it would have been futile for them to pursue relief through administrative procedures. "The students bear the burden of proof that exhaustion would be futile." *J.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir .2004), *cert. denied*, 544 U.S. 968 (2005) (citing *Polera*, 288 F.3d at 488 n. 8 (relying upon the Supreme Court's holding in *Honig v. Doe*, 484 U.S. 305, 327 (1988), in concluding that under the EHA, the burden of demonstrating futility rests with the party seeking to avoid the exhaustion requirement).

"The primary reason for an exhaustion requirement is to utilize the expertise of administrators" who are familiar with resolving issues relating to the educa-

tion of disabled students. *SJB v. N.Y. City Dep't of Educ.*, No. 03-CV-6653 (NRB), 2004 U.S. Dist. LEXIS 13227, at \*14 (S.D.N.Y. Jul. 14, 2004) (citing *Polera*, 288 F.3d at 487 ("The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrator's expertise in the area and promptly resolve grievances.")) and *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 791 (2d Cir.2002). Even in instances where an administrative hearing and appeal are unsuccessful in resolving a dispute, such procedures "will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court ." *J.S.*, 386 F.3d at 112-13 (citing *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir.1981)). In determining whether plaintiffs should be subject to the exhaustion requirement, the Second Circuit instructs courts "to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.S.*, 386 F.3d at 113 (citing *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir.1992)).

On the basis of the complaint, the Court must determine whether plaintiffs' claims meet either of two potential bases for "futility" that would excuse them from IDEA's exhaustion requirement: (1) that defendants "failed to implement services that were specified or otherwise clearly stated in an IEP," *Polera*, 288 F.3d at 489, or (2) that the problems alleged are "systemic violations" that cannot be addressed by the available administrative procedures. *J.S.*, 386 F.3d at 113 ("[T]his Court has previously excused exhaustion of administrative remedies in cases that included allegations of systemic violations.") (collecting cases).

#### a. Failure to Implement

**\*6** Plaintiffs argue that their claims fall under the "failure to implement" exception to the exhaustion requirement. *Polera*, 288 F.3d at 489; *see also SJB*,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

2004 U.S. Dist. LEXIS 13227, at * 16 ("Where an IEP-related claim is based on a district's failure to implement services already spelled out in an IEP, exhaustion is excused.") (citing *Polera,* 288 F.3d at 489, and *Heldman,* 962 F.2d at 158 n. 11); *Michaels v. Mills,* 02-CV-0555E(F), 2004 U.S. Dist. LEXIS 6155, at *13 (W.D.N.Y. Feb. 14, 2004) ("[T]he 'legislative history of the IDEA suggests an exhaustion exception for situations concerning the *implementation* of an IEP, as opposed to the *contents* of an IEP.' ") (emphasis in original) (quoting *Joseph M. v. S.E. Delco Sch. Dist.,* No. 99-CV-4645, 2001 U.S. Dist. LEXIS 2994, at *25 (E.D.Pa. Mar. 19, 2001)). In evaluating claims of futility on the basis of "failure to implement," the Second Circuit has advised that

[A] court must closely examine a plaintiff's claims before concluding that they involve nothing more than "implementation" of services already spelled out in an IEP. Here, [plaintiff's] assertion that her claim relates solely to implementation does not make it so.... Polera's claim unavoidably encompasses both a failure to provide services and a significant underlying failure to specify what services were to be provided.

*Polera,* 288 F.3d at 489. In the instant case, plaintiffs allege that Riverhead did not provide the services and accommodations specified in the IEPs of ten individual plaintiffs. For instance, the amended complaint states that plaintiff "Sean Duford ... is a child/student with learning disabilities/special educational needs requiring an individualized education program/special educational services including, but not limited to, speech services" and avers that "Defendants did not implement/provide Plaintiff Sean Duford with the required, necessary and/or proper educational services, plans and/or programs, including, but not limited to, an individualized educational program including speech services." (Am.Compl.¶¶ 47-48.) Based upon these allegations, it appears that, at least with regard to certain plaintiffs, defendants may not have provided the students with any IEP-plan what-

soever, rather than declining to implement services "specified" or "clearly stated" in IEPs that had already been created for the students. Therefore, the Court finds that, even construing the facts most favorably to plaintiffs, they have failed to meet their burden of demonstrating that, on the basis that their claims involve *only* a failure to implement services set forth in IEP plans, exhaustion of administrative remedies would be futile in this case. Thus, plaintiffs are not excused from the exhaustion requirement on this ground.

### b. Systemic Violations

Plaintiffs argue, in the alternative, that they should be excused from the exhaustion requirement on the basis that their claims allege "systemic violations" of IDEA. The Second Circuit has found systemic violations where the complaint alleges "wrongdoing that is inherent in the program itself and not directed at any individual child." *J.S.,* 386 F.3d at 113. Specifically, where a school completely fails to implement the procedures set forth in IDEA, systemic violations that cannot be cured by administrative procedures are present. *See, e.g., Handberry v. Thompson,* 446 F .3d 335, 344 (2d Cir.2006) (declining to apply exhaustion requirement where "individual administrative remedies would be insufficient to address the defendants' failure to provide the services required by the IDEA.") (citing *J.S.,* 386 F.3d at 112); *J.S.,* 386 F.3d at 114 (describing systemic violations as those which "could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process"); *Taylor,* 313 F.3d at 789 (excusing exhaustion requirement where " 'it is improbable that adequate relief can be obtained by pursuing administrative remedies (e.g., the hearing officer lacks the authority to grant the relief sought)' ") (quoting *Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987)); *J.G. v. Bd. of Educ. of the Rochester City Sch.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

*Dist.,* 830 F.2d 444, 446-47 (2d Cir.1987) ("Exhaustion of administrative remedies is not required if adequate remedies are not reasonably available.... The same is true where the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.") (citing *Jose P. v. Ambach,* 669 F.2d 865, 868 (2d Cir.1982), *McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill.,* 373 U.S. 668, 674-75 (1963), *Vander Malle v. Ambach,* 673 F.2d 49, 52 (2d Cir.1982) and *Riley,* 668 F.2d at 640-41); *see also Heldman,* 962 F.2d at 159 (2d Cir.1992) (declining to apply exhaustion requirement where plaintiffs challenged New York State's procedures for the appointment of hearing officers: "The policies underlying the exhaustion requirement do not come into play, however, when pursuit of administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury"); *Tirozzi,* 832 F.2d at 757 (finding systemic violation exception to EHA's exhaustion requirement where plaintiffs objected to Connecticut's failure to provide adequate services and to establish a system for responding to parental complaints); *Michaels,* 2004 U.S. Dist. LEXIS 6155, at *19 n. 30 (" 'The rationale behind [the exhaustion] exception is that while the administrative hearing officers have the authority to enforce established regulations, policies and procedures, they generally do not have the authority to set new policies or to alter existing ones. Therefore, requiring a parent to exhaust his administrative remedies when he is challenging a generally applicable policy or procedure would be futile.' ") (quoting *King v. Pine Plains Cent. Sch. Dist.,* 918 F.Supp. 772, 781 (S.D.N.Y.1996)).

**\*7** In *J.S. v. Attica Central Schools,* the Second Circuit held that systemic violations were present where six students brought a complaint styled as a class-action, challenging a school district's "total failure to prepare and implement Individualized Education Programs," and the district's dereliction of its duties: "to notify parents of meetings as required by law," "to provide parents with legally re-

quired progress reports," "to provide appropriate training to school staff," "to perform timely evaluations and reevaluations of disabled children," "to provide parents with required procedural safeguards regarding identification, evaluation, and accommodation of otherwise disabled children," and "to perform legally required responsibilities in a timely manner, including providing and implementing transition plans, transitional support services, assistive technology services, and declassification services for children with disabilities." 386 F.3d at 115. Similarly, in *Handberry v. Thompson,* the Second Circuit relied upon its decision in *J.S.* in holding that plaintiffs were excused from exhausting their administrative remedies under IDEA based upon the futility exception for systemic cases where the complaint alleged that New York City jails had failed to provide *any* educational services, including special educational services, to prison inmates. 446 F.3d at 343-44 (citing *J.S.,* 386 F.3d at 114-15). The Second Circuit noted that application of the exhaustion requirement was not appropriate because "[t]he purposes of exhaustion-to allow[ ] for the exercise of discretion and educational expertise by state and local agencies[ ]-are unavailing where the alleged issue is the absence of any services whatsoever." *Handberry,* 446 F.3d at 344 (quotation marks and citations omitted); *see also J.G.,* 830 F.2d at 446-47 (finding systemic violations under the EHA where defendants had failed to evaluate and classify disabled students properly, did not inform parents about educational testing or their procedural rights with regard to special education placements, and neglected to place students in school pending review of their evaluations or in special education programs following their evaluations); *Jose P.,* 669 F.2d at 867, 869-870 (declining to apply exhaustion requirement where plaintiffs challenged New York State and City education authorities' extensive delays in evaluating and placing disabled students in appropriate programs).

