**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHARLES BRYANT,** individually and as next
friend and guardian of **D.B.; AVA GEORGE,**
individually and as next friend and guardian of
**B.G.; CHANIN HOUSTON-JOSEPHAT,**
individually and as next friend and guardian of
**A.J.; LISA HUGHES,** individually and as next
friend and guardian of **J.R.; CARMEN PENA,**
individually and as next friend and guardian of
**G.T.; VIVIAN PRESLEY,** individually and as
next friend and guardian of **D.P.;** and **JAMIE
TAM,** individually and as next friend and
guardian of **S.T.,**

|  |  |
|---|---|
| **Plaintiffs,** | **8:10-cv-036** |
|  | **(GLS\RFT)** |
| **v.** |  |

**NEW YORK STATE EDUCATION
DEPARTMENT; DAVID M. STEINER,** in his
capacity as Commissioner of Education of the
New York State Education Department; and
**THE NEW YORK STATE BOARD OF
REGENTS,**

                      **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
O'Connell, Aronowitz Law Firm          JEFFREY J. SHERRIN, ESQ.
54 State Street, 9th Floor
Albany, NY 12207-2501

Office of Meredith H. Savitt                    MEREDITH H. SAVITT, ESQ.
636 Delaware Avenue
Delmar, NY 12054

Eckert, Seamans Law Firm                        MICHAEL P. FLAMMIA, ESQ.
Two International Place, 16th Floor
Boston, MA 02110

**FOR THE DEFENDANTS:**
HON. ANDREW M. CUOMO                             KELLY L. MUNKWITZ
New York State Attorney General                  Assistant Attorney General
The Capitol
Albany, NY 12224

**Gary L. Sharpe**
**District Court Judge**


## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiffs parents and guardians of disabled students attending the

Judge Rotenberg Educational Center, Inc. (JRC) commenced this action

against defendants the New York State Education Department (NYSED),

Commissioner of Education David M. Steiner, and the New York State

Board of Regents, alleging violations of the Individuals with Disabilities Act

(IDEA),[1] the Rehabilitation Act of 1973,[2] and the United States and New

---

[1]20 U.S.C. § 1400, *et seq.*

[2]29 U.S.C. § 701, *et seq.*

York State Constitutions.  (*See* Compl., Dkt. No. 1.)  Pending are plaintiffs'

motion for a preliminary injunction, (Dkt. No. 7), and defendants' motion to

dismiss, (Dkt. No. 13).  For the reasons that follow, the preliminary

injunction is denied and defendants' motion to dismiss is granted.

## II.  Background

### A.    Factual History

Plaintiffs are the parents and legal guardians of seven disabled

children who are students at JRC.  (*See* Compl. ¶¶ 1-14, Dkt. No. 1.)  JRC

is a not-for-profit, special education facility located in Canton,

Massachusetts.  (*See id.* at ¶ 25.)  Among other things, JRC provides

residential, educational, and behavioral services to individuals who suffer

severe behavior disorders.  (*See id.* at ¶¶ 26-29.)

Pursuant to receiving a free appropriate public education (FAPE), an

individualized education program (IEP) was developed for each of the

seven student plaintiffs.  (*See id.* at ¶¶ 2, 4, 6, 8, 10, 12, 14.)  And as part

of their IEPs, each student was identified as disabled and in need of

residential, special education services.  (*See id.*)  In addition, four of the

students' IEPs specifically recommended JRC for placement.  (*See id.*)

At JRC, each student first enters a non-intrusive, positive treatment

3

program, which employs a point/token system whereby positive behaviors

are rewarded and problematic behaviors are met with negative incentives.

(*See id.* at ¶ 30.)  According to plaintiffs, this "positive-only" method has

proven successful with approximately seventy percent of JRC's students.