In these cases, the Second Circuit has consistently distinguished the problem of inadequate education-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

al programs and facilities, which constitute system-
ic violations to be addressed by the federal courts,
from technical questions of how to define and treat
individual students' learning disabilities, which are
best addressed by administrators. *See, e.g., Jose P.,
669 F.2d at 870* (acknowledging "the need for util-
izing administrative expertise where the questions
were difficult and technical," but finding that
"[n]either of these policies apply here ... The ques-
tions at issue are not technical, but concern the
numbers of children on waiting lists, the availabil-
ity of programs, and the adequacy of physical facil-
ities"). The instant case presents claims similar to
those set forth in *J.S., Handberry, J.G.,* and *Jose
P.;* the amended complaint makes broad allegations
of failure on the part of defendants to evaluate, im-
plement, and monitor necessary services for dis-
abled students at Riverhead. Specifically, plaintiffs
allege that Riverhead did not comply with the re-
quirements of students' IEP and § 504 plans, did not
provide such plans to students who needed them,
and, as in *Jose P.,* subjected plaintiffs to substand-
ard physical facilities. (Am. Compl. at ¶¶ 17,
20-22.) In the amended complaint, plaintiffs set
forth their extensive claims in detail:

**\*8** [Defendants] denied and deprived Plaintiffs and
those similarly situated of a free public education
in that they failed to identify children/students
such as Plaintiffs with learning disabilities and/or
special educational needs; failed to identify the
specific learning disability and/or special educa-
tional needs of Plaintiffs; failed to implement
and/or provide Plaintiffs and those similarly situ-
ated with the special and/or individual education
services/programs/plans needed and/or required;
failed to monitor Plaintiffs' progression and/or re-
gression in their educational performance; failed
to change, modify, add and/or supplement
Plaintiffs' educational services/programs/plans;
did not provide Plaintiffs with certified teachers
and/or properly trained teachers and/or school
personnel; did not provide Plaintiffs with an ad-
equate and/or requisite learning environment in-
cluding, but not limited to: books, pens, pencils,

paper, erasers, chalkboards, homework/study as-
signments and/or materials, playground, gymnas-
ium, cafeteria, library, proper and/or adequate re-
frigeration, proper and/or adequate security,
proper and/or adequate discipline; a school envir-
onment free from violence and/or disruptive be-
havior/acts and/or a school environment ad-
equately and appropriately staffed and trained to
address violence and/or disruptive behavior;
proper and/or adequate transportation, proper
and/or adequate security for transportation, a
school environment free from mice, rats, insects,
roaches and other rodents, proper and/or adequate
classroom accommodations including, but not
limited to, space, seating, light, air, ventilation,
heating and cooling system; provided improper
teacher to student ratio; and created maintained
and fostered overcrowded classrooms.

(Am. Compl. at ¶ 25.) Plaintiffs' allegations of
complete inadequacy of the educational environ-
ment at Riverhead, arising from a total lack of pro-
grams designed to address the needs of disabled
students, the decrepit physical plant and a total ab-
sence of basic services and supplies, constitute al-
legations of systemic violations that, if true, cannot
be remedied by individual administrative hearings.
*See, e.g., J.S., 386 F.3d at 114-15.*

Plaintiffs are therefore excused from the exhaustion
requirement of IDEA, and this Court may exercise
subject-matter jurisdiction over plaintiffs' claims
under IDEA, the ADA, the Rehabilitation Act, Sec-
tion 1983 and Section 1981.

**B. Defendants' Motions to Dismiss Pursuant to
Fed.R.Civ.P. 12(b)(6)**

**1. Dismissal of IDEA Claim by Stipulation**

On January 11, 2005, the parties entered into a stip-
ulation dismissing with prejudice "any claim under
20 U.S.C. § 1415 of the Individuals with Disabilit-
ies in Education Act." (Jan. 11, 2005 Stipulation, at
2.) State defendants argue that plaintiffs can no

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

longer state an IDEA claim because Section 1415 provides the only private right of action under the statute. However, plaintiffs contend that they did not discontinue their IDEA claim by stipulation. FN4 (Pls.' Br., at 43.)

> FN4. 20 U.S.C. § 1415(i)(2)(A) provides that:
>
>> Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to an appeal under subsection (g), and any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.

**\*9** Section 1415 provides the only explicit private right of action under IDEA.FN5 20 U.S.C. § 1415(i)(2)(A); *see also County of Westchester v. New York,* 286 F.3d 150, 152 (2d Cir.2002) (declining to find a separate private right of action in favor of a county or educational agency where "Congress expressly provided a private right of action in favor of certain groups, specifically, any party aggrieved by particular findings or a decision rendered under subsection 1415") (citing *Transam. Mort. Advisors, Inc. v. Lewis,* 444 U.S. 11, 20 (1979)* ("In view of these express provisions for enforcing the duties imposed ..., it is highly improbable that 'Congress absentmindedly forgot to mention an intended private action.' ") (quoting *Cannon v. Univ. of Chicago,* 441 U.S. 677, 741 (1979) (Powell, J., dissenting)) and *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers,* 414 U.S. 453, 458 (1974) ("When legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.")). In the absence of any support for the notion that another section of the

IDEA statute permits plaintiffs to bring the instant claims or that an implicit private right of action is available under the Act, the Court finds that any IDEA claims must be brought pursuant to Section 1415. Therefore, the Court finds that plaintiffs' cause of action pursuant to IDEA, 20 U.S.C. § 1415, has been withdrawn by stipulation.

> FN5. At oral argument, plaintiffs' counsel maintained that plaintiffs may maintain an IDEA cause of action under other sections of the statute.

### 2. Statute of Limitations

Defendants argue that, even if plaintiffs' claims under the ADA, the Rehabilitation Act, Section 1981 and Section 1983 are not subject to the exhaustion requirement, such claims are barred by the applicable statutes of limitations. The complaint in this action was initially filed on August 2, 2004. Plaintiffs allege that defendants' actionable conduct first arose on January 10, 2001, upon the issuance of a charter to defendant Riverhead. (Am. Compl. at ¶ 17.)

With regard to plaintiffs' claims brought under Section 1981, such claims are subject to the federal four-year statute of limitations set forth in 28 U.S.C. § 1658.FN6 *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382-83 (2004) (applying four-year statute of limitations to claims arising under Section 1981 as amended by the Civil Rights Act of 1991, which provides that "for purposes of this section, the term, 'make and enforce contracts' includes the making, performance, modification, and termination of all benefits, privileges, and conditions of the contractual relationship"); *see also Fernandez v. M & L Milevoi Mgmt.,* 357 F.Supp.2d 644, 650-51 (E.D.N.Y.2005) (applying *Donnelly* to pending Section 1981 case). Therefore, the Court shall apply the federal four-year statute of limitations to plaintiffs' Section 1981 claims. Accordingly, plaintiffs' Section 1981 claims are timely. FN7

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

FN6. 28 U.S.C. § 1658 provides that: "Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section [enacted Dec. 1, 1990] may not be commenced later than 4 years after the cause of action accrues."

FN7. However, as noted *infra,* such claims must be dismissed for failure to state a claim.

In addition, "Title II of the ADA became effective on January 26, 1992 [,][t]hus, arguably section 1658 might apply and one Circuit has suggested this possibility." *Duprey v. Conn. DMV,* 191 F.R.D. 329, 341 (D.Conn.2000) (declining to apply four-year statute of limitations to claims under Title II of the ADA and applying Connecticut's three-year statute of limitations "in light of the well-established precedent in this Circuit that has repeatedly upheld application of Connecticut's three-year statute of limitations to federal civil rights cases") (rejecting reasoning of *Holmes v. Texas A & M Univ.,* 145 F.3d 681, 686 (5th Cir.1998) (applying four-year statute of limitations to ADA claims pursuant to Section 1658)). However, this Court agrees with the reasoning of *Duprey* in holding that New York's three-year statute of limitations, rather than the federal four-year statute of limitations, should apply to plaintiffs' ADA claims. *See also Smith v. Masterson,* No. 05-CV-2897 (RWS), 2006 U.S. Dist. LEXIS 70868, at *26-27 (S.D.N.Y. Sept. 29, 2006) (applying three-year statute of limitations to ADA claims) (citing *Morse v. Univ. of Vt .,* 973 F.2d 122, 127 (2d Cir.1992)).

**\*10** In determining the timeliness of claims under statutes brought *prior* to enactment of Section 1658, federal courts generally apply the forum state's statute of limitations for personal injury claims, which is three years in the State of New York.FN8 *Pearl v. City of Long Beach,* 296 F.3d 76, 79 (2d Cir.2002) (Section 1983), *cert. denied,* 538 U.S. 922 (2003); M.D., 334 F.3d at 224 (citing *Morse,* 973 F.2d at 127) (Rehabilitation Act). Generally,

the statute of limitations begins to run at the time that a plaintiff learns or has reason to learn of the injuries that form the basis for his claim. *M.D.,* 334 F.3d at 221 (quoting *Leon v. Murphy,* 988 F.2d 303, 309 (2d Cir.1993)). Within the Second Circuit, this rule has been held to apply to IDEA-related claims. *Id.; see, e.g., SJB,* 2004 U.S. Dist. LEXIS, at * 18-* 19. As the complaint in this action was filed on August 2, 2004, all non-Section 1981 claims accruing prior to August 2, 2001, would ordinarily be time-barred. Plaintiffs argue that they are entitled to an exception to the statute of limitations under the continuing violation doctrine, as they assert that defendants' acts constitute "continuing violations" that began on January 10, 2001, and continue to the present day. (Pls.' Br., at 40-41).