(*See id.* at ¶ 31.)  However, in cases where positive-only treatment

becomes insufficient or ineffective, JRC may supplement positive methods

with aversive interventions.  (*See id.*)

Aversive behavior modification techniques rely on consequences that

are carefully designed to decrease a problematic behavior.  (*See id.* at ¶¶

32-34.)  Aversive interventions are used on an individualized, specifically-

defined basis to treat a student's problematic behaviors, including

aggressive, dangerous, self-injurious, destructive, disruptive, and non-

compliant behavior.  (*See id.*)  The goal is effective deceleration or

minimization of problematic behaviors, which in turn enables a student to

receive an appropriate education, promotes the student's safety, and helps

the student develop and hone the basic skills necessary for learning and

daily living.  (*See id.*)

Before resorting to the use of aversive intervention, JRC must obtain

(1) approval from personnel supervising the student's care, (2) consent

4

from the student's parent or guardian, (3) an examination from an independent board-certified physician, (4) separate approval from two committees, (5) an IEP from the student's school district recommending the use of aversives, and (6) approval from a Massachusetts Probate Court judge.  (*See id.* at ¶ 36.)  JRC's use of aversive techniques is based on years of first-hand experience and peer-reviewed and accepted methods of behavioral psychology.  (*See id.* at ¶ 32.)  The types of aversives used by JRC range from helmets and manual and mechanical restraints, to carefully-controlled food programs and electric skin shock.[3]  (*See id.* at ¶¶ 37, 43, 44.)

Currently, none of the student plaintiffs' IEPs recommend the use of aversive intervention.  Still, each student plaintiff allegedly continues to exhibit severe problematic behaviors despite intensive educational instruction, positive-only treatment, extensive medication, behavioral counseling, low child-to-staff ratios, and ranging forms of therapy.  (*See id.*

---

[3]Skin shock is applied through a Graduated Electronic Decelerator device (GED), the use of which has been cleared by the United States Food and Drug Administration and is regulated and monitored by the Massachusetts Departments of Developmental Services and Early Education and Care.  (*See* Compl. ¶¶ 37-38, Dkt. No. 1.)  The GED consists of a transmitter operated by JRC staff and a receiver-stimulator worn by the student on the arm or leg.  (*See id.* at ¶ 39.)  The stimulator delivers a low-level electrical current to a small area on the surface of the student's skin for two seconds, which may redden the skin, leave a temporary dark mark, or cause a small blister.  (*See id.* at ¶¶ 39-43.)  According to plaintiffs, the use of the GED is both significantly limited and extremely effective.  (*See id.* at ¶¶ 40-41.)

at ¶¶ 46-66.)  Accordingly, trained clinicians have recommended and plaintiffs have consented to aversive intervention as necessary to ensure that each student receives a FAPE.  (*See id.* at ¶¶ 67, 88-89.)

NYSED, as an agency of New York State, regulates educational services and programs for New York residents.  (*See id.* at ¶ 15.)  The Board of Regents oversees education in New York, sets educational policies, standards, and rules, and promulgates, adopts, and enforces NYSED regulations.  (*See id.* at ¶ 17.)  Over the course of thirty years, New York State approved of JRC for out-of-state placement of students, pursuant to which NYSED monitored and regularly conducted quality assurance reviews of JRC's behavioral treatment policies, procedures, and programs, including aversive methods.  (*See id.* at ¶ 69.)

However, on June 23, 2006, the Board of Regents promulgated new regulations that restricted the use of aversive interventions.[4]  (*See id.* at ¶ 70.)  And after a two-month comment period and subsequent revisions, a finalized version of the regulations were adopted in January 2007.  *See generally* 8 N.Y. COMP. CODES R. & REGS. § 200.22; *see also* 8 N.Y. COMP.

---

[4]For a further discussion of these events, see the court's February 24, 2010 Memorandum-Decision and Order in *Alleyne v. N.Y. State Educ. Dep't*, 691 F. Supp. 2d 322, No. 1:06-cv-994 (N.D.N.Y. 2010).

CODES R. & REGS. § 19.5(b)(2) (defining aversive interventions).  The

regulations limit the use of aversive interventions to students who had

aversives on their IEPs on or before June 30, 2009, who obtain a child-

specific exception from a committee appointed by the Commissioner, and

who are engaging in self-injurious behaviors or behavior that threatens the

well being of others.  *See* 8 N.Y. COMP. CODES R. & REGS. § 200.22(e).

On January 8, 2010, plaintiffs commenced the present action,

seeking declaratory and injunctive relief and challenging the regulations

under the IDEA, the Rehabilitation Act, and the Equal Protection and Due

Process Clauses of the United States and New York State Constitutions.