FN8. As plaintiffs' IDEA claim has been withdrawn by stipulation, the Court need not address whether such a claim would be barred by the statute of limitations. However, the Court finds that, even if such a claim were to proceed, or if plaintiffs' other IDEA-related claims were subject to such a statute of limitations, the applicable period is three years.

In *M.D. v. Southington Bd. of Educ.,* the Second Circuit held that in the case of the IDEA statute, courts must apply the "most appropriate or analogous state statute of limitations." 334 F.3d 217, 221-22 (2d Cir.2003) (quoting *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660 (1987)) (additional citations omitted); *see also Green v. City of New York,* 438 F.Supp.2d 111, 124-25 (E.D.N.Y.2006) ("Where, as here, a statute is silent as to statute of limitations, and was enacted prior to December 1, 1990, the court applies 'the state law of limitations governing an analogous cause of action.'") (footnote omitted). In this instance, the relevant statute is New York Education Law, Section 4404, which institutes the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

IDEA statute in New York State. N.Y. Educ. Law § 4404. Under the statute, parents of disabled children may request an impartial due process hearing within two years of an alleged violation relating to the provision of a free appropriate public education. N .Y. Educ. Law § 4404(a) (2006). Following a hearing, parents of disabled children may file a complaint in a federal district court challenging a state review officer's review of an impartial hearing decision within four months. Defendants argue that the four-month statute of limitations set forth in Section 4404(a) should apply to the instant case. This approach was upheld by the Second Circuit in *Adler v. Educ. Dep't of N.Y.,* where the court held that the interest of having the needs of disabled children addressed promptly warranted application of the shorter statute of limitations applied to review of Article 78 administrative proceedings. 760 F.2d 4543, 455-60 (2d Cir.1985) ("[I]n view of the urgent need for prompt resolution of questions involving the education of handicapped children it is expected that all hearings and reviews conducted pursuant to these provisions will be commenced and disposed of as quickly as practicable consistent with fair consideration of the issues involved.") (citation omitted).

However, by contrast to *Adler,* this case does not come to the court following an administrative hearing or appeal. *See C. v.. Plainfield Bd. of Educ.,* 382 F.Supp.2d 347, 349 n. 1 (D.Conn.2005) ("Subsequent court decisions ... have limited *Alder's* holding to appeals from administrative rulings, and have applied a three year statute of limitations to attorney's fees petitions."); B.D., 130 F.Supp.2d at 424 ("*Adler* does not apply

where plaintiffs are not appealing the findings of an administrative hearing or subsequent reviews of that hearing."). Furthermore, while *Adler* involved a single child, this case addresses numerous systemic violations. The difficulty of aggregating and consolidating the concerns of several students and parents into a single federal complaint could require well over the four months allotted to a single student in possession of an extensive administrative record. In light of these concerns, this Court deems New York's three-year statute of limitations for personal injury actions to control in this case. *See Green,* 438 F.Supp.2d at 124-25 (applying New York's three-year personal injury statute of limitations to parents' IDEA claims); B.D., 130 F.Supp.2d at 423-24 (rejecting IDEA's four-month statute of limitations in favor of three-year statute of limitations for personal injury actions where systemic violations were alleged); *Robert D. v. Sobel,* 688 F.Supp. 861, 864 (S.D.N.Y.1988) (applying three-year statute of limitations to IDEA action for attorney's fees); *Plainfield Bd. of Educ.,* 382 F.Supp.2d at 349 n. 1 (noting that district courts within the Second Circuit have applied a three-year statute of limitations to attorney's fees petitions in IDEA cases).

In this Circuit, the continuing-violation doctrine is "disfavored" and "is 'applied only upon a showing of compelling circumstances.' " *Remigio v. Kelly,* No. 04-CV-1877 (JGK)(MHD), 2005 U.S. Dist. LEXIS 16789, at *25-*26 (S.D.N.Y. Aug. 12, 2005) (quoting *Nakis v. Potter,* 01-CV-10047 (HBP), 2004 U.S. Dist. LEXIS 25250, at *30-*33 (S.D.N.Y. Dec. 15, 2004) (collecting cases)). For example, in *SJB,* although the district court excused plaintiffs from IDEA's exhaustion requirement, it declined to apply the continuing violation doctrine

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

to the alleged violations of plaintiffs' education rights. *SJB,* 2004 U.S. Dist. LEXIS 13227, at *20-*21 (holding that "defendant's alleged failures to implement different IEPs from different years were each discrete, actionable offenses"); *see also Vandenberg v. Appleton Area Sch. Dist.,* 252 F.Supp.2d 786, 789-93 (E.D.Wis.2003) (declining to apply continuing violation doctrine to IDEA claims); *but see Jeffrey Y. v. St. Marys Area Sch. Dist.,* 967 F.Supp. 852, 855-56 (W.D.Pa.1997) (applying continuing violation doctrine to IDEA claims); *Hammond v. District of Columbia,* No. 99-CV-1723 (GK), 2001 WL 34360429, at *4-*6 (D.D.C. Mar. 1, 2001) (same). In the absence of case law within this Circuit applying the continuing violation doctrine to IDEA claims, this Court declines to do so in this case. Therefore, plaintiffs' non-Section 1981 claims accruing between January 10, 2001 and August 4, 2001 are time-barred. However, the complaint does allege that defendants' violations occurred until the filing of the amended complaint in August 2004. Therefore, although the "continuing violation" doctrine does not save the pre-August 2001 conduct, the alleged failure to prepare and to provide IEPs, as well as other requisite educational services, during the period between August 4, 2001 and the filing of the amended complaint in August 2004, are discrete, actionable offenses that are not time-barred. Thus, the claims with respect to the allegations of unlawful conduct within the applicable statutes of limitations are timely.

### 3. Section 1981 and Title VI Claims

**\*11** Section 1981 provides in relevant part that "[a]ll persons within the jurisdiction of the United States shall have the same right ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981 (2006). The statute's provisions apply to both private and state actors. *Yusuf v. Vassar Coll.,* 35 F.3d 709, 714 (2d Cir.1994) (citations omitted). To establish a Section 1981 claim, a

plaintiff must show (1) that he or she is a member of a racial minority; (2) an intent to discriminate on the basis of race by defendant; and (3) that the discrimination concerned one or more of the activities enumerated in section 1981. *Lauture v. IBM,* 216 F.3d 258, 261 (2d Cir.2000). " 'Essential to an action under section 1981 are allegations that the defendants' acts were purposefully discriminatory and racially motivated.' " *Odom v. Columbia Univ.,* 906 F.Supp. 188, 194 (S.D.N.Y.1995) (quoting *Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988)). The plaintiff must "specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf,* 35 F.3d at 713.

Similarly, Title VI of the Civil Rights Act of 1964 prohibits programs that receive federal funding from engaging in intentional discrimination on the basis of race.[FN9] 42 U.S.C. § 2000d (2006). To establish a Title VI claim, a plaintiff must show: (1) that the defendant discriminated against him on the basis of race, (2) that the discrimination was intentional, and (3) that the discrimination was a "substantial" or "motivating factor" for the defendant's actions. *Tolbert v. Queens Coll.,* 242 F.3d 58, 69 (2d Cir.2001); *Grimes v. Sobol,* 832 F.Supp. 704, 709 n. 6 (S.D.N.Y.1993) (holding that failure to allege intentional discrimination warrants dismissal of Title VI claim) (citing *Fulani v. League of Women Voters Educ. Fund,* 684 F.Supp. 1185, 1193 (S.D.N.Y.1988), *aff'd,* 882 F.2d 621 (2d Cir.1989).

> FN9. Title VI provides: "[n]o person in the United States shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

The Supreme Court has held that, when confronted with a Rule 12(b)(6) motion to dismiss, courts must evaluate complaints of discrimination under the standard set forth in Fed.R.Civ.P. 8, which requires

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

that pleadings present "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002) (holding that plaintiffs met Fed.R.Civ.P. 8(a)'s simplified notice pleading standard where the complaint gave notice of the claims to be alleged, detailed the events underlying the claims, provided relevant dates, and included the ages and nationalities of some of the relevant persons involved). "[W]hile the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice ." *Amron v. Morgan Stanley Inv. Advisors, Inc.,* 464 F.3d 338, 344 (2d Cir.2006) (quoting *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996)). A complaint falls short of meeting the Rule 8 standard where, as in this case, it "fails to incorporate any factual allegations that would indicate how his race, gender, age, or national origin played a role" in the alleged actions against plaintiff. *Valle v. Bally Total Fitness,* No. 01-CV-11614 (RCC)(KNF), 2003 U.S. Dist. LEXIS 17093, at *7-*8 (S.D.N.Y. Sept. 30, 2003) (citing *Swierkiewicz,* 534 U.S. at 513). Ultimately, " 'a plaintiff must allege, as the Supreme Court has held, those facts *necessary* to a finding of liability ... [and] a plaintiff's allegations, accepted as true, must be sufficient to establish liability.' " *Amron,* 464 F.3d at 344 (emphasis in original); *see also Chesney v. Valley Stream Union Free Sch. Dist. No. 24,* No. 05-CV-5106 (DRH)(ETB), 2007 U.S. Dist. LEXIS 31644, at *7 (E.D.N.Y. Apr. 30, 2007) (quoting *Amron,* 464 F.3d at 344).