(*See* Compl. ¶¶ 92-124, Dkt. No. 1.)  Plaintiffs thereafter moved to

preliminarily enjoin defendants NYSED, Steiner, and the Board of Regents

from enforcing the regulations.  (*See* Dkt. No. 7.)  In opposition, defendants

moved to dismiss plaintiffs' complaint.  (*See* Dkt. No. 13.)

### III.  Discussion

### A.  Subject Matter Jurisdiction & Exhaustion

"It is well settled that the IDEA requires an aggrieved party to exhaust

all [state] administrative remedies before bringing a civil action in federal or

state court ...."  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d

Cir. 2004) (citing, inter alia, 20 U.S.C. § 1415(i)(2)); *see also Fennell v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995).  Under the IDEA, parents who are dissatisfied with an IEP developed for their child by the local school district may file an administrative complaint about "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6).  A claimant who has exhausted the state administrative procedures may seek independent judicial review in the appropriate federal or state court.  *See Walczak v. Fla. Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).  Conversely, "[a] plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction."[5]  *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 483 (2d Cir. 2002) (citations omitted).

However, an exception to the exhaustion requirement exists where

─────────────────────

[5]Exhaustion ensures that disputes regarding IEPs for disabled children are originally handled by administrators with expertise and experience in the area, which enables them to resolve grievances promptly.  *See J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 112 (2d Cir. 2004).  Additionally, the administrative process produces a "helpful record ... for the federal court."  *See id.* at 113 (citation omitted).  In total, "[e]xhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency ...."  *Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002) (citations and internal quotation marks omitted).  While it "prevents courts from undermining the administrative process," *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992) (citations omitted), the exhaustion doctrine also deters parties from wasting the resources of the courts and the states.

"exhaustion would be futile because administrative procedures do not provide adequate remedies." *Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992) (citing, inter alia, *Honig v. Doe*, 484 U.S. 305, 326-27 (1988)). The rationale behind this exception is that "it would be futile to complete the administrative review process [where] the hearing officer had no power to correct the violation." *J.S.*, 386 F.3d at 113. Moreover, "[t]o require a systemic challenge ... to pursue administrative remedies would not further the purposes of [the] IDEA and would only serve to insulate the state procedures from review." *Heldman*, 962 F.2d at 159.

Here, plaintiffs contend that the relief they are seeking—namely, relief from the regulations on the grounds that they render a FAPE unavailable—is of the type that could not be secured through the administrative process. Defendants counter that none of the plaintiffs has an IEP calling for aversive interventions and that none has administratively challenged his or her IEP designations. (*See* Defs. Resp. Mem. of Law at 3, Dkt. No. 13:20.) While the absence of IEPs providing for aversive interventions presents a notable difference between the plaintiffs here and those in *Alleyne v. N.Y. State Educ. Dep't*, 691 F. Supp. 2d 322, No. 1:06-cv-994 (N.D.N.Y. 2010), the court nonetheless concludes that it would be

9

futile to require plaintiffs to exhaust their administrative remedies in light of the claims they are asserting and relief they are seeking.  Plaintiffs may present their claims here in the first instance and defendants' motion to dismiss for lack of subject matter jurisdiction is therefore denied.

**B.    <u>Motion to Dismiss</u>**

The standard of review under FED. R. CIV. P. 12(b)(6) is well established and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, --- F. Supp. 2d ----, 2010 WL 1257891, at *1-2 (N.D.N.Y. Mar. 26, 2010).

**1.    IDEA Claims**

Plaintiffs' complaint contains two IDEA-based counts.  First, plaintiffs contend that by barring their access to aversive intervention, the regulations deny plaintiffs a FAPE and a meaningful opportunity to develop an adequate IEP.  (*See* Compl. ¶¶ 92-93, Dkt. No. 1.)  Second, plaintiffs allege that in promulgating the regulations, defendants exceeded their rulemaking authority by failing to comply with the IDEA's substantive and procedural requirements.  (*See id.* at ¶¶ 96-102.)