**\*12** With regard to both the Section 1981 and Title VI claims, plaintiffs fail to establish that they were intentionally discriminated against by defendants on the basis of race. Plaintiffs' allegations consist merely of the fact that *some* of the students listed within the complaint are members of racial minority groups and were deprived of a free public education. (Am.Compl. ¶¶ 274-76). According to the complaint, defendants did not treat minority plaintiffs in the same manner as similarly situated white children. (*Id.* ¶ 277.) However, plaintiffs do not articulate the basis for their claims. Specifically, the amended complaint does not set forth how

minority plaintiffs were treated differently from non-minority children attending Riverhead. In fact, the complaint belies the notion that minority and non-minority children were treated differently by listing the same exact claims for both minority and non-minority student plaintiffs. Such bare and conflicting allegations, without any facts in support, are insufficient to state a claim for intentional discrimination. Under the standard set forth in *Swierkiewicz* and *Amron,* the Court finds that liability for intentional racial discrimination could not be established on the basis of plaintiffs' amended complaint; therefore, plaintiffs' claims under Section 1981 and Title VI are dismissed.[FN10]

> **FN10.** However, the Court will grant leave to amend this claim pursuant to Fed.R.Civ.P. 15(a), in order to afford plaintiffs the opportunity to correct this pleading defect, if possible.

### 4. Section 1983 Claims

To state a claim for relief under Section 1983, a plaintiff must allege: (1) the deprivation of any rights, privileges or immunities secured by the Constitution and federal law, (2) by a person acting under the color of state law. 42 U.S.C. § 1983. Section 1983 does not itself provide substantive rights, but in fact offers "a method for vindicating federal rights elsewhere conferred." *Patterson v.. County of Oneida,* 375 F.3d 206, 225 (2d Cir.2004) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979)); *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993) (" Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.") (citing *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985)). Pursuant to Section 1983, plaintiffs allege claims under the ADA, the Rehabilitation Act, the Equal Protection Clause, as well as claims for supervisory liability and failure to intercede.

As a threshold matter, the School defendants con-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

tend (1) that defendant Edison Schools ("Edison") is not a state actor within the meaning of § 1983, and (2) that plaintiffs have failed to plead a proper *Monell* claim against defendant Riverhead and its agents. (School Defs.' Br., at 6-7.)

According to defendants, Edison is a private entity that "operates as a management company for educational institutions, including charter schools such as [Riverhead]." (Defs.' Br., at 6.) "A plaintiff asserting a claim for violation of his constitutional rights under § 1983 must demonstrate that the challenged conduct constituted state action." *Prowisor v. Bon-Ton, Inc.,* No. 06-CV-2213, 2007 U.S.App. LEXIS 9661, at *3-4 (2d Cir. Apr. 26, 2007) (summary order) (citing *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003) and *Shirley v. State Nat'l Bank of Conn.,* 493 F.2d 739, 741 (2d Cir.1974) ("The 'under color of state law' provision in section 1983 is equivalent to the state action requirement of the Fourteenth Amendment.")). "It is well-settled that conduct by a private entity constitutes state action [for purposes of Section 1983] only when 'there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself.' " *Tancredi v. Metro. Life Ins. Co.,* 378 F.3d 220, 229 (2d Cir.2004) (quoting *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 351 (1974)). Plaintiffs contend that, as compensation for operating Riverhead, Edison receives a portion of the state funding provided to Riverhead to implement IEP plans. (Pls.' Br., at 22.) According to plaintiffs, because Edison is obligated "to perform a public function in providing a free appropriate public education, and in receiving state/public funds for same, is not a private entity." (*Id.*)

**\*13** In determining whether a party is a state actor for purposes of Section 1983, the Supreme Court has held that "[t]he ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?' "

*Rendell-Baker v. Kohn,* 457 U.S. 830, 838 (1982) (holding that discharge of teacher by school for troubled children funded by the state and nominally overseen by state agencies was not a state action under Section 1983) (quoting *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982)). Factors to be considered include receipt of state funding, the extent of state regulation, and whether the entity performs a function that has been " 'traditionally the *exclusive* prerogative of the State.' " *Id., at 842* (emphasis in original) (quoting *Jackson,* 419 U.S. at 353); *see also West v. Atkins,* 487 U.S. 42, 56 n. 14 (1988) (holding that delegation of state responsibilities to private contractors to provide prisoners with medical care did not deprive the state's prisoners of the means to vindicate their Eighth Amendment rights, and agreeing with the dissent issued by the Court of Appeals below: "[I]f this were the basis for determining § 1983 liability, 'the state will be free to contract out all services which it is constitutionally obligated to provide and leave its citizens with no means for vindication of those rights, whose protection has been delegated to 'private' actors, when they have been denied") (quoting *West v. Atkins,* 815 F.2d 993, 998 (4th Cir.1987) (Winters, J., dissenting)). By contrast to *Rendell-Baker,* in this instance, the alleged claims concern not an employment action with regard to a single teacher, in which it may fairly be said that the state could be only minimally or tangentially involved; rather, the claims relate to the alleged total inadequacy of a school to provide free public education to its students while receiving state funding, being bound to state educational standards and purporting to offer the same educational services and facilities as any other public school. Under these circumstances, the Court agrees with the district courts that have held, since *Rendell-Baker,* that claims addressing the nature and quality of education received at charter schools may be properly brought against such schools and their management companies under Section 1983. *See, e.g., Irene B. v. Phila. Acad. Charter Sch.,* No. 02-1716, 2003 U.S. Dist. LEXIS 3020, at *38-39 (E.D.Pa. Jan. 29, 2003) (holding charter school to be state actor with-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

in meaning of Section 1983); *Riester v. Riverside Cmty. Sch.,* 257 F.Supp.2d 968, 972 (S.D.Ohio 2002) (holding that charter and community schools are state actors: "Under the public function test, Defendants are state actors because they provide a traditional state function-in that they provide free, public education to Ohio students.... [F]ree, public education, whether provided by public or private actors, is an historical, exclusive, and traditional state function") (citing *Jones v. SABIS Educ. Sys.,* 52 F.Supp.2d 868, 876 (N.D.Ill.1999) (deeming charter school to be a "governmental body") and *Daughtery v. Vanguard Charter Sch. Acad .,* 116 F.Supp.2d 897 (W.D.Mich.2000) (treating both charter school and private corporation operating such school as state actors for constitutional purposes)) (additional citations omitted). Therefore, Edison, which is charged with oversight and management functions with regard to Riverhead, may properly be viewed as having engaged in state action, despite being a private corporation, where it allegedly failed to provide Riverhead students with adequate special education programs and safe physical conditions.

**\*14** School defendants also contend that plaintiffs have failed to plead a proper *Monell* claim against Riverhead. Under *Monell,* a municipal entity may only be held liable where the entity itself commits a wrong; "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978). In order to support liability under *Monell,* a plaintiff must "show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson,* 375 F.3d at 226 (citing *Jett v. Dallas Indep. Sch. Dist.,* 491 U.S. 701, 733-36 (1989), and *Monell,* 436 U.S. at 692-94). "The policy or custom need not be memorialized in a specific rule or regulation." *Kern v. City of Rochester,* 93 F.3d 38, 44 (2d Cir.1996) (citing *Sorlucco v. N.Y. City Police Dep't,* 971 F.2d 864, 870 (2d Cir.1992)). A policy, custom, or practice of the municipal entity may be inferred where " 'the municipality so failed to train its employees as to display a deliberate indifference

to the constitutional rights of those within its jurisdiction.' " *Patterson,* 375 F.3d at 226 (quoting *Kern,* 93 F.3d at 44). "For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under *Monell.* " *Booker v. Bd. of Educ.,* 238 F.Supp.2d 469, 475 (N.D.N.Y.2002) (citing *Monell,* 436 U.S. at 696-97); *see also Irene P.,* 2003 U.S. Dist. LEXIS 3020, at *30-32 (treating charter school as municipal entity for *Monell* purposes). Plaintiffs contend that the complaint sufficiently alleges (1) a pattern of unconstitutional conduct causing plaintiffs to be deprived of their right to a free appropriate public education; and (2) deliberate indifference by Riverhead in failing to intercede, train and supervise their employees in order to protect plaintiffs' rights. (Pls.' Br., 28-29 .) The Court agrees with plaintiffs; at this early stage in the litigation, plaintiffs need not prove that they would succeed on their claim of *Monell* liability, but must merely show that they may be able to prove a set of facts in support of such claim which would entitle them to relief. Based upon plaintiffs' allegations of school-wide failure to provide plaintiffs with necessary educational programs and services, they have sufficiently pled a *Monell* claim against Riverhead for this claim to withstand a motion to dismiss.