As to the latter claim that defendants exceeded their rulemaking

authority, the court deems controlling the conclusions reached in *Alleyne*. Accordingly, for the reasons outlined in *Alleyne*, the court finds that the basis for and substance of the regulations are consistent with the requirements and purposes of the IDEA.  *See* 691 F. Supp. 2d at 330-33; *see also Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982) ("[Because] Congress' intention was not that the [IDEA] displace the primacy of States in the field of education ... once a court determines that the requirements of the [IDEA] have been met, questions of methodology are for resolution by the States.").  Therefore, plaintiffs' facial challenge must be rejected and Count Two dismissed.

For similar reasons, the court rejects plaintiffs' first claim that, in practice, the regulations deprive each plaintiff of a meaningful opportunity to develop a beneficial IEP.  Unlike the plaintiffs in *Alleyne* whose IEPs provided for the use of aversives and who therefore were entitled to further administrative proceedings on the issue of whether they fit within § 200.22's exception, the plaintiffs here are seeking something that unfortunately is no longer available to them under the regulations.  And while plaintiffs cogently rely on *Deal v. Hamilton County Bd. of Educ.*, 392 F.3d 840 (6th Cir. 2004), and *Kalliope R. ex rel. Irene D. v. N.Y. State Dep't*

11

*of Educ.*, --- F. Supp. 2d ----, No. 09-CV-1718, 2010 WL 2243278 (E.D.N.Y. June 1, 2010), the facts here are critically distinguishable.  In *Deal*, the court found that by pre-deciding not to provide one-on-one applied behavioral analysis therapy to a student without considering any evidence concerning his needs or the effectiveness of his IEP, the defendant school district engaged in predetermination in violation of the IDEA's procedural requirements that the student's parents be allowed to meaningfully participate in the IEP process.  *See Deal*, 392 F.3d at 857.  Likewise, the district court in *Kalliope* found a valid claim where the plaintiffs alleged that the NYSED committed impermissible predetermination when it promulgated a policy that prevented the school district's Committee on Special Education from even considering whether a particular student-teacher ratio may be appropriate in some cases.  *See Kalliope*, 2010 WL 2243278, at *8-9.  However, the issues at play here regarding the use of aversive intervention are quite distinct from those regarding student-teacher ratios and available teaching methods.

Moreover, plaintiffs do not allege that defendants did not consider the use of aversive interventions before adopting § 200.22.  Rather, the allegations demonstrate that the NYSED and the Board of Regents

12

explored the available data, studies, and literature before making a

reasoned decision that aversives should be generally prohibited. *See*

*Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) ("[The

State] is not ... required to furnish every special service necessary to

maximize each handicapped child's potential." (internal quotation marks

and citations omitted)).  The court is not willing to second guess that policy

decision.  Consequently, because the regulations are valid under the IDEA,

plaintiffs' as-applied challenge contained in Count One must be dismissed.

Insofar as plaintiffs wish to challenge the effectiveness and reasonableness

of their IEPs under New York's current regulatory scheme, such recourse

must first be pursued administratively.

**2.    Rehabilitation Act Claims**

In Count Four of their complaint, plaintiffs allege that defendants'

promulgation of the regulations at issue constitute unlawful discrimination

on the basis of plaintiffs' disabilities in violation of the Rehabilitation Act.

(*See* Compl. ¶¶ 111-14, Dkt. No. 1.)

Section 504 of the Rehabilitation Act provides that "[n]o qualified

individual with a disability ... shall, solely by reason of her or his disability,

be excluded from the participation in, be denied the benefits of, or be

subjected to discrimination under any program or activity receiving Federal financial assistance ....." 29 U.S.C. § 794.  In order to state a claim under the Rehabilitation Act, a plaintiff must demonstrate (1) that he or she is a disabled person under the Act, (2) who has been excluded from benefits of a federally funded program or special service, (3) solely because of his or her disability.  *See Mrs. C. v. Wheaton*, 916 F.2d 69, 74 (2d Cir. 1990) (citation omitted).  In the context of an IDEA action, something more than the mere denial of a FAPE must be shown in order to establish a violation of the Rehabilitation Act.  *See Wenger v. Canastota Cent. Sch. Dist.*, 979 F. Supp. 147, 152 (N.D.N.Y. 1997).  As such, plaintiffs must also demonstrate bad faith or gross misjudgment to establish a Rehabilitation Act claim.  *See id.*

While plaintiffs charge that defendants' actions were "arbitrary, capricious, and meritless," (Compl. ¶ 68, Dkt. No. 1), such allegations are not sufficient to establish bad faith or gross misjudgment.  Nor are such conclusory labels sufficient to withstand a motion to dismiss.  Instead, as already discussed, the regulations represent a permissible educational policy choice.  Accordingly, the court must dismiss plaintiffs' Rehabilitation Act claims.