With regard to the individual Riverhead defendants, to the extent that they are being sued in their official capacities, the claims against them are duplicative of the *Monell* claim against Riverhead. *Tsotesi v. Bd. of Educ.,* 258 F.Supp.2d 336, 338 n. 10 (S.D.N.Y.2003) (citing *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985)); *see also Monell,* 436 U.S. at 691 (holding that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Therefore, these claims against the individual Riverhead employees in their official capacities are dismissed.[FN11]

> FN11. While defendants also assert a qualified immunity defense on the part of the

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

individually-named defendants, plaintiffs argue that qualified immunity is not available for official-capacity suits. (Riverhead Supp. Br., at 20; Pls.' Br., at 29-31.) Qualified immunity shields government officials performing discretionary functions from being held liable for civil damages arising from actions which "do 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *P.C. v. McLaughlin,* 913 F.2d 1033, 1039 (2d Cir.1990) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "The doctrine affords protection to a government official only from suit in his individual capacity." *Id.* (citing *Graham,* 473 U.S. at 165-68). Therefore, qualified immunity is not available as a defense to plaintiffs' official-capacity claims, and in any case, such claims are dismissed as duplicative of plaintiffs' *Monell* claim against Riverhead. To the extent that plaintiffs assert any claim against the individually named defendants in their individual, rather than official, capacities, it is impossible to determine at this stage of the litigation whether such individuals are protected from liability by qualified immunity. On the basis of the pleadings alone, in this case, the Court cannot determine whether the defendants' actions "did not violate clearly established law," or whether "it was objectively reasonable for the defendant[s] to believe that [their] action[s] did not violate such law[s]." *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 250 (2d Cir.2001) (internal quotation marks omitted) (quoting *Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir.1996) and citing *Warren v. Keane,* 196 F.3d 330, 332 (2d Cir.1999)).

### a. ADA and Rehabilitation Act Claims

**\*15** Parents of children with disabilities may bring

claims under the ADA or Section 504 of the Rehabilitation Act.[FN12] 20 U.S.C. § 1415(b)(1). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 provides that "no otherwise qualified individual with a disability ... shall, solely by reason of her of his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal assistance." 29 U.S.C. § 794. Under both statutes, schools are required to provide "a free appropriate public education" through special education and related services. *See, e.g.,* 34 C .F.R. § 104.33 (stating that under Section 504, "[a] recipient [of federal funding] that operates a public elementary or secondary education program or activity shall provide a free appropriate public education to each qualified handicapped person who is in the recipient's jurisdiction, regardless of the nature or severity of the person's handicap," and setting forth special education and IEP requirements); 28 C.F.R. § 35.103 (stating that the ADA "shall not be construed to apply a lesser standard than the standards applied under title V of the Rehabilitation Act of 1973 (29 U.S.C. 791) or the regulations issued by Federal agencies pursuant to that title").

> FN12. As there is no individual liability under the ADA or the Rehabilitation Act, plaintiffs' claims under these statutes as to the individually-named defendants are dismissed. *See Menes v. CUNY,* 92 F.Supp.2d 294, 306 (S.D.N.Y.2000) ("Individual defendants may not be held personally responsible for alleged violations of the ADA or the Rehabilitation Act. Nor can individuals be named in their official or representative capacities as defendants in ADA or Rehabiliation Act suits.") (internal quotation marks and citations omitted).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

Both the ADA and Section 504 address discrimination against disabled students, rather than incorrect or erroneous special education treatments, as in the case of IDEA. Thus, "something more than a mere violation of the IDEA is necessary in order to show a violation of Section 504 in the context of educating children with disabilities, *i.e.,* a plaintiff must demonstrate that a school district acted with bad faith or gross misjudgment." *Wenger v. Canastota Cen. Sch. Dist.,* 979 F.Supp. 147, 152 (N.D.N.Y.1997) (citing *Brantley v. Indep. Sch. Dist.,* 936 F.Supp. 649, 657 (D.Minn.1996) (citing *Monahan v. Nebraska,* 687 F.2d 1164, 1170-71 (8th Cir.1982)); *see also R.B. ex rel. L.B. v. Bd. of Educ. of the City of N.Y.,* 99 F.Supp.2d 411, 419 (S.D.N.Y.2000) (holding that, in order to state a claim under the ADA, "a plaintiff must demonstrate more than an incorrect evaluation or substantively faulty IEP to establish liability; a plaintiff must show that defendants acted with bad faith or gross misjudgment") (citations omitted). "However, plaintiffs need not show defendants acted with animosity or ill will" to support a claim under the ADA or Section 504. *R.B. ex rel. L.B.,* 99 F.Supp.2d at 419 (citing *Bartlett v. N.Y. State Bd. of Law Examiners,* 156 F.3d 321, 331 (2d Cir.1998), *vacated on other grounds,* 527 U.S. 1031 (1999), and *Bravin v. Mount Sinai Med. Ctr.,* 58 F.Supp.2d 269, 273 (S.D.N.Y.1999)); *see also W.B. v. Matula,* 67 F.3d 484, 492 (3d Cir.1995) ("Plaintiffs 'need not establish that there has been an intent to discriminate in order to prevail under § 504.' ") (quoting *Nathanson v. Med. Coll. of Pa.,* 926 F.2d 1368, 1384 (3d Cir.1991) and citing *Alexander v. Choate,* 469 U.S. 287, 297 (1985)).

**\*16** Viewing the evidence in the light most favorable to plaintiffs, they have sufficiently pled the requisite "gross misjudgment" necessary for their ADA and Section 504 claims to withstand a motion to dismiss. Plaintiffs' extensive list of Riverhead's failures and omissions with regard to disabled students, as set forth *supra,* combined with their assertions that defendants were aware of plaintiffs' disabilities, that plaintiffs' parents requested accom-

modation and programs to address such disabilities and that defendants intentionally refused to take any remedial or corrective action to remedy the problems, are sufficient to plead causes of action under the ADA and Section 504.[FN13] *See, e.g., R.B. ex rel. L.B.,* 99 F.Supp.2d at 419 (denying motion to dismiss plaintiff's ADA and Section 504 claims where plaintiff alleged that defendants had intentionally, willfully and in bad faith denied his right to a free and appropriate public education, and where plaintiff alleged facts indicating that defendants had not implemented plaintiff's IEP and had failed to create or to implement an interim service plan after plaintiff was suspended); *cf. Wenger,* 979 F.Supp. at 153 (granting motion to dismiss Section 504 claim where plaintiff's assertions of discrimination were based upon failure to timely assess and diagnose plaintiff's disability or to implement plaintiff's IEP in a timely and consistent manner on the basis that such "IDEA-type educational decisions" were " 'at most, errors in professional judgment' ") (quoting *Brantley,* 936 F.Supp. at 657). Therefore, defendants' motions to dismiss plaintiffs' ADA and Section 504 claims are denied.[FN14]

FN13. As plaintiffs seek both money damages and injunctive relief, defendants' contention that plaintiffs do not state a cause of action under Section 504 of the Rehabilitation Act because it does not provide damages is insufficient to defeat this claim.

FN14. As Title II of the ADA applies only to public entities, Edison, as a private corporation, is not subject to liability pursuant to this statute. Under the ADA, "public entity" is defined as "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of the State or States or local government; and (C) the National Railroad Corporation." 42 U.S.C. § 12131; *Spychalsky v. Sullivan,* No. 01-CV-0958 (DRH)(ETB), 2003 U.S. Dist. LEXIS

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

15704, at *13-* 14 (E.D.N.Y. Aug. 29, 2003) (distinguishing "state actor" and "public entity" analyses and declining to treat private Catholic school as public entity for ADA Title II purposes). However, the Second Circuit has held that the reach of the Rehabilitation Act extends as far as "only federally funded-as opposed to 'public'-entities." *Weixel v. Bd. of Educ. City of N.Y.,* 287 F .3d 138, 146 n. 5 (2d Cir.2002); 29 U.S.C. § 794 (applying Rehabilitation Act to "any program or activity receiving Federal financial assistance"). While defendants argue that Edison is not federally funded, plaintiffs contend that Riverhead, as a public school, receives federal funds under IDEA, and provides a portion of such funds to Edison as compensation for its management responsibilities. Therefore, as plaintiffs have sufficiently alleged that Edison is subject to the Rehabilitation Act, the Court declines to dismiss plaintiffs' Rehabilitation Act claim against Edison.

### b. Equal Protection Claims

Plaintiffs assert violations of their rights under the Equal Protection Clause of the Fourteenth Amendment, which provides that "no State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Constit. amend. XIV, § 1. To state a claim of racial discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against him on the basis of race. *Brown v. City of Oneota,* 221 F.3d 329, 337 (2d Cir.1999) (citing *Hayden v. County of Nassau,* 180 F.3d 42, 48 (2d Cir.1999)). Plaintiffs may plead intentional discrimination in violation of the Equal Protection Clause by identifying defendants' use of an express racial classification, defendants' intentional application of a facially neutral law in a discriminatory manner, or a facially neutral statute or policy that has an adverse effect and was motivated by dis-

criminatory animus. *Brown,* 221 F.3d at 337 (citing *Adarand Contructors, Inc. v. Pena,* 515 U.S. 200, 213 (1995), *Yick Wo v. Hopkins,* 118 U.S. 356, 373-74 (1886), *Village of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264-65 (1977), and *Johnson v. Wing,* 178 F.3d 611, 615 (2d Cir.1999)).