**3.      Substantive Due Process Claims**

For Count Three, plaintiffs allege that defendants violated their substantive due process rights by failing to consider their individual educational needs and thereby depriving them of an education and treatment that is necessary for their health, well being, and educational progress.  (*See* Compl. ¶¶ 105-08, Dkt. No. 1.)

"[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against certain government actions regardless of the ... procedures used to implement them."  *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (internal quotation marks and citation omitted).  "In assessing whether a government regulation impinges on a substantive due process right, the first step is to determine whether the asserted right is 'fundamental.'"  *Leebaert v. Harrington*, 332 F.3d 134, 140 (2d Cir. 2003) (emphasis omitted).  "Rights are fundamental when they are implicit in the concept of ordered liberty, or deeply rooted in this Nation's history and tradition."  *Immediato*, 73 F.3d at 460-61 (internal quotation marks and citations omitted).  "Where the right infringed is fundamental, strict scrutiny is applied to the challenged governmental regulation."  *Leebaert*, 332 F.3d at 140 (citation omitted).

However, "[w]here the claimed right is not fundamental, the governmental

regulation need only be reasonably related to a legitimate state objective."

*Immediato*, 73 F.3d at 461 (citations omitted).

The right to public education is not fundamental.  *See Handberry v.*

*Thompson*, 446 F.3d 335, 352-53 (2d Cir. 2006); *see also San Antonio*

*Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973)*; Manbeck v. Katonah-*

*Lewisboro Sch. Dist.*, 435 F. Supp. 2d 273, 276 n.2 (S.D.N.Y. 2006).

Furthermore, "[e]ducation is unquestionably a legitimate state interest,"

*Immediato*, 73 F.3d at 462, that encompasses the academic, emotional,

and physical well being of students in the educational setting, *see Alleyne*,

691 F. Supp. 2d at 337.  There is no question that the regulations' general

prohibition of aversive interventions is reasonably related to the State's

policy decision that the potential harm created by the use of aversive

treatments outweighs their potential benefits.  Accordingly, plaintiffs'

substantive due process claims must be dismissed.[6]

---

[6]Because the Eleventh Amendment of the United States Constitution bars state
constitutional claims against the state, its agencies, or its employees in their official capacity,
regardless of the relief sought, the court dismisses all claims premised on the New York State
Constitution.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105-06 (1984)
(finding sovereign immunity bars federal courts from adjudicating state claims against the
state), *overruled in part on other grounds*, *Will v. Mich. Dep't of State Police*, 491 U.S. 58
(1989); *Alliance of Am. Insurers v. Cuomo*, 854 F.2d 591, 604 (2d Cir. 1988); *Diamond v.*
*Pataki*, No. 03 Civ. 4642, 2007 WL 485962, at *7 (S.D.N.Y. Feb. 14, 2007).

**4.     Procedural Due Process Claims**

Plaintiffs further allege that defendants violated their procedural due process rights by failing to provide plaintiffs with notice and an opportunity to be heard on the regulations' restriction of aversive interventions.  (*See* Compl. ¶¶ 122-23, Dkt. No. 1.)

Analysis of a procedural due process claim is composed of two prongs.  *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).  First, the court must discern "whether the plaintiff has a property or liberty interest protected by the Constitution."  *Id.*  If such an interest exists, "[the] court must then consider whether the government deprived the plaintiff of that interest without due process."  *Id.*  Thus, under this second step of the analysis, the court must ask "what process was due to the plaintiff, and ... whether that constitutional minimum was provided in the case under review."  *Id.* (citation omitted).  This involves a weighing of the private interest to be affected, the risk of erroneous deprivation, the value of additional safeguards, and the governmental burden such additional safeguards would impose.