Plaintiffs' equal protection claim consists only of their assertion that "some of the Plaintiffs and those similarly situated who are being deprived/denied their right to an education and proper educational environment are of a minority race." (Pls.' Br., at 23 .) This claim does not fit directly into any of the potential theories of recovery under the Equal Protection Clause, as set forth above. In the absence of asserting that defendants applied a racial classification or applied a facially neutral law in a discriminatory manner, they must plead that a facially neutral policy of Riverhead had an adverse effect upon minority students and was motivated by discriminatory animus. Plaintiffs cite *Aguilar v. N.Y. Convention Ctr. Operating Corp.,* 174 F.Supp.2d 49, 55-56 (S.D.N.Y.2001), for the proposition that there are no heightened pleading standards governing discrimination claims. While *Aguilar* did hold that "plaintiffs are not necessarily required to allege any more than 'I was turned down for the j ob because of my race' in order to survive a motion to dismiss," *Aguilar,* 174 F.Supp.2d at 55-56 (citing *Bennett v. Schmidt,* 153 F.3d 516, 518 (7th Cir.1998)), the district court nevertheless held that plaintiffs had not met even this standard where their complaint failed to "give defendants even minimal notice of which plaintiffs are asserting which causes of action":

*17 The complaint asserts that plaintiffs were denied various privileges of employment because of their race and/or gender but does not specify which plaintiffs were denied which privileges. The complaint describes a general pattern of race and gender hostility but does not specify which plaintiffs are asserting hostile work environment claims based on which alleged incidents....

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

Without greater specificity regarding the alleged harm suffered by each plaintiff, it is impossible for defendants even to formulate an answer.

*Aguilar,* 174 F.Supp.2d at 56; *see also Grimes,* 832 F.Supp. at 708-09 (dismissing plaintiffs' claims where they had not adequately alleged intentional discrimination) (citing *Soberal-Perez v. Heckler,* 717 F.2d 36, 42 (2d Cir.1983) (dismissing constitutional challenge to defendant's failure to provide Spanish language services where plaintiffs alleged that such failure had detrimental effect on Hispanics, but plaintiffs could not 'allege in good faith, much less prove, any other evidence of discriminatory intent' other than a legitimate preference for English over all other languages)) (additional citations omitted). As in *Aguilar,* plaintiffs' complaint does not identify which students belong to minority groups and does not specify the constitutional violations visited upon such plaintiffs as opposed to violations as to both minority and non-minority students. Therefore, as plaintiffs have failed to meet the minimum pleading requirements with regard to their equal protection claim under Section 1983, this claim is dismissed.[FN15]

> FN15. However, the Court will grant leave to amend this claim pursuant to Fed.R.Civ.P. 15(a), in order to afford plaintiffs the opportunity to correct this pleading defect, if possible.

c. Supervisory Liability

Plaintiffs allege claims of supervisory liability pursuant to Section 1983, asserting that *all* defendants "had a duty to supervise, control, manage, monitor, oversee, provide and/or implement the free public education of Plaintiffs" and "would have known of the constitutional violations caused to be visited upon Plaintiffs ... by one another," but "failed to take remedial or corrective action." (Am.Compl., ¶¶ 282-84.)

In order to plead a claim of supervisory liability

against individually-named defendants, "[e]vidence of a supervisory official's 'personal involvement' in the challenged conduct is required." *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003) (citing *Johnson,* 239 F.3d at 254). " 'Personal involvement' is not limited to direct participation by the supervisor in the challenged conduct, but may also be established by evidence of an official's (1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates. *Id.* It is well-established in the Second Circuit that a plaintiff may not assert claims under Section 1983 pursuant to theories of *respondeat superior* or vicarious liability. *Meriwether v. Coughlin,* 879 F.2d 1037, 1046 (2d Cir.1989). Moreover, a defendant cannot be held personally responsible merely because he or she was in a high position of authority. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994).

**\*18** In plaintiffs' blanket allegations of supervisory liability against *all* defendants, they fail to indicate personal involvement by any of the named defendants. The complaint does not indicate the role of such defendants in failing to prevent constitutional violations against students by any of the five means established by the Second Circuit. Plaintiffs' conclusory allegations are insufficient to plead Section 1983 claims of supervisory liability as to the individually-named defendants. *See, e.g., Richards v. City of New York,* No. 05-CV-1163 (SLT)(MDG), 2007 U.S. Dist. LEXIS 23726, at \*19-26 (E.D.N.Y. Mar. 30, 2007) (dismissing § 1981 and § 1983 claims where plaintiff failed to allege personal involvement of twenty-seven named individual defendants); *Duryea v. County of Livingston,* No. 06-CV-6436T, 2007 U.S. Dist. LEXIS 30908, at \*18-19 (W.D.N.Y. Apr. 26, 2007) (dismissing supervisory liability claim where the sole allegation was that defendant had met with parents and told

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

them that he did not believe their son's statements). Therefore, the defendants' motion to dismiss is granted with regard to plaintiffs' Section 1983 claims of supervisory liability as to the individually-named defendants.

With respect to Riverhead, which this Court has held to constitute a "municipality" for purposes of the instant Section 1983 claims, "[a] municipality's failure to train or supervise its officers can rise to the level of an actionable policy or custom where it amounts to 'deliberate indifference' to the constitutional rights of its citizens." *Hall v. Marshall*, Nos. 04-CV-4953, 05-CV-0079 (FB)(LB), 2007 U.S. Dist. LEXIS 16664, at *21 (E.D.N.Y. Mar. 8, 2007) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) and *Thomas v. Roach*, 165 F.3d 137, 145 (2d Cir.1999) ("A municipality may be liable under § 1983 ... where the City's failure to supervise or discipline its officers amounts to a policy of deliberate indifference."). Here, plaintiffs' allegations with respect to Riverhead's broad failures to provide students with the requisite educational services, supervision, and properly trained teachers could establish a "policy or practice" of deliberate indifference with regard to the supervision or training of the Riverhead staff. Therefore, the defendants' motion to dismiss is denied with regard to plaintiffs' Section 1983 claims of supervisory liability as to Riverhead.

### d. Failure to Intercede

Plaintiffs' failure to intercede claim is brought on the basis that the State defendants "had opportunities to intercede on behalf of Plaintiffs and those similarly situated to prevent the unlawful and discriminatory deprivation of their state and federal constitutional right to a free public education, but, due to Defendants' intentional conduct and/or deliberate indifference, Defendants declined and/or refused to intercede on their behalf." FN16 (Am. Compl ¶ 289.) "[W]hen individuals are placed in custody or under the care of the government, their governmental custodians are sometimes charged

with affirmative duties, the non-feasance of which may violate the constitution." *McLaughlin,* 913 F.2d at 1044 (quoting *Doe v. N.Y. City Dep't of Social Servs.,* 649 F.2d 134, 141 (2d Cir.1981)). "Officials may be liable under 42 U.S.C. § 1983 only if the omissions were a substantial factor leading to the denial of a constitutionally protected liberty or property interest and the officials displayed a mental state of deliberate indifference with respect to those rights ." *Id.* (citing *Doe,* 649 F.2d at 141). This Circuit has held that "a mere failure by the county to supervise its employees would not be sufficient to hold it liable under § 1983 (but that) the county could be held liable if failure to supervise or the lack of a proper training program was so severe as to reach the level of 'gross negligence' or 'deliberate indifference' to the deprivation of plaintiff's constitutional rights." *Doe,* 649 F.2d at 145 (some internal quotation marks omitted) (quoting *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979)). This is the case regardless of whether the officials in question were aware of the specific deprivations while they were being inflicted upon plaintiffs by subordinates. *Id.* In this instance, plaintiffs sufficiently allege constitutional violations against plaintiffs and deliberate indifference on the part of defendants. Therefore, defendants' motion to dismiss as to this claim is denied.

> FN16. As defendants do not allege this claim against School defendants, the Court shall only consider the claim with regard to the State defendants.

### 5. State Claims

#### a. Failure to Serve a Notice of Claim

**\*19** Plaintiffs also allege violations of New York Human Rights Law §§ 290-97, and claims for intentional infliction of emotional distress and "failure to train, supervise, manage and/or control." (Am.Compl.¶¶ 316-20.) Defendants argue that plaintiffs' state law claims should be dismissed for

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

failure to serve a timely notice of claim upon defendants.

New York Education Law § 3813 provides that:

No action or special proceeding, for any cause whatever ... shall be prosecuted or maintained against any school district, board of education, board of cooperative educational services, school ... or any officer of a school district, board of education, board of cooperative educational services, or school ... unless it shall appear by and as an allegation in the complaint or necessary moving papers that a written verified claim upon which such action or special proceeding is founded was presented to the governing body of said district or school within three months after the accrual of such claim, and that the officer or body having the power to adjust or pay said claim has neglected or refused to make an adjustment or payment thereof for thirty days after such presentment.

N.Y. Educ. Law § 3813(1). As the New York Court of Appeals has stated, "the purpose of section 3813 of the Education Law is to give a school district prompt notice of claims' so that investigation may be made before it is too late for investigation to be efficient.' " *Parochial Bus Sys., Inc. v. Bd. of Educ. of City of N.Y.,* 458 N.E.2d 1241, 1244 (N.Y.1983) (quoting *Bd. of Educ. of Enlarged Ogdensburg City Sch. Dist. v. Wager Constr. Corp.,* 333 N.E.2d 353, 356 (N.Y.1975)) (additional citation omitted); *see also Consol. Constr. Group, LLC v. Bethpage Union Free Sch. Dist.,* 2007 N.Y. Slip. Op. 03646, 2007 WL 1218360, at *3 (N.Y.App.Div. Apr. 24, 2007); *Nagy v. Bayport Bluepoint Union Free Sch. Dist.,* 05-CV-3808 (DRH)(ARL), 2007 U.S. Dist. LEXIS 9809, at * 17-* 18 (E.D.N.Y. Feb. 13, 2007). As a result, fulfillment of the statutory requirements for filing a notice of claim is "a condition precedent to bringing an action against a school district or a board of education and, moreover, failure to present a claim within the statutory time limitation ... is a fatal defect." FN17 *Parochial Bus Sys., Inc.,* 458 N.E.2d at 1245 (citations

omitted); *Nagy,* 2007 U.S. Dist. LEXIS 9809, at * 17-* 18 (holding that filing a notice of claim "is a condition precedent to bringing a state cause of action against the [school] District.") (citing *Weathers v. Millbrook Cent. Sch. Dist.,* 428 F.Supp.2d 180, 186 (S.D.N.Y.2006) and *Parochial Bus Sys., Inc.,* 458 N.E.2d at 1244-45).