While both New York law and the IDEA create a property interest in education, *see Handberry*, 446 F.3d at 353, this interest cannot be

17

categorized as fundamental.  Moreover, it is unclear whether this interest

encompasses aversive treatment.  And it appears that plaintiffs allege

deprivation of a speculative interest since none of the plaintiffs have an IEP

that presently entitles them to aversive treatment.  Thus, plaintiffs only

allege "an abstract need" for aversive intervention that does not amount to

a "legitimate claim of entitlement."  *Bd. of Regents of State Colls. v. Roth*,

408 U.S. 564, 577 (1972); *see also Spinelli v. City of New York*, 579 F.3d

160, 169 (2d Cir. 2009); *Sanitation & Recycling Indus., Inc. v. City of New

York*, 107 F.3d 985, 995 (2d Cir. 1997).  Still, even assuming plaintiffs'

proposed property interest were protected, the court has previously

determined that the NYSED and Board of Regents provided for an

adequate notice and comment period before adopting the final regulations.

*See Alleyne*, 691 F. Supp. 2d at 337 ("[I]n the months [prior to adoption of

the final regulations], notices were provided, public hearings were held,

comments were accepted, and an assessment of public comment was

published—all in compliance with New York's Administrative Procedure

Act."); *see also id.* at 337 n.11 (rejecting argument that each individual

plaintiff's circumstances must be considered before the regulations were

promulgated, since it would "make the passage of any educational

18

regulation virtually impossible").

Therefore, because plaintiffs' alleged interest in aversives is neither actual nor fundamental, and because the regulations were promulgated in accordance with due process requirements, the court dismisses plaintiffs' procedural due process claims.

## 5.   Equal Protection Claims

Lastly, plaintiffs allege that defendants violated the Equal Protection Clause by treating plaintiffs differently from other New York students and other disabled New York students, including those who fit within § 200.22(e)'s "grandfather" exception.  (*See* Compl. ¶¶ 116-19, Dkt. No. 1.)

To make out an equal protection claim under the Fourteenth Amendment, plaintiffs must establish that "(1) compared with others similarly situated, [they were] selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, [disability,] intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir.1980).  Otherwise, where a disparate classification neither implicates fundamental rights nor proceeds along suspect lines, the classification is afforded a "strong presumption of

19

validity ... [which] cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993) (citations omitted); *see also Romer v. Evans*, 517 U.S. 620, 631 (1996).

Plaintiffs have alleged that they are treated disparately compared to other similarly-situated non-disabled and disabled individuals. First, a plain reading of the regulations shows that they apply to all New York State students, disabled and non-disabled alike. There is nothing in the regulations that treats plaintiffs selectively different from other non-disabled students. And second, while § 200.22(e)'s exception technically treats plaintiffs—who do not have IEPs that include the use of aversives—different from other disabled students who can satisfy the exception, there is nothing to suggest, and plaintiffs do not otherwise allege, that this treatment is based on anything but a rational policy decision and a need to draw the line somewhere. Plaintiffs' bald assertion that defendants "acted arbitrarily, capriciously, unreasonably, and in bad faith," (Compl. ¶ 119, Dkt. No. 1), is not enough to frustrate a plain reading of the regulations or overturn the court's earlier finding that the regulations

were based on reasonable policy concerns that were rationally related to the State's interests in prohibiting the use of aversive treatments and the potential harm they pose.  *See Alleyne*, 691 F. Supp. 2d at 337.

Thus, because the regulations do not proceed along suspect lines, do not implicate fundamental rights, and are rationally related to a legitimate government purpose, the court dismisses plaintiffs' equal protection claims.

## C.   Preliminary Injunction

In light of the above findings, the court denies plaintiffs' motion for a preliminary injunction as plaintiffs clearly cannot establish a likelihood of success on the merits of their claims.  *See Bery v. City of New York*, 97 F.3d 689, 694 (2d Cir. 1996) ("[I]n a case in which the moving party seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction should be granted only if the moving party meets the ... likelihood-of-success standard." (internal quotation marks and citation omitted)); *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996).

## IV.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that plaintiffs' motion for a preliminary injunction (Dkt. No. 7) is **DENIED**; and it is further

**ORDERED** that defendants' motion to dismiss (Dkt. No. 13) is **GRANTED** and plaintiffs' complaint is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

August 26, 2010
Albany, New York

United States District Court Judge