> FN17. Section 3813 also applies to charter schools such as Riverhead, which are defined as "public" schools under New York Education Law § 2853(c):
>
> > A charter school shall be deemed an independent and autonomous public school, except as otherwise provided in this article. The charter entity and the board of regents shall be deemed to be the public agents authorized to supervise and oversee the charter school.

However, the New York Court of Appeals has created a single exception to Section 3813. *Biggers v. Brookhaven-Comsewogue Union Free Sch. Dist.,* 127 F.Supp.2d 452, 455 (S.D.N.Y.2001). "The prerequisites of subdivision 1 of section 3813 apply only to those actions which seek the enforcement of private rights, as opposed to those actions that seek vindication of a public interest." *Id.* (citing *Union Free Sch. Dist. No. 6 v. N.Y. State Human Rights Appeal Bd.,* 320 N.E.2d 859 (1974) and *Bd. of Educ. of Union Free Sch. Dist. No. 2 v. N.Y. State Div. of Human Rights,* 379 N.E.2d 163, 165 (N.Y.1978), *overruled in part by Freudenthal v. County of Nassau,* 784 N.E.2d 1165, 1171 (N.Y.2003)).

**\*20** While "[a]ll actions brought to enforce civil rights can be said to be in the public interest," the Court of Appeals has reserved the exception to the notice requirement for cases where actions "are brought to protect an important right, which seek relief for a similarly situated class of the public, and whose resolution would directly affect the rights of that class or group." *Mills v. Monroe County,* 451 N.E.2d 456, 458 (N.Y.1983) (citations

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

omitted), *overruled on other grounds by Felder v. Casey,* 487 U.S. 131, 134, 138 (1988) (holding that state procedural requirements may not be applied to *federal* statutes). "The pertinent distinction is between actions and proceedings which on the one hand seek only enforcement of private rights and duties and those on the other in which it is sought to vindicate a public interest; the provisions of sub-division 1 of section 3813 are applicable as to the former but not as to the latter." *Union Free Sch. Dist. No. 6,* 320 N.E.2d at 862 (excusing notice of claim requirement and holding that school district's personnel policy regarding pregnancy was in violation of New York Human Rights Law prohibiting sex discrimination); *cf. Mills,* 451 N.E.2d at 458 (requiring notice of claim where employee alleged racial and national origin discrimination, on the basis that the case sought redress only as to conduct relating to the plaintiff). In cases vindicating public rights, "[t]he interests in their resolution on the merits override the State's interest in receiving timely notice before commencement of an action." *Mills,* 451 N.E.2d at 458 (collecting cases).

Generally, "[t]he notice of claim requirement applies to claims for discrimination under the New York State Human Rights Law." *Santiago v. Newburgh Enlarged City Sch. Dist.,* 434 F.Supp.2d 193, 196 (S.D.N.Y.2006) (citing *Falchenberg v. N.Y. City Dep't of Educ.,* 375 F.Supp.2d 344, 350-51 (S.D.N.Y.2005)). However, as demonstrated by the outcomes of *Union Free School District* and *Mills,* cases alleging discrimination under this statute have not been treated as uniformly vindicating either private or public interests. Some courts have held that, where damages are sought, a claim under the Human Rights Law does not vindicate a public interest. *See, e.g., Kushner v. Valenti,* 285 F.Supp.2d 314, 316 (E.D.N.Y.2003) (applying notice of claim requirement to Executive Law § 296 claims where plaintiff sought "to vindicate his own private interest and to recover money damages for his own alleged emotional and financial loss") (citing *Biggers,* 127 F.Supp.2d at 455 (characterizing plaintiff's claim as one "seeking the enforcement of

private rights" where employee alleging gender discrimination sought money damages for emotional and financial suffering) (quoting *Mills,* 451 N.E.2d at 458)); *Doyle v. Bd. of Educ.,* 646 N.Y.S.2d 842, 843 (N.Y.App.Div.1996) (requiring notice of claim where plaintiffs sought damages for lost retirement benefits); *Hermele v. Union Free Sch. Dist. No. 23,* 562 N.Y.S.2d 185, 186 (N.Y.App.Div.1990) ("By demanding money damages, the plaintiff sought resolution of a private dispute and not the vindication of an important public right."). Here, plaintiffs seek money damages; however, it is not the case that "the disposition of plaintiff[s'] claim was not intended to nor could it directly affect or vindicate the rights of others," and thus the instant lawsuit is not properly characterized as "one seeking the enforcement of private rights." *Mills,* 451 N.E.2d at 459. While the claims alleged in the instant case seek to vindicate the right to a free and appropriate public education for disabled children at Riverhead, the Court finds that the relief sought would directly affect the rights of a similarly situated class of the public. Therefore, plaintiffs' failure to file a notice of claim is excused.

### b. New York Human Rights Law

**\*21** Plaintiffs allege that defendants discriminated against them on the basis of race and disability, in violation of New York Human Rights Law (N.Y. Exec. Law §§ 290-97) ("NYHRL"). As defendants point out, plaintiffs fail to indicate under which sections of the NYHRL their claims are brought, other than to allege unlawful discrimination on the basis of "race and/or disability." (Pls.' Br., at 41-42.) Defendants suggest that the applicable section of the statute is Section 296(4), which provides that:

It shall be an unlawful discriminatory practice for an education corporation or association which holds itself out to the public to be non-sectarian and exempt from taxation ... to deny the use of its facilities to any person otherwise qualified, or to permit the harassment of any student or applicant, by reason of his race, color, religion, disabil-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

ity, national origin, sexual orientation, military status, sex, age or marital status.

N.Y. Exec. Law § 296(4). According to defendants, plaintiffs have failed to allege that any actions against them were taken out of discriminatory animus. (Riverhead Supp. Br., at 39-40.) While the amended complaint also asserts that defendants "intentionally and unlawfully discriminated against plaintiffs" on the basis of race and disability, such allegations are insufficiently pled to provide defendants with fair notice of which plaintiffs assert which causes of action against which specific defendants. (Am.Compl., ¶¶ 295-96.) Therefore, the Court grants defendants' motions to dismiss plaintiffs' claim under the New York Human Rights Law. FN18

> FN18. However, the Court will grant leave to amend this claim pursuant to Fed.R.Civ.P. 15(a), in order to afford plaintiffs the opportunity to correct this pleading defect, if possible.

### c. Failure to Train, Supervise, Manage and/or Control

Plaintiffs also bring a common law negligence claim against defendants for their alleged "failure to train, supervise, manage and/or control" Riverhead employees. (Am.Compl.¶¶ 316-20.) In order to allege a claim for negligence, plaintiffs must assert that defendants "owed plaintiff[s] a cognizable duty of care, that the defendant[s] breached that duty, and that the plaintiff[s] [were] injured as a proximate result of the breach." Hall v. City of White Plains, 185 F.Supp.2d 293, 303 (S.D.N.Y.2002) (citing Bonnie & Co. Fashions, Inc. v. Bankers Trust Co., 945 F.Supp. 693, 718 (S.D.N.Y.1996) and Donohue v. Copiague Union Free Sch. Dist., 407 N.Y.S.2d 874, 877 (N.Y.App.Div.1978), aff'd, 391 N.E.2d 1352 (N.Y.1979)). In Donohue v. Copiague Union Free School District, where a plaintiff made similar allegations to the claims raised in the instant case-

namely, that a school district, high school, and its employees had breached their duty to him in failing to evaluate and test the student's aptitude, to provide adequate school facilities and teachers, and to teach plaintiff in a proper manner, among other claims-the court held that there was no duty of care running from a school district or its educators to students:

Upon our own examination and analysis of the relevant factors discussed above, which are involved in determining whether to judicially recognize the existence of a legal duty of care running from educators to students, we ... hold that no such duty exists.... This determination does not mean that educators are not ethically and legally responsible for providing a meaningful public education for the youth of our State. Quite the contrary, all teachers and other officials of our schools bear an important public trust and may be held to answer for the failure to faithfully perform their duties. It does mean, however, that they may not be sued for damages by an individual student for an alleged failure to reach certain educational objectives.

*22 Donohue, 407 N.Y.S.2d at 878-79 (citations omitted); see also Helm v. Prof. Children's Sch., 431 N.Y.S.2d 246, 246 (N.Y.App .Div.1980) ( "As a matter of public policy, the courts should not entertain a cause of action in educational negligence or, as it is sometimes referred to, educational malpractice, against either public or private schools.") (citing Donohue, 407 N.Y. S.2d at 874, and Hoffman v. Bd. of Educ., 410 N.Y. S.2d 99, rev'd, 400 N.E.2d 317 (N.Y.1980) (holding that cause of action based upon failure of board of education to implement expert recommendations and to assess plaintiff's intellectual status thereafter may be "quite possibly cognizable under traditional notions of tort law," but "should not, as a matter of public policy, be entertained by the courts of this State") (citing Donohue, 391 N.E.2d at 1354)). In light of the cases in this State indicating that courts should not adjudicate over broad negligence claims such as

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

that brought by plaintiffs in the instant case, defendants' motion to dismiss plaintiffs' claim of negligent failure to train, supervise, manage or control is granted.

#### d. Intentional and Negligent Infliction of Emotional Distress Claims

In order to assert a valid claim for intentional infliction of emotional distress ("IIED") under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir.1996) (citing *Howell v. N.Y. Post Co.,* 612 N.E.2d 699, 702 (N.Y.1993)). "New York sets a high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Id.* (citation omitted). The conduct alleged must be " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.' " *Martin v. Citibank, N.A.,* 762 F.2d 212, 220 (2d Cir.1985) (quoting *Fischer v. Maloney,* 373 N.E.2d 1215, 1217 (N.Y.1978)). "New York courts do not allow IIED claims where 'the conduct complained of falls well within the ambit of other traditional tort liability.' " *McGrath v. Nassau Health Care Corp.,* 217 F.Supp.2d 319, 335 (E.D.N.Y.2002) (quoting *Lian v. Sedgwick James, Inc.,* 992 F.Supp. 644, 651 (S.D.N.Y.1998)). As a result, "IIED claims that are duplicative of other tort claims should therefore be dismissed." *Id.* (citing *Lian,* 992 F.Supp. at 651).

Construing the facts most favorably to plaintiffs, based upon Riverhead's alleged conduct in failing to provide students with necessary educational services, combined with the allegedly decrepit condition of the school's physical facilities, the Court is unable to conclude at this early juncture that the IIED claim must be dismissed as a matter of law.

**\*23** Similarly, the Court finds that plaintiffs have stated a claim for negligent infliction of emotional distress ("NIED"). *See Mortise v. United States,* 102 F.3d 693, 696 (2d Cir.1996) (holding that, under New York law, an NIED claim may be based upon a "direct duty" theory whereby a plaintiff suffers an emotional injury from defendant's breach of a duty which unreasonably endangered his or her own physical safety) (citing *Kennedy v. McKesson Co.,* 448 N.E.2d 1332, 1334 (N.Y.1983) and *Green v. Liebowitz,* 500 N.Y.S.2d 146, 148 (N.Y.App.Div.1986). Plaintiffs have alleged that defendants had a duty to ensure that plaintiffs received a free, appropriate education in safe learning conditions; the Court finds that this is a distinct and unique duty that is recognized in this state (by contrast to the "educational duty" disavowed in *Donohue,* 407 N.Y. S.2d at 878-79). Plaintiffs also claim that defendants breached such duty and endangered plaintiffs' physical safety by failing to provide refrigeration, extermination, ventilation, proper heating and cooling systems, and by failing to prevent violence among students. These allegations sufficiently plead a claim of NIED, and therefore, defendants' motion to dismiss this claim is denied.

#### 6. Eleventh Amendment Immunity

The Eleventh Amendment bars all federal and local suits against state entities in the absence of explicit state consent to be sued. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66 (1989); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 97-100 (1984). Plaintiffs concede that the State defendants in this case are shielded by sovereign immunity with regard to their claims under 42 U.S.C. §§ 1981 and 1983, Title II of the ADA and pendent state claims. These claims against the State defendants are therefore dismissed.[FN19]

> FN19. Plaintiffs also concede that "the Eleventh Amendment provides the State Defendants herein with sovereign immunity against Plaintiffs' claims under ... Title II of the Americans with Disabilities Act,"

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

(Pls.' Br. at 43). However, claims against a state defendant under the ADA are not, as a matter of law, completely barred by the Eleventh Amendment: "Insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia,* 546 U.S. 151, 159 (2006) (emphasis in original). The Second Circuit has held that conduct in violation of Title II of the ADA may also violate the Fourteenth Amendment where "the Title II violation was *motivated by* either discriminatory animus or ill will due to disability." *Garcia v. State Univ. of N.Y. Health Sci. Ctr.,* 280 F.3d 98, 112 (2d Cir.2001) (emphasis added); *see also Olson v. State of New York,* No. 04-CV-0419 (ENV)(MLO), 2007 WL 1029021, at *7-*8 (E.D.N.Y.2007) (collecting Second Circuit cases and concluding that "*Garcia* remains good law"). There are no allegations in the amended complaint that defendants' alleged behavior or failure to act were the result of "discriminatory animus" or "ill will" towards plaintiffs on the basis of disability. In the absence of such allegations, therefore, State defendants are, as a matter of law, immune from suit under Title II of the ADA.

However, plaintiffs maintain that they have valid claims against the State defendants under IDEA [FN20] and the Rehabilitation Act. Defendants concede that sovereign immunity is not available under the Rehabilitation Act, which provides that "[a] State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of Section 504 of the Rehabilitation Act of 1973." 42 U.S.C. § 2000d-7(a)(1). In *Garcia v. S.U.N.Y. Health Sciences Ctr.,* the Second Circuit held that this provision "constitutes a clear expression of Congress's

intent to condition acceptance of federal funds [under the Rehabilitation Act] on a state's waiver of its Eleventh Amendment immunity." 280 F.3d at 113. As a result, courts in this Circuit have concluded that "if a state accepts federal funds under the Rehabilitation Act *after Garcia,* it necessarily follows from that decision that the state has knowingly waived its Eleventh Amendment sovereign immunity with respect to Section 504 claims that arose (as here) after the *Garcia* decision." *Mutts v. Southern CT State Univ.,* No. 04-CV-1746 (MRK), 2006 WL 1806179, at *4 (D.Conn. Jun. 28, 2006) (citing *Garcia,* 280 F.3d at 110 n. 4 ("[I]f there is a colorable basis for the state to suspect that an express congressional abrogation is invalid, then the acceptance of funds conditioned on the waiver might properly reveal a knowing relinquishment of sovereign immunity."), *Degrafinreid v. Ricks,* 417 F.Supp.2d 403, 414 (S.D.N.Y.2006) ("Under the logic of *Garcia* and the cases interpreting its decision on waiver, New York's continued acceptance of federal funds on behalf of DOCS constitutes a waiver of sovereign immunity as to all of plaintiff's Rehabilitation Act claims."), and *Blasio v. N.Y. Dep't Corr. Servs.,* No. 04-CV-653(S), 2005 WL 2133601, at *3 (W.D.N.Y. Aug. 31, 2005) ("By continuing to accept federal funds after *Garcia,* however, New York knowingly waived its immunity for Rehabilitation Act claims, which are based on post-*Garcia* events.")). Therefore, Eleventh Amendment immunity is granted to the State defendants with regard to all of plaintiffs' claims, with the exception of their Rehabilitation Act claim, and these claims against State defendants are dismissed.

FN20. As explained *supra,* plaintiffs' IDEA claim was withdrawn by stipulation.

IV. CONCLUSION

*24 For the foregoing reasons, defendants' motions to dismiss are granted in part and denied in part.

Defendants' motions to dismiss pursuant to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23
**(Cite as: 2007 WL 1456221 (E.D.N.Y.))**

Fed.R.Civ.P. 12(b)(1) are DENIED.

State defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED as to plaintiffs' claims under IDEA, Title II of the ADA, the Equal Protection Clause, Section 1981, Section 1983, Title VI, and plaintiffs' pendent state claims. State defendants' 12(b)(6) motion is DENIED as to plaintiffs' Rehabilitation Act claim.

School defendants' Rule 12(b)(6) motion to dismiss, with regard to plaintiffs' claims under IDEA, Section 1981, Title VI, the Equal Protection Clause, the NYHRL and plaintiffs' state claims for failure to train, is GRANTED as to all School defendants.

School defendants' Rule 12(b)(6) motion to dismiss is GRANTED as to all of plaintiffs' claims against the individual defendants in their official capacities.

School defendants' Rule 12(b)(6) motion to dismiss, with regard to plaintiffs' claims under Title II of the ADA, is GRANTED as to Edison and the individual defendants, and DENIED as to Riverhead.

School defendants' Rule 12(b)(6) motion to dismiss, with regard to plaintiffs' Rehabilitation Act claims, is GRANTED as to the individual defendants, and DENIED as to Edison and Riverhead.

School defendants' Rule 12(b)(6) motion to dismiss, with regard to plaintiffs' Section 1983 claims for supervisory liability, is GRANTED as to Edison and the individual defendants, and DENIED as to Riverhead.

School defendants' Rule 12(b)(6) motion to dismiss, with regard to plaintiffs' state claims for intentional infliction of emotional distress and negligent infliction of emotional distress, is DENIED as to all School defendants.

The Court grants plaintiffs leave to amend their claims of discrimination pursuant to Section 1981, Title VI, the Equal Protection Clause and the New York Human Rights Law, as well as their Section 1983 claims of supervisory liability as to Edison

and the individual defendants, within thirty (30) days of the date of this Order.

SO ORDERED.

E.D.N.Y.,2007.
Scaggs v. New York Dept. of Educ.
Not Reported in F.Supp.2d, 2007 WL 1456221 (E.D.N.Y.), 35 NDLR P 23

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.